

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**May 9, 2017 21:47**

By: SANDHYA GUPTA 0086052

Confirmation Nbr. 1063634

| | |
|---|---|
| DALONTE WHITE | CV 17 880097 |
| vs. | |
| CITY OF CLEVELAND, ET AL. | **Judge:** DICK AMBROSE |

Pages Filed: 24



EXHIBIT
A

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Dalonte White<br>3347 W. 59th Pl.<br>Cleveland, OH 44102<br><br>        Plaintiff,<br><br>  vs.<br><br>City of Cleveland<br>601 Lakeside Ave.<br>Cleveland, OH 44114<br><br>Sgt. Thomas Shoulders (in his official and personal capacities)<br><br><br>Michael Schade (in his official and personal capacities)<br><br><br>Donato G. Daugenti (in his official and personal capacities)<br><br><br>Thomas J. Harrigan (in his official and personal capacities)<br><br><br>William C. Tinsley (in his official and personal capacities)<br><br><br>Joseph C. O'Neill (in his official and personal capacities) | Case No.<br><br>Judge |

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

| David H. Lam (in his official and personal capacities) | |
|---|---|
| | |
| John Doe Officer #1 (in his official and personal capacities) Cleveland Division of Police 2nd District 3481 Fulton Rd. Cleveland, OH 44109 | |
| John Doe Officer #2 (in his official and personal capacities) Cleveland Division of Police 2nd District 3481 Fulton Rd. Cleveland, OH 44109 | |
| John Doe Officer #3 (in his official and personal capacities) Cleveland Division of Police 2nd District 3481 Fulton Rd. Cleveland, OH 44109 | |
| John Doe Detective #1 (in his official and personal capacities) Cleveland Division of Police 2nd District 3481 Fulton Rd. Cleveland, OH 44109 | |
| John Doe Detective #2 (in his official and personal capacities) Cleveland Division of Police 2nd District 3481 Fulton Rd. Cleveland, OH 44109 | |
| Other John Doe officers (in their official and personal capacities) Cleveland Division of Police 2nd District 3481 Fulton Rd. Cleveland, OH 44109 | |

| (The names of the John Doe defendants could not be discovered despite reasonable efforts.) Defendants | |
|---|---|

## COMPLAINT WITH JURY DEMAND

### NATURE OF ACTION

1. This is a civil-rights action brought under 42 U.S.C. § 1983, as well as under state law for malicious prosecution, false arrest, false imprisonment, and using a false writing.

2. Plaintiff Dalonte White, who was a juvenile at the time of the events outlined below, alleges that Defendants violated the Fourth and Fourteenth Amendments of the United States Constitution when they arrested and detained him without probable cause, causing him to suffer loss of liberty as well as physical and emotional pain and suffering. Defendants also failed to disclose obvious *Brady* material, including information that the victim-witnesses had all identified a different suspect in a photo-lineup.

3. Ultimately, the judge in the case found the prosecution *lacked probable cause* to prosecute Dalonte. But not before Dalonte had served over three months in detention, suffering, in addition to the loss of his freedom, a broken jaw when another inmate kicked him in the face.

4. Defendants' acts and omissions—including Defendant City of Cleveland's failure to properly train and supervise its police officers—were a direct and proximate cause of Dalonte's injuries.

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

## PARTIES

5.     Plaintiff Dalonte White is an 18-year-old black male residing in Cleveland, Ohio.

6.     Defendants Sergeant Thomas Shoulders and Officer Michael Schade were employed by the City of Cleveland within the Cleveland Division of Police and were, at all times relevant to the allegations in this complaint, acting in their capacity as police officers or detectives and were acting under color of state law. They are sued in both their official and personal capacities.

7.     John Doe Officers #1, #2, and #3—who may be Donato G. Daugenti, Thomas J. Harrigan, William C. Tinsley, Joseph C. O'Neill, and David H. Lam, or who may instead be other officers whose names remain unknown to Plaintiff despite reasonable efforts to identify them—were employed by the City of Cleveland within the Cleveland Division of Police and were, at all times relevant to the allegations in this complaint, acting in their capacity as police officers or detectives and were acting under color of state law. John Doe Officers #1, #2, and #3 were involved in putting together the photo array that included Dalonte White's photo, described below. They are sued in both their official and personal capacities.

