# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**DALONTE WHITE,**

            **Plaintiff,**

**-vs-**

**CITY OF CLEVELAND, et al.,**

            **Defendants.**

**CASE NO. 1:17-CV-01165**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OF OPINION AND ORDER**

This matter comes before the Court upon the Joint Motion to Compel Plaintiff's Deposition Testimony, or, in the Alternative, to Stay Litigation ("Motion to Compel") of Defendants City of Cleveland and Officers Thomas Shoulders, Michael Schade, David Lam, David Santiago, Jr., John Kubas, and Robert Beveridge (collectively, "Defendants"). (Doc. No. 115.) Plaintiff Dalonte White filed a brief in opposition to Defendants' Motion to Compel on October 2, 2019, to which Defendants replied on October 9, 2019. (Doc. Nos. 122, 126.)

The City of Cleveland (the "City") has also filed Objections (Doc. No. 118) to Magistrate Judge Jonathan D. Greenberg's Order (Doc. No. 116) that held Plaintiff was entitled to a Rule 30(b)(6) deposition as noticed in Plaintiff's Second Amended Notice of Deposition of City of Cleveland Under Fed. R. Civ. P. 30(b)(6) (Doc. No. 102). Plaintiff responded to the City's Objections on October 8, 2019. (Doc. No. 125.)

For the following reasons, Defendants' Motion to Compel is DENIED, and the City's Objections are OVERRULED IN PART and SUSTAINED IN PART.

## I. Background

### a. Factual Background

This case arises from Plaintiff's arrest as a suspect in a home invasion that occurred on April 21, 2015 at the home of Colleen Alums. (Doc. No. 23 at ¶¶ 9-10.) As alleged in the Amended Complaint, on April 28, 2015, police arrested Plaintiff for his alleged involvement in the home invasion. (*Id.* at ¶ 25.) The arrest was based on the three victims' identification of Plaintiff in a photo array as the main perpetrator of the home invasion. (*Id.* at ¶¶ 20-22.) However, Plaintiff alleges that the array was highly suggestive for a number of reasons, and that police ignored another suspect, Edward Bunch, who was seen at a hospital only an hour after the home invasion with injuries consistent with what occurred during the home invasion and whose physical characteristics were a much closer match to the description of the main perpetrator. (*Id.* at ¶¶ 11, 13, 18-20.)

As a result of his arrest, Plaintiff—who was a juvenile at the time—was detained at the Cuyahoga County Juvenile Detention Center. (*Id.* at ¶ 26.) During his detention, another juvenile inmate kicked Plaintiff in the face and broke his jaw, which necessitated surgery. (*Id.* at ¶ 43.) During this initial detention, Defendants assert that Plaintiff also assaulted two inmates, which resulted in two separate delinquency adjudications. (Doc. No. 115 at 8.) Defendants allege one of the victims in those attacks was the juvenile who subsequently attacked Plaintiff and broke his jaw. (*Id.*)

In August 2015, Plaintiff was released and placed on home detention pending the prosecution's dismissal of the home invasion case, as the Cuyahoga County Juvenile Court had determined that the prosecution lacked probable cause to prosecute Plaintiff. (Doc. No. 23 at ¶¶ 40-41, 45.) This ruling was based in part on the fact that, shortly after Plaintiffs' arrest and detention,

the three victims went to the police station to view additional photo arrays, and all three victims independently identified Bunch as the main perpetrator of the home invasion. (*Id.* at ¶¶ 27-28, 40.)

While on home detention, Plaintiff allegedly violated the terms of his detention and was detained again around September or October 2015. (*Id.* at ¶ 45.) Defendants contend Plaintiff's re-detention was the result of his arrest in connection with a menacing report, although Plaintiff disputes this and asserts he was arrested based on an open warrant unrelated to the September 2015 menacing incident. (Doc. No. 115 at 4; Doc. No. 122 at 2-3.) According to Defendants, Plaintiff committed a third assault against another inmate after he was re-detained. (Doc. No. 115 at 8-9.)

On December 8, 2015, the prosecutor, having not discovered any new evidence to support its case against Plaintiff, dismissed the home-invasion case against him. (Doc. No. 23 at ¶ 46.)

### b. Procedural History

On May 9, 2017, Plaintiff filed suit against the City and several Cleveland Division of Police officers in the Court of Common Pleas of Cuyahoga County, Ohio. (Doc. No. 1-1.) Shortly thereafter, the City removed the case to this Court. (Doc. No. 1.) Plaintiff then filed an Amended Complaint against Defendants on August 3, 2017. (Doc. No. 23.) Plaintiff asserts a variety of claims under 42 U.S.C. § 1983 and state law based on Defendants' alleged improper conduct during the investigation of the home invasion, the arrest and detention of Plaintiff without probable cause, and the failure to disclose exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The Amended Complaint also contains a claim against the City for its failure to properly train and supervise its officers. Based on these claims, Plaintiff seeks a variety of forms of relief, including compensatory damages for pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, and inconvenience.

