IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DALONTE WHITE**<br>     *Plaintiff,*<br>v.<br>**CITY OF CLEVELAND,** *et al.*<br>     *Defendants.* | Case No.: 1:17-CV-1165<br><br>Judge Pamela A. Barker<br><br>Magistrate Judge Jonathan D. Greenberg |
| **PLAINTIFF DALONTE WHITE'S MOTION FOR AN ORDER TO SHOW CAUSE** ||

  Plaintiff Dalonte White respectfully moves this Court for an order that Defendants show cause why they should not be sanctioned for failing to produce evidence central to the claims and defenses in this case, and for repeatedly misrepresenting— including to Magistrate Judge Jonathan D. Greenberg—the completeness of Defendants' document production. Despite Defendants' insistence that it did not exist, White's counsel has independently uncovered a police report ("the Exculpatory Report") that is central to the allegations in this case, that White had been specifically requesting for months, that disproves one of two pillars of probable cause for Dalonte's arrest, that identifies undisclosed witnesses, and that the City admits knowing about no later than "one or two months" before the City's deposition under Rule 30(b)(6).

  Defendants only produced an unredacted copy of this report on January 30, 2020, after all depositions were completed. Defendants' failure to fulfill their discovery obligations has prejudiced Mr. White's ability to present his case and threatens to derail the current case-management schedule. The Court should impose a sanction that acknowledges the centrality of the report to this case—and the seriousness of Defendants' misrepresentations to Magistrate Judge Greenberg and Mr. White's counsel.

## ISSUES PRESENTED

Courts impose sanctions to deter misconduct and vindicate the court's authority. Despite repeated, explicit requests, and despite representations to the contrary, failed to produce a police report that is central to the claims and defenses in this case, and that identifies a never-before-disclosed witness. Should the Court fashion a sanction sufficient to deter Defendants' discovery violations and misrepresentations to the Court?

## FACTUAL AND PROCEDURAL BACKGROUND

Dalonte White brought this case to vindicate his Fourth Amendment rights after juvenile-court Judge Denise Rini found there was no probable cause to prosecute him for the crimes of which he was accused: a robbery and assault at the West 54th home of Colleen Allums (the "Colleen Allums case"). White's arrest warrant was based on an affidavit establishing probable cause supported by only two pillars:

(1) the victims' identification of White in a photo array; and
(2) an allegation that White was a suspect in a nearby aggravated menacing complaint the previous weekend.[1]

After White had spent months in detention, Judge Rini rejected the first pillar as a basis for probable cause, finding that White was the only person in his photo array with the "dreads or twists" in his hair that the victims had described.[2] Having learned also that police had covered up the victims' subsequent identifications of a more likely suspect by directing the victims not to document their identifications of him,[3] the court found there was no probable cause to support the prosecution.[4] After the hearing, the prosecution of White ended, and White brought claims for

---

[1] *See* Aff. of Thomas Shoulders ¶¶ 12–15 (attached as Ex. 1-A).
[2] Tr. 433:8–10 (attached as Ex. 2).
[3] Tr. 101:5–14; Tr. 133:8–20.
[4] Tr. 435:4-5.

false arrest and malicious prosecution against Defendant City of Cleveland and several officers responsible for his unlawful arrest.[5]

### White requests records and names of witnesses related to his prosecution.

Almost immediately after discovery opened, Plainitff served Defendants with Requests for Production of Documents, including several that should have yielded the Exculpatory Report:

- RFP #1 sought "all documents that support any of Defendant's defenses."
- RFP #2 sought "all documents concerning [the Colleen Allums case]"; and
- RFP #5 sought "all documents pertaining to Dalonte White."[6]

White also served the City with interrogatories that sought the identities of "all persons with knowledge of the facts that relate to any of the claims or defenses in this action."[7]

Defendants' resistance to White's discovery requests is well documented: in a first motion to compel,[8] a second motion to compel,[9] the City's letter opposing a Rule 30(b)(6) deposition, the City's objections to Magistrate Judge Greenberg's order to comply with that notice,[10] and White's position paper regarding the first session of the City's Rule 30(b)(6) deposition.[11] The Court referred both motions to compel to Magistrate Judge Greenberg, who held several conferences over the course of months to sort out the deficiencies in the City's document production.

