**Declaration of Brian Bardwell**

I, Brian Bardwell, declare as follows based upon personal knowledge:

1. I am over the age of 18.

2. I am counsel for Plaintiff Dalonte White in *White v. City of Cleveland*, No. 1:17-cv-01165 (N.D. Ohio).

3. Defendant Thomas Shoulders swore in an affidavit seeking an arrest warrant that Dalonte was a "suspect" in an aggravated-menacing incident from days before the Colleen Allums case.[1] In an April 21, 2015, report, Defendant Lam characterized that incident as "an aggravated menacing complaint in the area of W. 59th St," "during the past weekend" and said another officer had told him "the suspects from that incident were Dalonte White … and Rayvion Edwards."[2]

4. Former co-counsel Sandhya Gupta and I have made repeated requests throughout discovery for documentation of that incident.

5. Instead of providing that report, Defendants repeatedly directed us to report RMS #2015-82488 ("the Irrelevant Report").[3] Based on Defendant Lam's and Defendant Shoulders's characterizations of the menacing incident in their affidavits from 2015, it has always been obvious that this report was not the one we were requesting. It documents a menacing complaint, but that complaint bears no resemblance to the one Defendant Lam described.

6. Ms. Gupta submitted several requests for production to all Defendants that should have yielded a copy of the report for the incident Shoulders mentioned, including:

    a. RFP #1: "Identify and produce all documents that support any of Defendant's defenses or factual claims as to liability or damages."

    b. RFP #2: "Identify and produce true and correct copies of all documents concerning the investigation, or any reinvestigation, of the April 21, 2015 home invasion, burglary, shooting, and/or assault that took place at 3255 W. 54th Street in Cleveland, Ohio …"

    c. RFP #5: "To the extent not otherwise requested above, identify and produce all documents pertaining to Dalonte White."[4]

---

[1] An authentic copy of that affidavit will be submitted under seal with leave from the Court as Ex. 1-A.
[2] An authentic copy of that report will be submitted under seal with leave from the Court as Ex. 1-B.
[3] An authentic copy of that report will be submitted under seal with leave from the Court as Ex. 1-C.
[4] An authentic copy of Plaintiff Dalonte White's First Set of Requests for Production to All Defendants is attached as Ex. 1-D.

7. Ms. Gupta also served interrogatories on Defendants asking them to "identify all persons with knowledge of the facts that relate to any of the claims or defenses in this action."[5]

8. Ms. Gupta and I made repeated, specific requests for documentation of that incident in our meet-and-confer conferences. Defense counsel repeatedly insisted that the Irrelevant Report was the only responsive record.

9. Ms. Gupta and I also raised the issue directly in conferences with Magistrate Judge Jonathan D. Greenberg. He repeatedly asked the City if it could represent that it had made a full production of the requested records, but the City repeatedly declined to do so. Magistrate Judge Greenberg eventually directed the City to ensure that it had made a full production and report back.

10. The parties had a conference call with Magistrate Judge Greenberg on September 18, 2019, and raised the issue again. Defense counsel finally represented that they had made a full search and produced all responsive records. Magistrate Judge Greenberg deemed the matter resolved based on those representations. (Doc. #114 at 2.)

11. Magistrate Judge Greenberg warned of severe consequences if that representation were disproved.

12. Almost immediately after making that representation, the City resumed its piecemeal productions of records squarely within Plaintiff's discovery requests, including a never-before-seen report of Dalonte's arrest on September 24, four videos related to his arrest produced the same day, and a log of dispatch traffic related to the Colleen Allums case produced on September 26.

13. Given the obvious deficiencies in the City's search protocols, I began asking the City to disclose how it was searching for records so we could work out a more efficient approach and avoid further untimely disclosures. Counsel for the City refused to answer my questions.

14. Defendant Lam's deposition testimony further clarified that the warrants for Dalonte were not based on the Irrelevant Report. Unable to understand why Defendants would not turn over evidence they thought would prove our client was a violent criminal, I decided to pursue the matter independently and submitted a request for the menacing report under the Ohio Public Records Act.