8.     John Doe Detectives #1 and #2—who may be Donato G. Daugenti, Thomas J. Harrigan, William C. Tinsley, Joseph C. O'Neill, and David H. Lam, or who may instead be other officers whose names remain unknown to Plaintiff despite reasonable efforts to identify them—were employed by the City of Cleveland within the Cleveland Division of Police and were, at all times relevant to the allegations in this complaint, acting in their capacity as police officers or detectives in that employ and were acting under color of state law. As described below, John Doe Detectives #1 and #2 administered the second set of photo arrays to the victim-witnesses, but respectively told Colleen Alums and S.L. not to circle or otherwise mark the identification. They are sued in both their official and personal capacities.

9.    Defendant City of Cleveland is a municipality located in Cuyahoga County, Ohio. The

City employs or formerly employed the individual Defendants and is vicariously liable for their

acts and omissions taken under its customs, policies, or practices. It is also responsible for training

and supervising its officers in carrying out their duties as police officers in a lawful manner.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this controversy, and venue is appropriately lodged here,

as all acts and omissions complained of occurred in this County; Plaintiff Dalonte White resides

in this County; and all Defendants are believed to reside in this County or did so reside at the

time such acts and omissions occurred.

## FACTUAL BACKGROUND

### A male accompanied by two others invades a home and pistol-whips the resident, shooting the dog that tries to bite at his ankle.

11.    On April 21, 2015, after around 5:30pm, three intruders entered the home of Colleen

Alums, where Ms. Alums and two minor children, a girl (S.L.) and a boy (Z.H.)—all white—were

present. The intruders said variously, "Nobody move," "I want everything," and "Where is the

stuff?" While two of the intruders stood at the door to prevent anyone from leaving, the third

pulled out a gun and repeatedly hit Ms. Alums on the head with the gun. Three pitbulls emerged

from another room, and began circling and barking at the gunman. One started biting at his

ankle. He, in turn, fired repeatedly at the dog, striking and killing the dog. A bullet also struck

Ms. Alums.

12.    The two intruders standing near the door fled the house after shots were fired. The third

intruder (the gunman) soon followed. The girl, S.L., and boy, Z.H., ran out of the house to a

relative's home, where S.L. called the police around 6pm. The police arrived within minutes of

being dispatched.

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

13. The police report describes the main perpetrator as a black male, 6'0-6'1", about 200–250 lbs. Video-surveillance footage from a neighbor's house showed that he had dreadlocks and was limping down the street as he left the scene. One of the other intruders was later described as Puerto Rican or Hispanic—a light-skinned black male.

14. The girl was transported to Metro Hospital. Ms. Alums was also transported to Metro Hospital, where she remained for a week with a fractured skull, broken ribs, and other life-threatening injuries.

15. That same evening, April 21, 2015, less than one hour after the Alums home invasion, a police report was generated regarding an individual named Edward Bunch, who was seen at Lakewood Hospital for a gunshot wound to his ankle. Bunch is described in the report as 6'0, weighing 213 lbs. Bunch refused to cooperate with the police and simply said that he had been shot while riding a bicycle near Lorain Ave. and W. 25th Street. The police were unable to locate a bicycle, however.

16. A police dispatch from the evening of April 21, 2015 also suggested notifying area hospitals that someone might come in and present with a gunshot wound or dog bite to the ankle. A call to Metro Hospital turned up negative, but no other hospitals were mentioned.

### DEFENDANTS ARREST DALONTE WHITE BASED ON A PHOTO ARRAY IN WHICH HE WAS THE ONLY ONE WITH BRAIDS OR DREADLOCKS

17. Despite the above lead that might have helped them identify the Alums home-invasion gunman, Defendants Sgt. Shoulders and Officer Schade and possibly other unidentified John Doe defendants, including John Doe Officers #1, #2, and #3, focused on a completely unrelated report of a different crime that had occurred recently in the vicinity, involving a young man menacing a girl with a gun. That individual was R.E.