From July to September 2019, the Court referred several discovery disputes to the Magistrate Judge for resolution. (Doc. Nos. 81-1, 86, 103, 104.) One of these disputes concerned Plaintiff's notice of the deposition of the City under Rule 30(b)(6). (Doc. No. 102.) The City objected to the noticed topics of questioning as duplicative of other discovery, overly broad, and seeking testimony protected by the attorney-client privilege and work product doctrine. On September 20, 2019, the Magistrate Judge held that Plaintiff was entitled to the Rule 30(b)(6) deposition as noticed. (Doc. No. 116.) The City then filed Objections to that Order. (Doc. No. 118.)

In addition, on September 10, 2019, the parties contacted the Court regarding a dispute that arose during Plaintiff's deposition related to Plaintiff's refusal to answer certain questions based on his Fifth Amendment right against self-incrimination. (Doc. No. 111.) In accordance with the Court's instructions, the Defendants then filed a Motion to Compel Plaintiff's deposition testimony. (Doc. No. 115.) Therein, Defendants contend that Plaintiff has waived his right to remain silent and seek to compel Plaintiff to answer questions related to the facts and circumstances of certain incidents that occurred both before and after his arrest on April 28, 2015 for the home invasion. Alternatively, should the Court determine that Plaintiff has not waived his right to remain silent, Defendants request a stay of this litigation until the statute of limitations has expired for crimes for which Plaintiff fears prosecution.

Both the City's Objections to the Magistrate Judge's Order and Defendants' Motion to Compel are fully briefed and ripe for review.

## II. Defendants' Motion to Compel

In their Motion to Compel, Defendants seek to compel Plaintiff to answer questions related to the facts and circumstances of (1) crimes to which he admitted committing pursuant to plea

agreements in juvenile court prior to his arrest on April 28, 2015 for the home invasion; (2) Plaintiff's assaults of other inmates while he was in detention following the April 28, 2015 arrest; and (3) the menacing incident that occurred in September 2015. Defendants contend that this information is relevant to whether there was probable cause to arrest Plaintiff for the home invasion and to damages, and that Plaintiff waived his right to remain silent either by his admissions in juvenile court or by filing the present lawsuit, which placed the information at issue.[1] Alternatively, Defendants' request a stay of the litigation until after the statute of limitations has passed for any incidents for which the Court concludes Plaintiff has not waived his Fifth Amendment privilege.

In response, Plaintiff indicates that, after Defendants filed their Motion to Compel, he testified at his continued deposition regarding the facts and circumstances of the assault charges he picked up while in detention. As a result, Plaintiff argues that Defendants' motion is moot as to the assault incidents. In their reply brief, Defendants do not contest this point. As such, the Court will assume that Plaintiff has testified regarding the assault charges and will deny that portion of Defendants' Motion to Compel as moot.

With regard to Plaintiff's prior juvenile adjudications, Plaintiff asserts that his prior admissions did not waive his Fifth Amendment rights because Plaintiff remains vulnerable to future prosecution for other charges arising out of the same facts and circumstances. In addition, Plaintiff

---

[1] For the first time in their reply brief, Defendants also argue that Plaintiff's invocation of his Fifth Amendment right against self-incrimination is improper because he cannot demonstrate a real danger of incrimination, as Plaintiff's counsel indicated he was asserting the privilege "out of an abundance of caution." (Doc. No. 126 at 3-4.) However, because Defendants failed to raise this issue in their initial motion, the Court may decline to consider it. *See, e.g., Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007) ("Big Lots failed to raise its 'good faith' argument in its opening brief. I decline to consider those arguments, and deem them waived for purposes of defendants' motion for summary judgment."). Moreover, "[t]he validity of an asserted Fifth Amendment privilege . . . turns not on the probability or likelihood of prosecution, but rather on the possibility of prosecution." *Convertino v. U.S. Dep't of Justice*, 795 F.3d 587, 594 (6th Cir. 2015). As such, even if Defendants' had properly raised the issue, Plaintiff's showing that there is a possibility that he would be prosecuted for additional crimes is sufficient to uphold the privilege.

argues that the filing of this lawsuit did not waive his right to remain silent for either his prior juvenile adjudications or the September 2015 menacing incident because neither are relevant to any of the issues in this case. The Court agrees with Plaintiff's arguments, and therefore denies Defendants' Motion to Compel. Moreover, because the information is not relevant, there is no need to stay this case to allow for Plaintiff's testimony after the applicable statutes of limitations have expired.

### a. Standard of Review

Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 37(a) permits a party to move for an order compelling discovery, including an order compelling an answer by a deponent. Fed. R. Civ. P. 37(a)(3)(B)(i). On a motion to compel discovery, "[t]he moving party bears the burden of demonstrating relevance." *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, No. 2:16-cv-557, 2019 WL 1760069, at *4 (S.D. Ohio Apr. 22, 2019). However, "[i]f the movant makes this showing, then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.* (quoting *Ball v. Kasich*, No. 2:16-CV-282, 2018 WL 6242230, at *3 (S.D. Ohio Nov. 29, 2018)).