Throughout those conferences with Magistrate Judge Greenberg, and during numerous meet-and-confer sessions, White's counsel focused on requests that sought, among other things, evidence regarding the only pillar of probable cause that was still standing: the report of White's

---

[5] First Am. Compl. (Doc. #23).
[6] Declaration of Brian D. Bardwell at ¶ 6 (attached as Ex. 1).
[7] Bardwell Decl., ¶ 7.
[8] Doc. #58.
[9] Doc. #80.
[10] Doc. #118.
[11] Attached as Ex. 3.

supposed involvement in a related crime just days before the Colleen Allums case.[12] Defendant Lam described that incident in his investigative report dated April 21, 2015, saying it was a menacing case from "the past weekend," "in the area of W. 59th St," in which White and a neighbor, Rayvion Edwards, were suspects.[13] But Defendants never produced a report like that; instead, the individual defendants responded that they had no such records in their possession, and the City offered a report of a menacing incident that was *not* from the past weekend, was *not* in the area of West 59th Street, and was *not* involving Dalonte White ("the Irrelevant Report").[14]

### Defendants insist they have turned over all records forming the basis for White's prosecution.

But Defendants repeatedly represented in those conferences—whether to White's counsel or to Magistrate Judge Greenberg—that they had produced everything, and that no other report exists, including in the City's August 6 opposition to the second motion to compel[15] and in an attached declaration, where the City's counsel testified: "The City has produced all documents in its possession responsive to the request without withholding any documents sought by Plaintiff."[16]

The issue came up again during Defendant Lam's deposition. Despite the City's representations that there was no other menacing report besides the Irrelevant Report, Detective Lam testified that his probable-cause affidavits were based on an aggravated menacing report that "named" White, and that he remembered reviewing it personally.[17] The parties recessed the deposition for a conference with Magistrate Judge Greenberg, during which defense counsel

---

[12] Decl. of Brian Bardwell at ¶ 6–8 (attached as Ex. 1).

[13] *See* Lam report at 1 (attached as Ex. 1-B) ("[D]uring the past weekend there was an aggravated menacing complaint in the area of W. 59th St ... P.O. Schade stated the suspects from that incident were Dalonte White and Rayvion Edwards.").

[14] Bardwell Decl. at ¶ 5.

[15] Doc. #91 at 4.

[16] Doc. #91-A at ¶ 4.

[17] Lam Dep., 142:7:20.

represented that there was no other report besides the Irrelevant Report. Relying on Defendants' representations, Magistrate Judge Greenberg acknowledged the discrepancy but deemed the dispute "resolved."[18]

### White discovers undisclosed records and witnesses related to his prosecution.

The issue continued to trouble White's counsel. Unable to understand why the City would not produce its evidence of probable cause, White's counsel continued to ask for it, but the City continued to represent it did not exist. White's counsel therefore submitted a request for the report under the Ohio Public Records Act.[19]

Almost immediately, the City's public-records staff produced Report # 2015-108018 ("the Exculpatory Report"). That report was of an aggravated-menacing incident, in the area of West 59th Street, the weekend before the Colleen Allums case. But unlike the affidavits in the criminal case—and contrary to the sworn testimony of the officers involved, Report #2015-108018 ("the Exculpatory Report")—explicitly says White **_was not a suspect_**. Rather, he was a _witness_ who the investigating officer said "was not involved in the menacing." And he was no ordinary bystander, either; another witness told police White tried to play peacemaker. When his neighbors tried to pick a fight with that witness, thinking he was someone else, White "attempted to convince the other two that Witness was not who they thought."[20]

### Defendants refuse to explain failing to produce the Exculpatory Report.

While the report seemed to undercut the deposition testimony up to that point, White's counsel extended Defendants the assumption of good faith and inquired further into the matter, expecting to learn that this was not the report Shoulders was relying on, that there was still some

---

[18] Doc. #114 at 2.
[19] Bardwell Decl. at ¶ 14.
[20] See RMS #2015-108018 at 5 (attached as Ex. 1-G).

other report that named White as a suspect, or that the report was somehow susceptible to an interpretation consistent with the description in White's arrest warrant. That assumption was in error. The City admitted in its Rule 30(b)(6) deposition that the Exculpatory Report is, in fact, the report relied on for the arrest warrant,[21] that there was no other report,[22] and that it means exactly what it says.[23]