15. That request quickly yielded a copy of a Detail Report numbered RMS #2015-108018 ("the Exculpatory Report"), which unequivocally stated that Dalonte was not a suspect in the menacing case, but rather sought to prevent the incident from happening.[6] It was not immediately clear whether this report was the one we had been seeking all along or if there

---

[5] An authentic copy of Plaintiff Dalonte White's First Set of Interrogatories to City of Cleveland is attached as Ex. 1-E. An authentic copy of Plaintiff Dalonte White's First Set of Interrogatories to Individual Defendants is attached as Ex. 1-F.
[6] An authentic copy of the redacted report is attached as Ex. 1-G.

      was still another report somewhere that matched Defendant Lam's description and identified Dalonte as a suspect.

16. By the time I received that copy of the Exculpatory Report, the depositions of all the defendants but the City itself had passed, leaving me unable to ask the key figures any questions about the report, obtain explanations for the discrepancies between its contents and their characterizations of it, or determine whether there is still some other report to which they were referring.

17. I have repeatedly made sincere, good-faith efforts to address this issue with defense counsel. In addition to the efforts described in our previous motions to compel:

    a. At the December 17 deposition of the City of Cleveland, I asked defense counsel whether the Exculpatory Report had ever been produced. Counsel for the individual defendants said it had been produced "multiple times," and the City's counsel represented that it had "produced every possible document."

    b. After revisiting Defendants' productions, I could not find any record of their producing the Exculpatory Report.

    c. I e-mailed counsel for the City on January 13, asking to set up a quick phone call. I never received an e-mail or phone call in response.[7]

    d. I raised the issue again at the continued deposition of the City on January 27. The City's representative testified that counsel gave him the Exculpatory Report to review in preparation for the deposition. I asked again whether Defendants had ever produced it. Counsel for the City acknowledged that he had access to the record, but said he was "not comfortable" discussing the issue "on the record."

    e. I followed up with an e-mail the next day, asking counsel for the City for a Bates number for the Exculpatory Report, or for an unredacted copy if it had not yet been produced.[8]

    f. I also sent an e-mail to counsel for the individual defendants, asking whether any of them had ever produced the Exculpatory Report.[9] I received no response.

    g. Counsel for the City wrote back two days later saying he "may have been mistaken in saying it was already produced." He offered a "guess" that the record was not produced because he didn't search the narrative portions of the City's police reports.[10]

    h. Counsel's January 30 e-mail attached a version of the Exculpatory Report that I had never seen before.[11] It identified a new witness who was not identified in Defendants'

---

[7] An authentic copy of that e-mail is attached as Ex. 1-H.
[8] An authentic copy of that e-mail is attached as Ex. 1-I.
[9] An authentic copy of that e-mail is attached as Ex. 1-J.
[10] An authentic copy of that e-mail is attached as Ex. 1-K.
[11] An authentic copy of that report will be submitted under seal with leave from the Court as Ex. 1-W.

        initial disclosures or responses to Plaintiff's interrogatories.[12] It also included never-before-seen information about the gun used in the incident. And while the version I had obtained myself included contact information for the people involved in the incident, those numbers were removed from the version the City produced.

    i. I wrote back to Counsel for the City, asking for an explanation—beyond his "guess"—for the failure to produce this record, and for the missing contact information.[13] Counsel for the City refused to provide any new information, telling me he "produced the record in the form it is kept by the City and the document speaks for itself."[14]

    j. I again asked counsel for the individual defendants whether any of them had produced the Excuplatory Report. I received no response.

18.   Based on my experience as a journalist covering police-related matters, my interactions with the Cleveland Division of Police, and the discovery conducted to date in this case, my understanding is that if the Division has a computer-generated Detail Report for an incident, several other records related to that incident would also exist, including audio recordings of dispatch traffic, a written record of that traffic, an Offense/Incident Report, and a handwritten Field Report by the officers responding to the call. I still have not received any of those records related to the Exculpatory Report.

I declare the above to be true under penalty of perjury of the laws of the United States of America.

_____                      February 7, 2020
Brian D. Bardwell                                                  Date

---

[12] Authentic copies of the City's and Defendant Lam's initial disclosures are attached as Exs. 1-L and 1-M. Authentic copies of Defendants' responses are attached as Exs. 1-N through 1-T.
[13] An authentic copy of that e-mail is attached as Ex. 1-U.
[14] An authentic copy of that e-mail is attached as Ex. 1-V.