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

18.     Upon information and belief, Defendants identified two others whom they thought were associated with R.E. One of them was Plaintiff Dalonte White.

19.     A few days after April 21, police came to Dalonte's home, handcuffed him, put him in the back of a police car, and took photos of him, including his face and legs/feet and shoes. Dalonte had short braids at that time, but not medium-length braids, and not dreadlocks.

20.     In April 2015, Dalonte was around 5'4", and weighed around 145 lbs. (He is now about 5'4 ½" and weighs about 160 lbs.) His height and weight did not fit the description of the Alums home-invasion perpetrator. Nor did he have any bite marks or gunshot wounds to his ankles or legs/feet. He did not limp.

21.     Rather than investigating other avenues to identify suspects, however, Defendants appear to have actively ignored, if not tried to cover up, these glaring mismatches.

22.     Defendant John Doe Officers #1, #2, and #3—who, as mentioned above, could be Donato Daugenti, Thomas Harrigan, William Tinsley, Joseph O'Neill, David Lam, or who could instead be other officers whose names remain unknown to Plaintiff despite reasonable efforts to identify them—put a photo of Dalonte into a photo array that was presented to Ms. Alums while she was still at the hospital. The photo array did not show Dalonte's height or weight. In addition, upon information and belief, the photo of Dalonte presented in the lineup was not one of the ones taken when the police came to Dalonte's home shortly after April 21, at which time he had short braids. Rather, the photo presented in the lineup was an earlier ID-card photo of Dalonte with medium-length braids. Within the photo array, moreover, the photo of Dalonte was the only one with braids or dreadlocks among photos of about five others.

23.     Based on this highly suggestive array, Ms. Alums identified Dalonte.

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

24. A similar photo array with Dalonte—again, with medium-length dreads, no height or weight reflected, and the only individual with dreadlocks or braids in the array—was shown to the minors, S.L. and Z.H. They also identified Dalonte.

25. Upon information and belief, Defendant Sgt. Shoulders directed, acquiesced, or approved of the manner in which the photo array with Dalonte was compiled, prepared, and presented. Sgt. Shoulders prepared an affidavit and presented it to Judge Sweeney, who issued a warrant for Dalonte's arrest.

26. The witnesses' identification of Dalonte through the above-mentioned suggestive photo array was the only piece of evidence supporting Shoulders's affidavit presented to Judge Sweeney.

27. On April 28, 2015, the police returned to Dalonte's home with the arrest warrant and a search warrant. They arrested him and, under the search warrant, confiscated a pair of Timberland boots, a black North Face jacket, three cell phones, a sock with massage stones in it, and a bottle of pills. These items have never been returned.

28. Dalonte was detained at the Cuyahoga County Juvenile Detention Center the same day as his arrest. He was arraigned on April 29, 2015.

**Shortly after Dalonte was arrested and detained, the victims identified Edward Bunch in a photo array, but Defendants Detectives #1 and #2 told the victims not to mark the identification, and failed to notify Dalonte's attorney.**

29. Shortly after Dalonte's arrest and detention (upon information and belief, within two or three weeks of Dalonte's arrest on April 21, 2015), Defendants Shoulders and/or John Doe Officers #1, #2, or #3—or other John Doe officers whose names Plaintiff has not yet been able to discover despite reasonable efforts—had Ms. Alums, S.L., and Z.H., come into the police station to view additional photo arrays.

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

30.     The three witnesses independently, in separate rooms, picked out Edward Bunch as the gunman in a photo array.

31.     The two detectives administering the photo array to Alums and S.L., however—Defendants John Doe Detectives #1 and #2—told Alums and S.L., respectively, not to make the identification since they had earlier already picked out the perpetrator. The individuals thought they were identifying the same person they had picked out before (i.e., Dalonte). The detectives did not tell Alums and S.L. that the second identification was different from the first. These photo arrays thus did not have the identification of Edward Bunch circled or marked. Nor did the detectives make any notes of the identification.

32.     A third detective, administering the array to Z.H., did allow him to mark his identification of Edward Bunch.

33.     Information that any of these three had identified a different suspect was both exculpatory and material, as the information cast doubt on Dalonte's alleged guilt.