### b. Analysis

The Fifth Amendment to the United State Constitution provides that "[n]o person shall be . . . . compelled in any criminal case to be a witness against himself." "This privilege against self-incrimination 'protects against any disclosures the witness reasonably believes could be used in a criminal prosecution [against him] or could lead to other evidence that might be so used.'" *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1074 (6th Cir. 1990) (quoting *Kastigar v. United States*,

406 U.S. 441, 444-45 (1972)). In addition, "[t]he privilege may be invoked in the course of any proceeding, criminal or civil." *Id.*

### i. Waiver Based on Plaintiff's Admissions in Juvenile Court

Defendants first contend that by admitting to charges as a juvenile, Plaintiff waived his right to remain silent about the facts and circumstances underlying those juvenile adjudications. The Court finds that Plaintiff's admissions in juvenile court did not waive his Fifth Amendment privilege regarding these facts and circumstances because his testimony could subject him to additional criminal liability.

The Sixth Circuit has held that "[a]lthough a defendant pleading guilty to an offense waives the constitutional privilege with regard to the offense admitted, he does not thereby submit 'a blanket waiver as to other offenses that might form the basis of later charges.'" *Bank One*, 916 F.2d at 1075 (quoting *United States v. Seavers*, 472 F.2d 607, 611 (6th Cir. 1973)). Thus, multiple courts have permitted a party to assert the Fifth Amendment privilege regarding testimony related to a previous crime despite having pled guilty to that crime when the testimony could subject the party to additional prosecution. For example, in *United States v. Smith*, the Sixth Circuit upheld a co-defendant's assertion of his Fifth Amendment privilege because his "testimony regarding the November 9, 1998 incident to which he pleaded guilty potentially subjected him to other charges such as perjury or obstruction of justice." 245 F.3d 538, 543 (6th Cir. 2001); *see also Bank One*, 916 F.2d at 1075 (holding defendants' "fifth amendment rights did survive their *nolo* plea as to the bank fraud charges because they remained vulnerable to further federal and state prosecution"); *United States v. Damiano*, 579 F.2d 1001, 1002 (6th Cir. 1978) (holding pleading guilty to passing and uttering counterfeit obligations did not waive the defendant's privilege with regard to "the source or

acquisition of the notes . . . because the possibility existed that he might be subject to state criminal prosecution"); *Seavers*, 472 F.2d at 610 ("Since transportation of the vehicle (and aiding and abetting in transportation) was all that he had pled guilty to, we do not believe he had waived the privilege with respect to acquisition of the vehicle and unauthorized possession of it in California, both offenses for which there existed the possibility of State prosecution.").

Here, Plaintiff's testimony regarding the facts and circumstances of the incidents underlying his previous juvenile adjudications would potentially subject him to additional charges. Prior to the April 28, 2015 arrest, Plaintiff had previously admitted in juvenile court and been adjudicated delinquent for (1) trespassing and disorderly conduct, (2) robbery, (3) assault and theft, and (4) assault and theft. Plaintiff has indicated that his testimony regarding these incidents could subject him to additional charges, including charges for menacing, vandalism, and accomplice liability. Plaintiff additionally notes, and Defendants do not dispute, that prosecution would not be precluded for these additional charges because they require different proof than the offenses for which Plaintiff was originally charged. *See, e.g.*, *Turner v. United States*, 885 F.3d 949, 954 (6th Cir. 2018) ("[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.") (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Because Plaintiff remains vulnerable to further prosecution for other offenses, his admissions in juvenile court do not serve as a blanket waiver regarding all of the facts and circumstances underlying Plaintiff's previous juvenile adjudications.

The only case cited by Defendants in which a prior finding of guilt precluded the assertion of the right against self-incrimination is not persuasive here, as the court in that case found that the individual attempting to assert the right "face[d] no further criminal liability regarding th[e] incident

for which criminal jeopardy has already attached and been imposed." *Leary v. Livingston Cty.*, No. 03-60021, 2006 WL 1547761, at *1 (E.D. Mich. May 31, 2006). In contrast, Plaintiff's testimony could give rise to further criminal liability. As such, Plaintiff has not completely waived his right to remain silent through his prior admissions in juvenile court.

### ii.  Waiver Based on Plaintiff's Filing of the Present Action

Next, Defendants argue that Plaintiff waived his right to remain silent by filing the present action, which placed Plaintiff's criminal conduct at issue. Specifically, Defendants claim his conduct is relevant to whether probable cause existed for Plaintiff's arrest and to damages. In response, Plaintiff contends that the events Defendants wish to inquire about are not actually relevant to either issue. The Court concludes that Defendants have not shown a substantial need for the requested information and will therefore deny the Defendants' Motion to Compel.

As previously noted, "[t]he Fifth Amendment privilege applies in both the civil and criminal contexts." *Rothstein v. Steinberg*, No. 5:08CV0673, 2008 WL 5716526, at *2 (N.D. Ohio Dec. 23, 2008). Additionally, "[t]he Supreme Court has held that a civil litigant who chooses to assert his Fifth Amendment privilege may not suffer 'the imposition of any sanction which makes assertion of the Fifth Amendment privilege "costly."'" *Id.* (quoting *Spevack v. Klein*, 385 U.S. 511, 515 (1967)). This does not mean, however, "that assertions of the privilege will never have adverse consequences for civil litigants." *King v. Harwood*, No. 3:15-CV-762-CHB, 2019 WL 4751553, at *5 (W.D. Ky. Sept. 30, 2019). Instead, "[w]hile the court 'should strive to accommodate a party's Fifth Amendment interests, it also must ensure that the opposing party is not unduly disadvantaged.'" *Rothstein*, 2008 WL 5716526, at *3 (quoting *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996)).