The Exculpatory Report fundamentally alters the evidence of probable cause in this case, but White's counsel were never able to address it with any Defendants personally involved in investigating the case.[24] During the City's Rule 30(b)(6) deposition on January 27, White's counsel sought an explanation for the failure to produce the Exculpatory Report. The City's counsel again represented that he had already produced the report, but said he was "not comfortable" discussing it "on the record"[25] and refused to elaborate.[26]

Once all the fact-witness depositions were completed and it was in possession of all White's expert reports, the City finally produced an unredacted copy of the report on January 30.[27] And that report contained both more and less information than the one provided through the public-records request: The version the City finally produced in discovery included the name and address

---

[21] Connelly Dep., 611:25–612:10 (Q Does the city believe that Exhibit 1024 is the report that detective -- that Sergeant Shoulders was referring to in paragraph 12 of his warrant application? MR. PUIN: Objection. A Once again, it would appear that that's the report, yes. Q The city believes that that's the case, correct? A Yes.).

[22] Connelly Dep., 610:2–10 ("Q All right. Okay. After conducting that thorough search, this is the -- this report is the closest match to what Detective Schade described, correct? A Yes. Q Does the city have any reason to believe that there's another report that better matches what Detective Schade described? A No.").

[23] Connelly Dep., 612:14–24 ("Q Exhibit 1024. What does it say about Dalonte White's involvement in this aggravating menacing incident? MR. PUIN: Objection. A It says: According to the witness, Dalonte White was not involved in the menacing and in fact attempted to convince the other two males that the witness was not who they thought. Q Okay. So he's not a suspect in this case, is he? A That's correct.").

[24] Bardwell Decl. at ¶ 16.

[25] Connelly Dep., 629:16–20.

[26] Connelly Dep., 630:14–18. ("I'd rather not answer any more questions about our document production at this time.")

[27] Bardwell Decl. at ¶ 17(h).

of a previously undisclosed witness, as well as information about the gun used during the crime, but it omitted contact information for the witnesses from the incident.

Since then, Defendants have been unwilling to confirm their representations that they had already produced the report. Counsel for the City offered a "guess" that he didn't run the right kind of search for the report when responding to discovery requests.[28] Seeking to ensure that Defendants had finally made a full production, White's counsel sought further detail on the cause of the error and an explanation for the omission of phone numbers from the version the City produced. Counsel for the City refused to provide any new information, saying, "I produced the record in the form it is kept by the City and the document speaks for itself."[29]

## LEGAL STANDARD

A district court possesses the inherent authority to sanction a party when it litigates "in bad faith, vexatiously, wantonly, or for oppressive reasons."[30] The Sixth Circuit has held that "courts have broad discretion under their inherent powers to fashion punitive sanctions."[31]

## LAW & ARGUMENT

### I. The Exculpatory Report was discoverable and should have been produced.

#### A. The Exculpatory Report is within the scope of initial discovery.

Rule 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Exculpatory Report is squarely within the scope of that rule. It is relevant to all White's Fourth Amendment-related claims and to Defendants' defenses that they acted "in good faith, and with probable cause,"[32] and thus should

---

[28] Bardwell Decl. at ¶ 17(g).

[29] Bardwell Decl. at ¶ 17(i).

[30] *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 530 (6th Cir. 2002) (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)).

[31] *Williamson*, 826 F.3d at 306.

[32] *See, e.g.*, City's Answ. at ¶ 53.

have been produced or described in the City's initial disclosures.[33] It also includes names, addresses, and phone numbers of people "likely to have discoverable information," who Defendants never disclosed. Defendants have made no assertion that the report is privileged or that providing it would not be proportional to the needs of the case.

### B. The Exculpatory Report is responsive to White's requests.

The Exculpatory Report also should have been produced in response to White's discovery requests. But Defendants never revealed its existence, despite its falling within the scope of at least RFP #1, RFP #2, and RFP #5, as well as Interrogatory #1. Beyond those requests, White's counsel repeatedly asked for the report specifically, but the City consistently maintained that it had provided all responsive records.[34]

Because the Exculpatory Report was within the scope of both Rule 26 initial discovery and Dalonte's requests for production, the City was required to provide it. The Court should enter an order directing Defendants to show good cause why they failed to produce it.