34.     Defendants also had other information on Bunch, including the police report showing that Bunch had been treated at Lakewood Hospital for a gunshot wound to his ankle less than an hour after the crime. In addition, they had a report that on or around April 30, 2015, Bunch was arrested for receipt of stolen property within two blocks of the Alums home. Upon information and belief, two other individuals were with him, including one who matched the description of the Hispanic or light-skinned black male who was one of the three intruders during the Alums home invasion.

35.     Upon information and belief, Defendants had the exculpatory information within their possession shortly after Dalonte was arrested, which was what prompted them to do the second round of photo arrays. .

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

36.     Defendants, however, failed to turn over the above information—including the Alums and Z.H. identifications of Bunch—to Dalonte's defense attorney until the Friday before the Monday on which Dalonte's bindover/probable-cause hearing was to begin. That was in or around late June 2015. Dalonte had been in juvenile detention for nearly two months.

37.     Defendants further failed to notify defense counsel that S.L had *also* identified Bunch until the first day of the bindover/probable-cause hearing, which was in or around July 16, 2015.

38.     Despite having this additional information on Bunch, Defendants continued to prosecute and detain Dalonte.

39.     Another report showed that Bunch had participated in a similar robbery in the past, involving pistol-whipping the residents. Upon information and belief, Defendants did not bother to investigate Bunch to find this additional information.

40.     Defendant City of Cleveland failed to adequately train and supervise Defendant officers who variously told the witnesses not to circle/mark their identifications of Edward Bunch, withheld information about the identifications and other material information about Bunch from the defense, and failed to fully investigate Bunch as a suspect.

### At the probable-cause hearing's conclusion, the judge determined that the prosecution *lacked probable cause* to prosecute Dalonte.

41.     The probable-cause hearing began on or around July 16, 2015 and continued to on or around July 21, 2015 or so.

42.     Based on the evidence presented, Cuyahoga County Juvenile Court Judge Denise Rini determined that the prosecution *lacked probable cause* to prosecute Dalonte, upon information and belief, because he did not match the description of the perpetrator, because there was no physical evidence linking Dalonte to the crime (e.g., no gun, no dog-bite marks, no gunshot wounds), because of the unduly suggestive photo array used to secure the arrest warrant (with Dalonte as

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

the only individual with dreadlocks in the photo array of about five others), and because of the

victims' identification of a different suspect, Edward Bunch, who had no credible account of the

gunshot wound to his ankle that was treated at Lakewood Hospital shortly after the incident.

**While in detention, Dalonte suffered not only the loss of his liberty, but also a broken jaw and additional loss of liberty due to alleged probation violations, which would not have occurred but for his unlawful detention.**

43.     Dalonte, a juvenile at the time, was detained from April 28, 2015 until on or around the

August 2015—a period of over three months—without probable cause.

44.     Due to the 18-count criminal complaint on April 29, 2015, his probation officer also

deemed him in violation of probation for a 2014 offense.

45.     And while in detention, on or around June 6, 2015, Dalonte was kicked in the face by

another juvenile inmate. He had an open wound for nearly nine hours before being taken to the

hospital. A doctor determined Dalonte had a broken jaw, for which he had to have surgery.

Dalonte had surgery on or around June 12, 2015. He would not have suffered this physical injury

but for the unlawful detention.

46.     And Dalonte's detention did not end after the no-probable-cause determination.

Although the judge found the prosecution lacked probable cause, she gave the prosecution an

additional opportunity to bring evidence against Dalonte, setting a trial date for around

December 2015.

47. .    The judge did not release Dalonte entirely pending trial, but instead placed him in home

detention, pending the prosecution's dismissal of the case. This was still confinement. Moreover,

while on home detention, Dalonte allegedly violated the terms of such detention and, as a result,

was detained again around September or October 2015. Again, had he not been unlawfully

arrested and prosecuted in the first place, he would not have been in a position to violate the

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

terms of any home detention. Dalonte was therefore detained again, until around December 2015, for an additional two to three months.