Accordingly, the imposition of sanctions, including dismissal, may be appropriate when assertion of the privilege would prevent the discovery of issues at the heart of a lawsuit. *King*, 2019 WL 4751553, at *5; *see also Rothstein*, 2008 WL 5716526, at *2 ("[T]he Fifth Amendment does not prohibit adverse inferences against parties to a civil action when they refuse to testify in response to probative evidence offered against them."). "To hold otherwise would . . . enable [a] plaintiff to use his Fifth Amendment shield as a sword." *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979).

On the other hand, "the Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no less burdensome effective means of obtaining it." *King*, 2019 WL 4751553, at *6 (quoting *Serafino*, 82 F.3d at 518). For instance, in *King*, the defendant sought the dismissal of a malicious prosecution claim under 42 U.S.C. § 1983 based on the plaintiff's assertion of her Fifth Amendment privilege in response to questions about the cause of two bullet holes in the floor of her home. *Id.* at *2-3. The defendant argued that the cause of the bullet holes was relevant to whether there was probable cause for the prosecution of the plaintiff. *Id.* at *6. However, the court noted that probable cause determinations are made based on an officer's knowledge at the time of an arrest, and the defendant did not know the cause of the bullet holes at the time of his investigation. *Id.* at *6-7. Accordingly, the court held that the cause of the bullet holes was irrelevant, as the defendant could not "use discovery in an attempt to retroactively bolster a probable cause determination he made thirteen years ago." *Id.* at *7. Thus, the court denied the defendant's motion to dismiss because there was not a substantial need for the information. *Id.*

Similarly, in *Swann v. City of Richmond*, the plaintiff sued several officers for unreasonably shooting him while he was in the backseat of a car. 462 F. Supp. 2d 709, 711 (E.D. Va. 2006). During

his deposition, the plaintiff refused to answer questions about his alleged drug use on the day of the shooting, and the defendants sought either dismissal or an adverse presumption against the plaintiff. *Id.* at 711-12. The court found the plaintiff's drug use was not relevant to whether the defendants acted reasonably when they shot the plaintiff, as none of the defendants saw him engage in any drug related criminal activity before they shot him. *Id.* at 714. And while the plaintiff's drug use was relevant in assessing plaintiff's memory of the incident, that issue was not central to the case and defendants could obtain information regarding the presence of drugs in plaintiff's system from other sources, such as hospital records from the night of the shooting. *Id.* at 714-15. As a result, the court denied the defendants' motion. *Id.* at 715; *see also Brutcher v. Jefferson Cty., Mo.*, No. 4:07CV1934 JCH, 2009 WL 604476, at *2-3 (E.D. Mo. Mar. 5, 2009) (holding plaintiff did not waive Fifth Amendment privilege by filing suit when he refused to answer questions that "seemingly bear no relation to the majority of his claims in the instant suit").

In this case, similar to the situation in *King*, Defendants cannot show that Plaintiff's testimony regarding his juvenile adjudications is relevant to whether probable cause existed for Plaintiff's arrest. As the court in *King* recognized, in determining whether an arrest is supported by probable cause, courts "consider only the information possessed by the arresting officer at the time of the arrest." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). Thus, Plaintiff's testimony regarding the specific facts and circumstances underlying his prior juvenile adjudications is irrelevant to whether Defendants had probable cause to arrest Plaintiff after the home invasion in April 2015. Only Defendants' knowledge at the time of the arrest is pertinent, and Defendants cannot use discovery to retroactively support their earlier probable cause determination. The September 2015 menacing

incident is also clearly irrelevant to whether probable cause existed for Plaintiff's arrest for the home invasion, as it occurred several months after the arrest.

Defendants have also not shown that Plaintiff's testimony regarding the specific facts underlying his prior juvenile adjudications or the September 2015 menacing incident is relevant to the cause or extent of Plaintiff's damages. Defendants initially argued that Plaintiff's testimony was relevant to the cause of the broken jaw he suffered while in detention, as Defendants contend that Plaintiff had previously assaulted the individual who later broke his jaw. However, after Defendants filed their Motion to Compel, Plaintiff testified as to the circumstances regarding each of the assault charges against him that arose during his detention. Thus, Defendants' argument regarding the cause of Plaintiff's broken jaw appears to be moot. Defendants have not demonstrated any similar connection between Plaintiff's prior juvenile adjudications or the September 2015 menacing incident and Plaintiff's broken jaw or any other physical injury for which he is claiming damages.