## II. If Defendants cannot show good cause for their failure to produce the Exculpatory Report, Rule 37(c)(1) *requires* the Court to impose sanctions.

### A. Rule 37(c)(1) requires the Court to prohibit Defendants' use of the Exculpatory Report.

"If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial."[35] "Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material."[36] Because the City failed to provide the Exculpatory Report and

---

[33] Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring party to provide, within 14 days of the Rule 26(f) conference, "a copy—or a description by category and location—of all documents...in its possession...[that it] may use to support its claims or defenses.").

[34] Bardwell Decl. at 4-8.

[35] Fed. R. Civ. P. 37.

[36] See *Sexton v. Uniroyal Chem. Co.*, 62 F. App'x 615, 616 n.1 (6th Cir. 2003).

because its failure was neither harmless nor substantially justified, the Court must, at a bare minimum, prohibit Defendants from relying on it for any purpose, whether at summary judgment, trial, or any other stage of the proceedings.

But this sanction alone would be insufficient. Defendants would likely *prefer* to exclude the Exculpatory Report from evidence—*because* it's exculpatory and evicerates their excuses for what they did to White—so barring them from using it would have no deterrent effect. The Court should consider additional sanctions tailored to Defendants' breach, as discussed below.

### B. The Court should impose additional further sanctions beyond exclusion.

#### (1) The Court could order Defendants to submit to additional discovery regarding the Exculpatory Report at the City's expense.

One option before the Court would be to re-open discovery to permit White's counsel to inquire into the Exculpatory Report. Because White should not incur further costs to reconvene depositions, this work should take place at the City's fee-and-cost expense.

Courts should consider several factors in deciding whether to re-open discovery, including:
(1) whether there is good cause;
(2) whose conduct created the need for additional discovery;
(3) the likelihood that discovery would lead to specific relevant evidence; and
(4) any other considerations suggesting additional discovery should not be permitted.[37]

In *Morgan v. Gandalf, Ltd.*, the plaintiff sought to re-open discovery after summary judgment had been briefed, based on the defendants' assertion of new defenses late in the proceedings. The district court refused to allow additional discovery and entered summary judgment against the plaintiff, but the Sixth Circuit reversed, holding that failing to allow more discovery was an abuse of discretion where (1) it was needed to remedy unforeseeable circumstances; (2) it was necessitated by the defendant's neglect; and (3) it was targeted at specific

---

[37] *Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 431–32 (6th Cir. 2006).

questions integral to newly raised issues. In the absence of some compelling reason to reject the request, the court held, "there was no good reason not to allow it."[38]

The circumstances are similar here. And, because the case has not progressed as far as in *Morgan*, the grounds for re-opening discovery are even stronger. Only after deposing all the investigating officers did White discover that the City has been withholding crucial evidence. White could not have known—especially in the face of the City's repeated, vehement denials—that the City had not yet turned over crucial evidence. White is only requesting limited additional discovery— focused on questions of the existence of probable cause and the Exculpatory Report in particular— to remedy those unforeseeable failures. Fairness requires that White have the opportunity to question Defendants Lam, Schade, and Shoulders, potentially their supervisors and trainers, as well as the newly disclosed witness to White's crime-stopping efforts.

But re-opening discovery, even for these limited purposes, would likely disrupt the case schedule. While White's counsel could prepare for such depositions in relatively short order, scheduling and completing them still would likely take weeks, only to be followed by additional time for expert witnesses to evaluate the new testimony and supplement their reports accordingly. This additional work may push back the timing of depositions, and then dispositive motions, which could in turn push back the trial date.

White is cognizant of the Court's desire to hold firm the existing deadlines, and thus reopening discovery—while within the Court's discretion and requested here—may not be the ideal way to move this case toward timely completion. If the Court reopens discovery, it should award White all costs and fees incurred in connection with whatever additional discovery it permits.[39]

---

[38] *Id.* at 431.

[39] *Winter Enterprises, LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2019 WL 3413907, at *8 (S.D. Ohio July 29, 2019) (imposing sanctions including costs of redeposition after late production of discoverable documents); *Price v. Eagle Express Lines, Inc.*, No. 5:14-CV-00034, 2015 WL 13022590, at

>   (2)  As an alternative sanction to reopening discovery, the Court could enter a *limited* default judgment against the City on claims involving the probable-cause issue.