48.     On or around December 8, 2015, the prosecutor, having unearthed no new evidence to support its case against Dalonte, dismissed the home-invasion case against Dalonte without prejudice.

49.     On or around the same day, the judge ordered Dalonte be sent to a boys' institution in Pennsylvania. He was released about a year later, in or around December 2016.

50.     The prosecutor has not seen fit to reopen any prosecution against Dalonte for the Alums home invasion in the nearly year and one-half since the dismissal.

51.     Edward Bunch, not having been charged in the Alums home-invasion case, went on to shoot a 16-year-old girl around Christmas time in December 2015.

## CLAIM 1

### FOURTH AMENDMENT MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983 (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

52.     Dalonte incorporates all previous allegations.

53.     Defendants deprived Dalonte of his Fourth Amendment right to be free from unreasonable seizure by making or influencing the decision to prosecute him—and continue to prosecute him—without probable cause.

54.     Specifically, Defendants made, influenced, and/or participated in the decision to prosecute Dalonte White, and a criminal prosecution *was* initiated and continued against Dalonte. Yet there was no probable cause for the prosecution, as Judge Rini found. That decision continued every day while Dalonte was detained. As a consequence of Defendants' conduct, Dalonte suffered an extended deprivation of liberty. The criminal proceeding was resolved in Dalonte's favor: the judge found no probable cause, the prosecution dismissed the case several

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

months later after failing to adduce additional evidence against Dalonte, and the prosecution failed to renew any charges in the nearly year and a half after the dismissal.

55.     As a direct and proximate result of this malicious prosecution, which the City endorsed and adopted as its own unwritten municipal policy, Dalonte has suffered and will continue to suffer damages for which Defendants are liable, including, but not limited to, loss of educational and economic opportunities, physical injury, pain and suffering, emotional distress, embarrassment, and humiliation.

56.     The individual Defendants intentionally, wantonly, recklessly, and maliciously violated the Fourth Amendment of the United States Constitution, and thus are liable for punitive or exemplary damages.

57.     In addition to Dalonte's compensatory damages, Defendants are also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

## CLAIM 2

**FOURTH AMENDMENT FALSE ARREST / FALSE IMPRISONMENT UNDER 42 U.S.C. § 1983 (AGAINST DEFENDANTS OFFICERS #1, #2, AND #3 AND SGT. SHOULDERS AND OFFICER SCHADE IN THEIR OFFICIAL AND PERSONAL CAPACITIES, AND AGAINST DEFENDANT CITY OF CLEVELAND)**

58.     Dalonte incorporates all previous allegations.

59.     Defendants arrested Dalonte based on mere (and as it turns out, unfounded) suspicion, without probable cause.

60.     In order to procure the warrant against Dalonte, Officers #1, #2, and #3 knowingly and deliberately, or with a reckless disregard for the truth, took inappropriate and prejudicial actions against Dalonte, such as including an older photograph of Dalonte with longer braids so as to make his photo look more like the description of the perpetrator, and including no other photos

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

with braids or dreadlocks in the lineup. The manipulation and omission were material to Judge

Sweeney's initial finding of probable cause underlying the arrest warrant, since the suggestive

photo line-up led the witnesses to identify Dalonte and there was no other evidence against

Dalonte.

61.     The constitutional rights Defendants violated were clearly established: conducting an

unduly suggestive lineup that results in a seizure without probable cause is unconstitutional.

Relying upon a warrant obtained by misleading statements is unconstitutional.

62.     As a direct and proximate result of this unlawful arrest, which the City endorsed and

adopted as its own unwritten municipal policy, Dalonte has suffered and will continue to suffer

damages for which Defendants are liable, including, but not limited to, loss of educational and

economic opportunities, physical injury, pain and suffering, emotional distress, embarrassment,

and humiliation.

63.     The individual Defendants intentionally, wantonly, recklessly, and maliciously violated

the Fourth Amendment of the United States Constitution, and thus are liable for punitive or

exemplary damages.

64.     In addition to Dalonte's compensatory damages, Defendants are also liable for attorneys'

fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court

deems appropriate.