Defendants also contend that Plaintiff's testimony is relevant to his claim for damages as a result of his prolonged detention. Again, Defendants have not shown a substantial need for Plaintiff's testimony in this regard. Plaintiff's prior juvenile adjudications plainly did not cause Plaintiff's detention or re-detention associated with the home invasion arrest. However, Defendants assert that Plaintiff's re-detention in September 2015 was a result of his arrest in connection with the menacing incident and cite to the following deposition testimony from Plaintiff for support:

Q. You were arrested for menacing, weren't you?

A. No, they didn't charge me at that.

Q. But I'm not saying you were charged. I'm asking if you were arrested.

A. Oh, I guess so.

(Doc. No. 115-1 at 251:20-24.)  In response, Plaintiff argues the menacing incident is irrelevant to any basis for his re-detention in September 2015.  Plaintiff contends he was arrested in September 2015 because he had an open warrant, as indicated in an email from Officer Lam on September 18, 2015 in which he wrote, "Unrelated-I arrested Dalonte White again last night.  He had an open admit from the [Cuyahoga County Juvenile Justice Detention Center]."  (Doc. No. 123-1.)  Additionally, Plaintiff cites his own deposition testimony showing that he had the open warrant because he was kicked out of the Applewood program that was part of the conditions for his home detention.  (Doc. No. 122-6 at 328:13-16.)  Regardless of this factual dispute, even if Plaintiff's re-detention was caused by the menacing incident, it is unclear why the details of that incident would be particularly relevant if the only goal is to show causation with respect to his re-detention.  What matters is the reason Plaintiff was ultimately re-detained—either because of the menacing report or because of his violation of the terms of his home detention.  And Plaintiff appears to have already testified on that issue.  As such, the underlying details of the menacing incident would not appear to provide any additional light on the reason for Plaintiff's re-detention.

Next, Defendants assert Plaintiff's criminal history is "relevant to any psychological diagnosis for which he might be seeking damages" because "[a]ny treating provider will automatically look to the patient's criminal history, including the facts and circumstances surrounding each prior crime, in assessing the patient."  (Doc. No. 126 at 4.)  Defendants do not cite anything in support of this contention, and the Court is not convinced it is enough to show a substantial need for Plaintiff's testimony.  As Plaintiff points out, information about Plaintiff's mental health would more appropriately come from Plaintiff's medical and counseling records.

Finally, Defendants reference other categories of damages for which they claim that Plaintiff's prior juvenile adjudications and the September 2015 menacing incident are relevant. Specifically, Defendants point to Plaintiff's claims for damages related to Plaintiff's emotional distress, embarrassment and humiliation, and loss of educational and economic opportunities. Besides several conclusory statements, however, Defendants provide almost no reasoning in support of their argument. (*E.g.*, Doc. No. 126 at 5-6 ("Specifically, Plaintiff's membership in the Heartless Felons and Heartless Money Family and activity incident thereto, in addition to previous delinquency charges and adjudications, and other related conduct are directly relevant to the claims for damages Plaintiff sets forth in his First Amended Complaint.").) This is not sufficient to show a substantial need to further inquire into the details of either Plaintiff's prior juvenile adjudications or the September 2015 menacing incident.

In addition, all of the cases cited by Defendants in which courts have either dismissed a party's claim or imposed sanctions based on a party's assertion of the Fifth Amendment privilege are distinguishable. In each case, the assertion of the privilege was either used to enable the plaintiff to avoid meeting his burden of proof or prevented the discovery of information that was central to the litigation. *Tribble v. Tew*, 760 F. App'x 718, 721 (11th Cir. 2019) ("Tribble cannot use the Fifth Amendment both as a shield against self-incrimination and as a sword allowing him to indefinitely encumber the other parties' property rights without meeting his burden of proof."); *Amador v. Andrews*, No. 03 Civ. 0650(KTD)(GWG), 2010 WL 2365855, at *2-3 (S.D.N.Y. June 10, 2010) (drawing adverse inference against defendant because he refused to testify regarding the sexual misconduct incidents at issue in the suit); *Tene v. City and Cty. of San Francisco*, No. C 00–03868 WHA, 2004 WL 1465726, at *9 (N.D. Cal. May 12, 2004) ("[P]laintiff has refused to answer

questions directed to issues central to his case."); *Brown v. Ames*, 346 F. Supp. 1176, 1177 (D. Minn. 1972) (holding dismissal was warranted if plaintiffs refused to testify regarding "their activities and conversations" on the day of their arrest for which they claimed defendants lacked probable cause). In this case, Plaintiff has not avoided his burden of proof through his assertion of the privilege or refused to answer questions that are relevant to any central issues. Therefore, Plaintiff's Fifth Amendment privilege must be upheld and Defendants' Motion to Compel his testimony is denied.

### iii.  Alternative Request for a Stay

As an alternative to compelling Plaintiff's deposition testimony, Defendants request that the Court stay this litigation until the statutes of limitations have run on crimes for which Plaintiff fears prosecution. Because the Court has determined that Defendants do not have a substantial need for any of the testimony that they moved to compel, a stay is not warranted. As such, Defendants' alternative request for a stay is denied as well.