In *Prime Rate Premium Fin. Corp., Inc. v. Larson*, the Sixth Circuit held that the following legal principles should "guide a discretionary decision to grant a default judgment ... (1) Did the party act in bad faith? (2) Was the opposing party prejudiced? (3) Did the court give adequate warning? and (4) Could less drastic sanctions have ensured compliance?"[40] Terminating the case—or even a portion of it—is a serious but not-uncommon sanction. In fact, White's counsel's review indicates the Sixth Circuit has affirmed every case-terminating sanction it has reviewed for at least half a decade.[41]

Here, the Court should consider a *limited* default judgment on Claims 1 through 8, which depend on either the question of probable cause or the disclosure of *Brady* evidence, the two main questions into which Defendants' discovery failures prevented a fair inquiry.[42] Such an order would

---

[*]2 (N.D. Ohio Dec. 4, 2015) (imposing sanctions including costs of redeposition after late production of discoverable documents); *Watkins & Son Pet Supplies v. Iams Co.*, 197 F. Supp. 2d 1030, 1035 (S.D. Ohio 2002) (imposing sanction including costs of reposing witness and briefing motion for sanctions).

[40] *Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 768–69 (6th Cir. 2019).

[41] *See, e.g.*, *Prime Rate Premium Finance Corporation, Inc.*, 930 F.3d at 771 ("[T]he judgment against Larson—for her failure to appear and provide trial documents—falls within the "settled usages" of a default judgment."); *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 471 (6th Cir. 2019), *reh'g denied* (May 21, 2019), reh'g denied (May 21, 2019) ("[T]he district court properly imposed discovery sanctions on EQT's claims, which effectively dismissed its 2002 to 2010 claims"); *EQT Prod. Co. v. Phillips*, 767 F. App'x 626, 634 (6th Cir. 2019) (affirming summary judgment for failure to provide required expert testimony where "[expert's] report did not comply with Rule 26(a)"); *ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 582 (6th Cir. 2018) (affirming dismissal as sanction for party that "never fully corrected discovery deficiencies and failed to timely file responsive documents"); *Ford v. Kennerly*, No. 17-2457, 2018 WL 6436386, at *4 (6th Cir. Apr. 26, 2018) (affirming dismissal against party who "exhibited disregard for the defendants' repeated efforts to obtain the medical records"); *Barron v. Univ. of Michigan*, 613 F. App'x 480, 485 (6th Cir. 2015) for party who "never received the outstanding discovery, and ... wasted time and money attempting to compel the discovery").

[42] This would include Claim 1 (Section 1983—Malicious Prosecution), Claim 2 (Section 1983—False Arrest and False Imprisonment), Claim 3 (Section 1983—Wrongful Detention), Claim 4 (Section 1983—*Brady* Violations), Claim 5 (Section 1983—Failure to Train and Supervise), Claim 6 (Malicious Prosecution), Claim 7 (False Arrest), and Claim 8 (False Imprisonment). The case would then be limited to state-law claims for intimidation under Ohio Rev. Code § 2921.03, and civil liability for criminal acts under Ohio Rev. Code § 2307.60.

be an appropriate response to the established pattern of defense discovery violations in this case, including the months-long delays in producing documents and the City's refusal to allow a full deposition of its Rule 30(b)(6) witness without court intervention. The answers to all four questions in the *Prime Rate Premium Fin. Corp.* test would support a dismissal.

### (a) The facts suggest Defendants acted in bad faith.

Defendants have refused to explain the prolonged failure to produce the Exculpatory Report, but the facts available now point toward a finding that they acted in bad faith:

- The failure was not because the Exculpatory Report was inaccessible, as the City's public-records staff quickly located and provided a copy.[43]
- The failure was not because the City was unaware the Exculpatory Report existed, as Commander Michael Connelly testified that defense counsel gave it to him to prepare for his Rule 30(b)(6) deposition "a month or two" before his deposition, which began on December 17, 2019.[44]
- The failure was not because Defendants were unaware White wanted the report, as it was the subject of repeated, explicit inquiries, as well as multiple formal requests for production of documents.[45]

### (b) White has been prejudiced by the failure to timely produce the Exculpatory Report.

The nondisclosure of the Exculpatory Report fundamentally altered White's approach to this case, which will likely rise or fall with the question of probable cause. Unaware that one-half of the basis for White's arrest warrant was completely false, he has focused virtually all his attention on the flawed photo arrays that made up the other half. He made extended inquiries into the procedures for assembling and administering photo arrays with virtually all Defendants, sending out third-party subpoenas for additional records regarding the creation of those photo arrays and

---

[43] Bardwell Decl. at ¶ 14–15.
[44] Connelly Dep. 604:8–17.
[45] Bardwell Decl. at ¶ 4–8.

training related to them, and hiring two separate experts to analyze and explain the different kinds of deficiencies in the City's procedures for using those photo arrays.