### CLAIM 3

**FOURTH AMENDMENT WRONGFUL DETENTION UNDER 42 U.S.C. § 1983 (AGAINST ALL DEFENDANTS, AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)**

65.     Dalonte incorporates all previous allegations.

66.     Defendants deprived Dalonte of his Fourth Amendment right to be free from

unreasonable seizure by continuing to detain him without probable cause, *see Manuel v. Joliet*, 580

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

U.S. __ (2017), including after they acquired information undermining their initial basis for Dalonte's arrest warrant, such as the fact that all three witnesses positively identified Edward Bunch in a photo array. That is, even if Defendants had had probable cause initially—which they did not—they lacked probable cause once they obtained additional information implicating Edward Bunch in the Alums home invasion, including the three victim-witnesses' positive identifications and the April 21 police report showing that a 6'0, 213-lb Bunch was treated for a gunshot wound to the ankle. Yet Defendants continued to detain Dalonte.

67.     As a direct and proximate result of this unlawful detention, which the City endorsed and adopted as its own unwritten municipal policy, Dalonte has suffered and will continue to suffer damages for which Defendants are liable, including, but not limited to, loss of educational and economic opportunities, physical injury, pain and suffering, emotional distress, embarrassment, and humiliation.

68.     The individual Defendants intentionally, wantonly, recklessly, and maliciously violated the Fourth Amendment of the United States Constitution, and thus are liable for punitive or exemplary damages.

69.     In addition to Dalonte's compensatory damages, Defendants are also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

## CLAIM 4

### FOURTEENTH AMENDMENT DUE PROCESS UNDER 42 U.S.C. § 1983 (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

70. Dalonte incorporates all previous allegations.

71. Defendants violated Dalonte's due-process rights when they failed to turn over material, exculpatory information to Dalonte's attorney, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

72. Specifically, Defendants failed to disclose, among other relevant documents, that all three witnesses had identified a suspect other than Dalonte—namely, Edward Bunch. Moreover, Defendant Detectives #1 and #2 actively told witnesses Alums and S.L. not to circle or mark the identification. Obviously, positively identifying a different suspect was favorable to Dalonte, and material to the issue of guilt or innocence. Having this material be disclosed was a clearly established right.

73. Dalonte was prejudiced by the failure to disclose: while the prosecution had this information within mere weeks after Dalonte's arrest, the failure to disclose meant that Dalonte was detained for months before this information was revealed and the judge ultimately determined that Defendants lacked probable cause.

74. As a direct and proximate result of Defendants' due-process violation, which the City endorsed and adopted as its own unwritten municipal policy, Dalonte has suffered and will continue to suffer damages for which Defendants are liable, including, but not limited to, loss of educational and economic opportunities, physical injury, pain and suffering, emotional distress, embarrassment, and humiliation.

75.    The individual Defendants intentionally, wantonly, recklessly, and maliciously violated the Fourteenth Amendment of the United States Constitution, and thus are liable for punitive or exemplary damages.

76.    In addition to Dalonte's compensatory damages, Defendants are also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

### CLAIM 5

### FOURTH AND FOURTEENTH AMENDMENT FAILURE TO TRAIN UNDER 42 U.S.C. § 1983 (AGAINST DEFENDANT CITY OF CLEVELAND)

77.    Dalonte incorporates all previous allegations.

78.    Defendant City of Cleveland failed to train and supervise its officers to ensure they construct proper, not unduly suggestive photo lineups; properly document witness identifications (and do not actively prevent witnesses from making a positive identification); disclose exculpatory, material information to the defense; fully investigate alternative suspects; and otherwise ensure that they have probable cause to pursue a prosecution. As a result of the City's failure, Defendant officers here failed to execute these basic duties properly.

79.    As a direct and proximate result of Defendant's failure to train and supervise, which the City endorsed and adopted as its own unwritten municipal policy, Dalonte has suffered and will continue to suffer damages for which Defendant is liable, including, but not limited to, loss of educational and economic opportunities, physical injury, pain and suffering, emotional distress, embarrassment, and humiliation.