## III.  Defendants' Objections to the Magistrate Judge's Order

On September 4, 2019, the Court referred the parties' dispute over the scope of Plaintiff's Rule 30(b)(6) deposition notice to the Magistrate Judge for resolution. (Doc. No. 103.) Before the Magistrate Judge, the City objected to the following topics for questioning in Plaintiff's Rule 30(b)(6) notice of deposition:

> 1. All facts, witnesses, and documents on which the City bases the contentions, assertions, denials, and affirmative defenses in the City's answer to the First Amended Complaint.
>
> 2. All evidence of Dalonte White's involvement in the April 21, 2015, incident at 3255 W. 54th St. ("the Colleen Alums case").
>
> 3. All evidence of Edward Bunch's involvement in the Colleen Alums case.
>
> 4. All Brady material from the Colleen Alums case.

6. Cleveland Division of Police policies, procedures, and practices from 2009 to the present—including in the Colleen Alums case—regarding:
      a. creating and maintaining administrative records;
      b. creating and maintaining training records;
      c. creating and maintaining investigative records;
      d. investigating incidents such as the Colleen Alums case;
      e. collecting forensic evidence;
      f. establishing probable cause;
      g. creating and administering photo arrays;
      h. obtaining warrants;
      i. disclosing Brady material; and
      j. responding to discovery requests.

7. Cleveland Division of Police training and supervision from 2009 to the present regarding:
      a. creating and maintaining administrative records;
      b. creating and maintaining training records;
      c. creating and maintaining investigative records;
      d. investigating incidents such as the Colleen Alums case;
      e. collecting forensic evidence;
      f. establishing probable cause;
      g. creating and administering photo arrays;
      h. obtaining warrants;
      i. disclosing Brady material; and
      j. responding to discovery requests.

(Doc. No. 102.) Despite the City's protests, the Magistrate Judge held that Plaintiff was entitled to take a Rule 30(b)(6) deposition of the City as noticed. The City has now objected to the Magistrate Judge's decision as failing to address the City's concerns that these topics are duplicative of other discovery that has been produced, are overly broad, and seek testimony protected by the attorney-client privilege and the work product doctrine. Plaintiff contends that the City's Objections should not even be considered because they are not sufficiently specific, and that, even if the Court does entertain the City's Objections, the Magistrate Judge's Order should be upheld. The Court finds that the City's Objections lack merit, except with regard to the scope of Topics 6 and 7.

16

### a. Standard of Review

When a party objects to a magistrate judge's order regarding a non-dispositive matter, the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); LR 72.3(a). "The 'clearly erroneous' standard applies to the magistrate judge's findings of fact." *Diorio v. TMI Hosp.*, No. 4:15-cv-1710, 2017 WL 1399869, at *1 (N.D. Ohio Apr. 19, 2017). Under this standard, "[a] finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, No. 1:96-CV-01780, 2006 WL 456479, at *1 (N.D. Ohio Feb. 24, 2006) (quoting *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)).

On the other hand, a "magistrate judge's legal conclusions are reviewed under the 'contrary to law' standard." *Diorio*, 2017 WL 1399869, at *1. The "contrary to law" standard is the "same standard the Sixth Circuit uses to review district court evidentiary rulings on questions of law," which is an "abuse of discretion" standard. *JGR, Inc.*, 2006 WL 456479, at *1. An abuse of discretion occurs when "a court improperly applies the law or uses an erroneous legal standard." *Id.* (citations and internal quotations omitted). "Although legal authority may support an objection, the critical inquiry is whether there is legal authority that supports the magistrate's conclusion, in which case there is no abuse of discretion." *Diorio*, 2017 WL 1399869, at *2 (quoting *Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-CV-36, 2014 WL 309948, at *2 (S.D. Ohio Jan. 28, 2014)). Indeed, "[t]hat reasonable minds may differ on the wisdom of a legal conclusion does not mean it is clearly erroneous or contrary to law." *Id.*

### b. Analysis

Rule 30(b)(6) provides, in pertinent part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

Thus, "[a] 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity." *Smith v. General Mills, Inc.*, No. C2 04–705, 2006 WL 7276959, at *5 (S.D. Ohio Apr. 13, 2006) (quoting *Sabre v. First Dominion Capital, LLC*, No. 01 Civ 2145, 2002 WL 31556379, at *2 (S.D.N.Y. Nov. 7, 2002)). According to the Advisory Committee Notes to Rule 30(b)(6), the rule was meant to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it" and to reduce the number of depositions "by a party uncertain of who in the organization has knowledge."

### i. Specificity of Objections

Before reaching the substance of the City's Objections, the Court must address Plaintiff's argument that the City's Objections should not even be considered because the City has failed to object with the required specificity. Local Rule 72.3(a) requires an objecting party to "specifically designate the order, or part thereof, appealed from and the basis for any objection thereto." As such, merely asserting disagreement with a magistrate judge's order is not sufficient. *See Amarado Oil Co., Ltd. v. Davis*, No. 5:12cv627, 2013 WL 4680418, at *1 (N.D. Ohio Aug. 30, 2013) ("Beyond

disagreeing with the magistrate judge's determination, Amarado does not point to the specific portion of the Order it objects to, as required by Local Rule 72.3(a)."). While the City's Objections largely rehash the same arguments from its position paper submitted as part of the underlying dispute, the City does assert certain specific disagreements with the Magistrate Judge's Order, and the Court will consider the merits of the City's Objections.