Had White known about the undisclosed records and witneses from the beginning, his approach to the case likely would have focused far more heavily on Defendants' objectively false statements about him being a suspect in a menacing complaint, and their false testimony to the juvenile court. But White's counsel had no opportunity to pursue that line of inquiry, no opportunity to confront the investigating officers with this evidence, and no opportunity to obtain any admissions as to its significance. Even having it now, White's counsel cannot make fully informed strategic decisions about how to use it, as he has no way of knowing whether the investigators can offer some innocent explanation, or whether there exists *yet another* secret report hiding in the City's files.

(c) **The Court gave the City adequate warning.**

While handling the motions to compel, Magistrate Judge Greenberg repeatedly directed the City to search for records and ensure that it had made a full production. When he finally disposed of the motions, he warned the City of severe consequences if White's counsel could demonstrate that the City was withholding evidence.[46] Despite that warning, Defendants failed to timely disclose a key piece of evidence that could have been easily found and produced.

(d) **Less drastic sanctions appear unlikely to ensure compliance.**

Defendants' commitment to voluntary compliance with their discovery obligations has always been suspect in this case. Deadlines have been disregarded repeatedly and unapologetically. Defense counsel have withheld documents until their clients revealed their existence in depositions. More importantly, the time for voluntary compliance is over. Only expert discovery

---

[46] Bardwell Decl. at ¶ 11.

remains outstanding, and there is little compliance left to ensure. Instead, the status quo allows Defendants to march forward to summary-judgment briefing, having deprived White of testimony on probable-cause questions that are likely to dominate the briefing.

The discovery lapses in this case have been chronic and serious, and they now appear to be irreversibly prejudicial without sanctions. Because all the relevant considerations weigh against the City, the Court has the discretion to and should grant default judgment on the claims related to probable cause against Defendants.

### (3) The Court could enter an order resolving the issue of probable cause in favor of White.

If the Court rejects those options, it should, at a minimum, impose a sanction that moots the issues into which Defendants thwarted discovery, in particular the issue of whether there was probable cause to believe White was involved in the Colleen Allums case.

Rule 37(b)(2)(A) offers several vehicles to achieve this:

1. **An order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims":** The Court could thus enter an order directing that the absence of probable cause be taken as established for purposes of this action, as White claims.
2. **An order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence":** The Court could also enter an order prohibiting Defendants from opposing claims that turn on the existence of probable cause and from supporting defenses asserting the existence of probable cause.
3. **An order "striking pleadings in whole or in part":** The Court could strike the defense of probable cause from Defendants' answers and bar them from arguing it.

These options would allow the Court to sanction Defendants for their failures without prejudicing them on any claims where White's case was not affected by the failure to produce the Exculpatory Report.

CONCLUSION

The City's failures to comply with its discovery obligations in this case are well-documented, and the evidence now suggests that those failures have not all been the result of good-faith errors. The failure to produce the Exculpatory Report seriously prejudiced White's development of his case, threatens the case-management schedule, and directly contradicts representations the City made to the Court.

If Defendants cannot show good cause why they failed to produce the Exculpatory Report, the Court should impose serious sanctions to ensure compliance and deter future discovery misfeasance. Whatever sanctions it selects, the Court should include an award of fees incurred seeking to obtain compliance with its discovery requests and in preparing this motion.

February 6, 2020

Respectfully submitted,

*/s/ Brian D. Bardwell*
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Counsel for Plaintiff Dalonte White*

CERTIFICATE OF SERVICE

This document was filed using the Court's ECF system and concurrently served on all parties via e-mail pending restoration of full ECF functionality.

*/s/ Brian D. Bardwell*

*Counsel for Plaintiff Dalonte White*