80.    In addition to Dalonte's compensatory damages, Defendant is also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

## CLAIM 6

### MALICIOUS PROSECUTION UNDER OHIO LAW (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

81.    Dalonte incorporates all previous allegations.

82.    Defendants acted with malice in both instituting and continuing the prosecution against Dalonte without probable cause, in violation of Ohio law. And the proceedings were resolved in Dalonte's favor: the judge found no probable cause, the prosecution dismissed the case several months later after being offered a chance to adduce additional evidence and failing to do so, and the prosecution failed to renew any charges in the nearly year and a half after the dismissal. Defendants acted with malice by acting intentionally or wantonly and with reckless disregard for Dalonte's rights. The lack of probable cause also implies that the proceedings were driven by malice.

83.    As a direct and proximate result of Defendants' malicious prosecution, which the City endorsed and adopted as its own unwritten municipal policy, Dalonte has suffered and will continue to suffer damages for which Defendants are liable, including, but not limited to, loss of educational and economic opportunities, physical injury, pain and suffering, emotional distress, embarrassment, and humiliation.

84.    The individual Defendants intentionally, wantonly, recklessly, and maliciously violated Ohio law, and thus are liable for punitive or exemplary damages.

85.    In addition to Dalonte's compensatory damages, Defendants are also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

## CLAIM 7

### FALSE ARREST UNDER OHIO LAW (AGAINST ALL DEFENDANTS EXCEPT JOHN DOE DETECTIVES #1 AND #2, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

86. Dalonte incorporates all previous allegations.

87. Defendants confined Dalonte against his will, for an appreciable time (at least three months) without lawful justification, in violation of Ohio law.

88. As a direct and proximate result of Defendants' false arrest, which the City endorsed and adopted as its own unwritten municipal policy, Dalonte has suffered and will continue to suffer damages for which Defendants are liable, including, but not limited to, loss of educational and economic opportunities, physical injury, pain and suffering, emotional distress, embarrassment, and humiliation.

89. The individual Defendants intentionally, wantonly, recklessly, and maliciously violated Ohio law, and thus are liable for punitive or exemplary damages.

90. In addition to Dalonte's compensatory damages, Defendants are also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

## CLAIM 8

### FALSE IMPRISONMENT UNDER OHIO LAW (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

91. Dalonte incorporates all previous allegations.

92. Defendants confined Dalonte against his will, for an appreciable time (at least three months) without lawful justification, in violation of Ohio law. They continued to do so even after, shortly after Dalonte's arrest, all three witnesses had identified another suspect, which severely

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

undermined any basis for the initial confinement, especially as it was the sole basis for detaining Dalonte.

93.    As a direct and proximate result of Defendants' false imprisonment, which the City endorsed and adopted as its own unwritten municipal policy, Dalonte has suffered and will continue to suffer damages for which Defendants are liable, including, but not limited to, loss of educational and economic opportunities, physical injury, pain and suffering, emotional distress, embarrassment, and humiliation.

94.    The individual Defendants intentionally, wantonly, recklessly, and maliciously violated Ohio law, and thus are liable for punitive or exemplary damages.

95.    In addition to Dalonte's compensatory damages, Defendants are also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

### CLAIM 9

**INTIMIDATION (USING MATERIALLY FALSE OR FRAUDULENT WRITINGS TO ATTEMPT TO INFLUENCE PUBLIC SERVANTS) UNDER OHIO REV. CODE § 2921.03(A) AND (C) (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)**

96.    Dalonte incorporates all previous allegations.

97.    Defendants, with malicious purpose, in bad faith, and/or in a wanton or reckless manner, filed, recorded, and/or used one or more materially false or fraudulent writings in an attempt to influence, intimidate, and/or hinder various public servants in the discharge of such persons' duties. For example, the arrest warrant that swore to Dalonte's guilt was based on an improper photo lineup, and no other evidence. And later, Detectives #1 and #2 caused S.L. and Alums's photo identifications to be false, by telling them not to circle or mark the identification.

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

98.     Such writings were intended to, and did, influence various public servants in the

discharge of their duties, including the judge who was signing off on the arrest warrant and the

prosecutor and other law-enforcement personnel, as well as the judge, all preparing or assessing

Dalonte's case.