### ii. Duplicative

The City argues that the Magistrate Judge erred in approving Topics 1-4 and 6 because those topics seek testimony concerning the facts of the home invasion investigation, which is duplicative of the City's voluminous production of documents and the depositions of six Cleveland Division of Police officers involved in the investigation that have been or will be taken. As a result, the City argues that no reasonable purpose is served by deposing it on the facts of the underlying investigation. The Court disagrees and finds the Magistrate Judge's decision approving these areas of inquiry was not clearly erroneous or contrary to law.

Multiple courts have rejected the "argument that prior deposition testimony from individual fact witnesses relieves a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition." *Smith*, 2006 WL 7276959, at \*5. For example, in *Smith*, the defendant argued a Rule 30(b)(6) deposition was duplicative because the opposing party had noticed the depositions of fourteen fact witnesses who were the only people with relevant knowledge regarding the litigation. *Id.* at \*4-5. The court found the defendant's argument unpersuasive because, unlike regular fact witnesses, Rule 30(b)(6) witnesses bind the entity that they are representing and are responsible for providing all of the relevant information known or reasonably available to the entity. *Id.* at \*5-6. As such, the Court found the requested testimony was not duplicative. *Id.* at \*6.

Similarly, in *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, the court found the plaintiff was entitled to Rule 30(b)(6) deposition testimony on a topic despite two fact witnesses previously testifying on the same topic. No. 2:15-cv-3023, 2018 WL 3358641, at *12 (S.D. Ohio July 10, 2018).

Consequently, neither the City's production of documents nor the fact that other witnesses have testified regarding the investigation of the home invasion excuse the City from providing a representative or representatives to testify. Thus, the Court cannot find that the Magistrate Judge's decision permitting a Rule 30(b)(6) deposition on Topics 1-4 and 6 as noticed by Plaintiff was clearly erroneous or contrary to law.

Nor do the cases cited by the City warrant a different conclusion. *See Devereux v. Knox County, Tennessee*, No. 3:17-CV-00197-JRG-HBG, 2019 WL 1058155 (E.D. Tenn. Mar. 6, 2019); *Jones v. Hernandez*, No.: 16-CV-1986-W(WVG), 2018 WL 539082 (S.D. Cal. Jan. 23, 2018). In *Devereux*, the court permitted extended discovery into the specific issue of spoliation in the form of interrogatories and a single deposition, and simply did not permit an additional Rule 30(b)(6) deposition because it found it unnecessary. *Devereux*, 2019 WL 1058155, at *1, *3. And while *Jones* is closer to being on point, there is clearly legal authority that supports the Magistrate Judge's decision, and the fact that *Jones* provides some support for the City's argument is not enough to conclude the Magistrate Judge's decision was clearly erroneous or contrary to law.

### iii. Overly Broad

The City also contends that Topics 1, 6, and 7 are overly broad, and therefore should have been precluded entirely or limited in scope by the Magistrate Judge. The Court finds no reason to overturn the Magistrate Judge's decision with regard to Topic 1, but does conclude that the temporal scope of Topics 6 and 7 is overly broad.

With respect to Topic 1, numerous courts have held that a party may use a Rule 30(b)(6) deposition to inquire into the factual bases for another party's claims or defenses. *E.g.*, *Smith*, 2006 WL 7276959, at *2-3 (denying motion for protective order based on Rule 30(b)(6) deposition notice regarding "the factual bases supporting the allegations in GMO's cross claim against Kinney"); *Miller v. Experian Info. Sol., Inc.*, No. 3:13–cv–90, 2014 WL 7176620, at *1-2 (S.D. Ohio Sept. 18, 2014) (denying motion for protective order based on Rule 30(b)(6) deposition notice regarding the factual bases for the "denials and/or qualified admissions in TransUnion's Answer to the Amended Complaint"). Indeed, even in the case relied on by the City, the court ultimately approved a Rule 30(b)(6) deposition on the "facts, information, and documentation that were utilized and/or relied upon in [the plaintiff's] claim and investigation." *Alvey v. State Farm Fire & Casualty Co.*, No. 5:17-CV-00023-TBR-LLK, 2018 WL 826379, at *7 (W.D. Ky. Feb. 9, 2018). As such, Topic 1, which relates to the City's support for the statements in its Answer to Plaintiff's Amended Complaint is not overly broad, and the City's Objections with regard to the scope of Topic 1 are overruled.

The City also objects to Topics 6 and 7 as being overly broad. The City argues that because the events at issue in this case took place in 2015, there is no need for testimony regarding the City's policies, procedures, practices, training, and supervision from 2009 to the present. The Court agrees. Generally, such discovery in suits involving § 1983 claims is much more limited, unless the plaintiff has demonstrated the relevance of the defendant's policies and procedures for an expanded period of time. *See Velez v. City of New York*, No. CV 2004–1775(ENV)(MDG), 2010 WL 2265443, at *2 (E.D.N.Y. June 2, 2010) (limiting the production of documents related to the defendant's policies and procedures to "those that were in effect at the time of the incident"); *Doe v. City of San Diego*, No. 12-cv-0689-MMA (DHB), 2013 U.S. Dist. LEXIS 190188, at *54-57 (S.D. Cal. Mar. 29, 2013)

(holding the defendant must produce its policies and procedures going back to 1993 because the officer who allegedly sexually assaulted the plaintiff was hired in 1993).