99.     These records were intended to pin the Alums home-invasion crime on Dalonte, and

deprive him of his liberty, with no regard for the emotional distress or other injury it would

cause.

100.    Defendants are guilty of using a materially false writing under R.C. 2921.03.

101.    Under R.C. 2921.03(C), Defendants are liable to Dalonte for the injury and loss he

suffered as a result of Defendants' bad-faith or reckless preparation and use of materially false or

fraudulent writings, as well as for reasonable attorneys' fees, court costs, and other expenses

incurred as a result of prosecuting this civil action.

102.    Defendants intentionally, wantonly, recklessly, and maliciously violated Ohio Rev. Code

§ 2921.03, and accordingly are liable to Dalonte for punitive or exemplary damages.

## CLAIM 10

### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE § 2307.60(A)(1) (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

103.    Dalonte incorporates all previous allegations.

104.    As detailed in the claim above, Defendants on one or more occasions committed the

offense of Intimidation under R.C. 2921.03.

105.    Having intentionally deprived Dalonte of his rights under the Fourth and Fourteenth

Amendments to the U.S. Constitution, as detailed above, Defendants also committed the offense

of Interfering with Civil Rights under Ohio Rev. Code § 2921.45.

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

106.   Both of these offenses, i.e., Intimidation under Ohio Rev. Code § 2921.03 and Interfering with Civil Rights under Ohio Rev. Code § 2921.45, are criminal acts under the Ohio law.

107.   Dalonte suffered injuries as a result of Defendants' violations of these criminal statutes.

108.   Under Ohio Rev. Code § 2307.60(A)(1), Dalonte is entitled to recover, in this civil action, full damages caused by Defendants' commission of these criminal offenses, as well as punitive damages and attorneys' fees.

### PRAYER FOR RELIEF

For the reasons stated above, Dalonte respectfully requests the following relief from the Court:

A.   Declare that Defendants' acts and conduct constitute violations of the Fourth and Fourteenth Amendments to the United States Constitution, as well as of 42 U.S.C. § 1983; Ohio Revised Code §§ 2307.60(A)(1), 2921.03, and 2921.45; Ohio malicious-prosecution law, Ohio false-arrest law, Ohio false-imprisonment law, and any other applicable statutory or common law;

B.   Declare that the City is vicariously liable for its employees' acts described above based on the City's custom, policy, and practice of conducting improper, suggestive photo arrays; arresting, detaining, and prosecuting individuals—including juveniles—without probable cause; causing the falsification of photo identifications by telling the witnesses not to mark an identification, failing to disclose material, exculpatory evidence to the defense, and failing to investigate alternative suspects.

C.   Enter judgment in Dalonte's favor on all claims for relief;

D.   Award full compensatory damages including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, embarrassment,

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

and inconvenience that Dalonte has suffered and is reasonably certain to suffer in the future;

E.   Award punitive and exemplary damages for the individual Defendants' egregious, willful, and malicious conduct;

F.   Award pre- and post-judgment interest at the highest lawful rate;

G.   Award Dalonte his reasonable attorneys' fees (including expert fees) and all other costs of suit;

H.   Award all other relief in law or equity, including injunctive relief, to which Dalonte is entitled and that the Court deems equitable, just, or proper.

## JURY DEMAND

Dalonte demands a trial by jury on all issues within this Complaint.

Respectfully submitted,

*/s/ Sandhya Gupta*
Subodh Chandra (0069233)
Sandhya Gupta (0086052)
Patrick Haney (0092333)
Marvin Brown IV (0096128)
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Sandhya.Gupta@ChandraLaw.com
Patrick.Haney@ChandraLaw.com
Marvin.Brown@ChandraLaw.com

*Attorneys for Plaintiff Dalonte White*

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG

## REQUEST FOR SERVICE

TO THE CLERK:

Please issue the Summons and Complaint and serve the Complaint by certified mail to Defendants listed in the Complaint's caption, making return according to law.

/s/ Sandhya Gupta
One of the Attorneys for Plaintiff Dalonte White

Electronically Filed 05/09/2017 21:47 / / CV 17 880097 / Confirmation Nbr. 1063634 / CLKMG