Plaintiff asserts the temporal scope of Topics 6 and 7 is appropriate in light of the fact that he has brought "*Monell* custom-policy-practice claims against the City," but fails to provide any specific justifications for inquiring into the City's policies, procedures, practices, training, and supervision going back a full ten years. (Doc. No. 125 at 10.) Nor do the cases cited by Plaintiff provide support for that broad of an inquiry in the instant action, as both cases involved discrimination in employment—not § 1983 claims. *See Murphy v. Kmart Corp.*, 255 F.R.D. 497 (D.S.D. 2009); *Hohn v. BNSF Ry. Co.*, No. 8:05CV552, 2007 WL 2572440 (D. Neb. May 10, 2007). Accordingly, approving Plaintiff's Rule 30(b)(6) notice with regard to the temporal scope of Topics 6 and 7 was contrary to law. The Court will thus modify Topics 6 and 7 solely with respect to the timeframe for which Plaintiff may inquire. Questioning on Topics 6 and 7 shall be limited to 2014 to the present, which is the timeframe initially requested by the City in its communications with Plaintiff. (Doc. No. 125-1 at Ex. A-1.)

### iv. Attorney-Client Privilege and Work Product Doctrine

Finally, the City argues that the Magistrate Judge's Order fails to address the City's concerns that Topics 1, 6(j), and 7(j) invade the attorney-client privilege and work product doctrine. Once again, the Court concludes the Magistrate Judge appropriately overruled the City's arguments.

The City's argument with regard to Topic 1 is not fully developed, but, as Plaintiff notes, the City does appear to at least suggest that Topic 1 invades the attorney-client privilege and work product doctrine. The Court finds this argument unpersuasive, as multiple courts have held that similar topics noticed for Rule 30(b)(6) depositions do not violate either the attorney-client privilege or the work

product doctrine. *E.g.*, *Smith*, 2006 WL 7276959, at *4 (holding "the attorney-client privilege does not preclude inquiry into the factual bases of the cross claims" and the work product privilege would not be implicated as long as questions did not elicit "'counsel's advice' or 'counsel's view as to the significance or lack thereof of particular facts, or any other matter that reveals . . . counsel's mental impressions'"); *Miller*, 2014 WL 7176620, at *2 ("TransUnion also objects to Plaintiff's notice on the grounds that it is overly broad and would require TransUnion to reveal privileged information. . . . The Court disagrees. A Rule 30(b)(6) notice, as here, may properly seek the factual basis for another party's claims or defenses."); *United States v. Holland*, No. 13-cv-10082, 2017 WL 1354178, at *4 (E.D. Mich. Apr. 13, 2017) (rejecting the plaintiff's argument that a deposition regarding "the factual bases of the allegations set forth by Plaintiff in the Second Amended Complaint" would "essentially call[] for a deposition of [Plaintiff's] trial counsel that would invade attorney work product").

The sole case cited by the City in support of its argument with regard to Topic 1 is distinguishable, as the Rule 30(b)(6) deponents in that case were expected to be lawyers and "barring the deposition" was "a result that accords with the negative light in which depositions of opposing counsel are held." *S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992). In contrast, Plaintiff is not seeking to depose the counsel for any Defendants. In addition, Plaintiff has indicated that he does not intend to inquire into counsel's advice or mental impressions. Accordingly, the Magistrate Judge's holding with respect to Topic 1 was not clearly erroneous or contrary to law.

With regard to Topics 6(j) and 7(j), the City argues that inquiring into its procedures for responding to discovery requests will invade the attorney-client privilege and work product doctrine. Beyond the City's mere assertion, it provides no explanation for why this inquiry would violate any privilege. Courts have held that discovery about discovery may be permissible and that such

discovery "does not ordinarily or necessarily entail revealing confidential client communications." *Ruiz-Bueno v. Scott*, No. 2:12–cv–0809, 2013 WL 6055402, at *4 (S.D. Ohio Nov. 15, 2013). Indeed, "there is a vast difference between describing, factually, what a party has done to comply with a document request, and revealing discussions between counsel and the client about that process." *Id.* As a result, the Magistrate Judge's Order permitting questioning on these topics was not clearly erroneous or contrary to law.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion to Compel is DENIED, and the City's Objections are OVERRULED IN PART and SUSTAINED IN PART. Plaintiff is entitled to a Rule 30(b)(6) deposition as noticed, except that questioning on Topics 6 and 7 shall be limited to 2014 to the present.

**IT IS SO ORDERED.**


                                         *s/Pamela A. Barker*
                                         PAMELA A. BARKER
Date: October 25, 2019                   U. S. DISTRICT JUDGE