600

1           IN THE UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF OHIO

3                  EASTERN DIVISION


4
    DALONTE WHITE,                )
5                                 )
            Plaintiff,            )
6                                 )
                                  ) JUDGE PAMELA A. BARKER
7        vs.                      ) CASE NO. 1:17-cv-01165
                                  )
8    CITY OF CLEVELAND, et al.,   )
                                  )
9            Defendants.          )

10

11                  -   -   -   -   -
        THE VIDEO RECORDED 30(b)(6) DEPOSITION OF
12              COMMANDER MICHAEL CONNELLY
                      VOLUME II
13            MONDAY, JANUARY 27, 2020
                    -   -   -   -   -
14

15

16

17                  -   -   -   -   -

18                  EXCERPTS

19                  -   -   -   -   -

20

21

22

23

24

25

              CADY REPORTING SERVICES, INC.

PLAINTIFF'S
EXHIBIT

4

CADY REPORTI_____16-861-9270

601

```
 1      APPEARANCES:

 2

 3           On behalf of the Plaintiff:

 4               Brian D. Bardwell, Esq.
                 The Chandra Law Firm, LLC
 5               1265 West 6th Street, Suite 400
                 Cleveland, Ohio  44113
 6               (216) 578-1700
                 Brian.bardwell@chandralaw.com

 7

 8           On behalf of the Defendant
             City of Cleveland:
 9
                 Timothy J. Puin, Esq.
10               City of Cleveland
                 Assistant Director of Law
11               Department of Law
                 601 Lakeside Avenue, Room 106
12               Cleveland, Ohio  44114
                 (216) 664-2807
13               Tpuin@city.cleveland.oh.us

14
             On behalf of the Defendants
15           Robert Beveridge,
             John Kubas,
16           David Santiago,
             Michael Schade,
17           Thomas Shoulders:

18               Katherine Keefer, Esq.
                 City of Cleveland
19               Department of Law
                 601 Lakeside Avenue, Room 106
20               Cleveland, Ohio  44114
                 (216) 664-3727
21               Kkeefer@city.cleveland.oh.us

22

23

24

25

                     CADY REPORTING SERVICES, INC.
```

602

```
 1      APPEARANCES CONTINUED:

 2

            On behalf of the Defendant
 3          David H. Lam:

 4              Kathryn M. Miley, Esq.
                Wilkerson LPA
 5              24100 Chagrin Avenue, Suite 200
                Cleveland, Ohio  44122
 6              (216) 696-0808
                Kmmiley@wilkersonlpa.com

 7

 8      ALSO PRESENT:

 9          Alex Cook, Videographer

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    CADY REPORTING SERVICES, INC.
```

603

```
 1                      EXCERPT
 2      BY MR. BARDWELL:
 3      Q   All right.  I'm going to hand you Exhibit 1024.
 4                     MR. BARDWELL:    Do you guys
 5          still have all of your copies from last time?
 6                     MR. PUIN:        We didn't bring
 7          them.
 8                     MR. BARDWELL:    You didn't.
 9          All right.  I can roll some more off when we
10          take a break if you guys want.
11                     MS. MILEY:       Just what is
12          it?
13                     MR. PUIN:        Yeah, I don't
14          think we need a copy.
15                     MS. MILEY:       Yeah.  I don't
16          need another copy.
17                     MR. BARDWELL:    Okay.
18                     MS. MILEY:       Read me the
19          Bates number so I can make a note.
20                     MR. BARDWELL:    It's
21          Plaintiff's Exhibit 1024.  It's WHITE21838
22          through 21842.
23      BY MR. BARDWELL:
24      Q   Do you remember we talked about this exhibit
25          last time?
```

CADY REPORTING SERVICES, INC.

```
 1                              EXCERPT

 2       A    I think so.

 3       Q    All right.  You testified that the city thinks

 4            this is the report mentioned in paragraph 12 of

 5            Shoulders' arrest warrant, right?

 6       A    I think I did testify to that, but I'm not sure

 7            if I was correct.

 8       Q    Okay.  When did you first see this report?

 9       A    I'm sorry.  Just give me a second, okay, so I

10            can look it over.

11       Q    Go ahead.

12       A    I think I first saw this report when I was

13            reviewing -- when I was preparing for this

14            deposition, which would have been a month or

15            two ago.

16       Q    All right.  How did you find it?

17       A    It was provided to me by counsel.

18       Q    All right.  Does the city agree that there was

19            a prosecution initiated against Dalonte White?

20       A    In connection with which case?

21       Q    The --

22       A    This report, or another case?

23       Q    No.  In connection -- you can set that down.

24       A    Okay.

25       Q    In connection with the Colleen Alums case.
```

CADY REPORTING SERVICES, INC.

EXCERPT

A   They did, yes.

Q   Sorry.  Let me step back.

          -   -   -   -   -

```
1                               EXCERPT

2       Q    Okay.  Looking back to Exhibit 1024, which you

3            have in front of you still.

4       A    Yes.

5       Q    Is it fair to say that this is an aggravated

6            menacing report as well?

7       A    Yes.

8       Q    All right.  Is it fair to say that this --

9            what's the date on this report?

10      A    It is April 19.

11      Q    What day of the week was that?

12      A    I believe a Sunday.

13      Q    Okay.  Is it fair to say that that is from the

14           weekend prior to the Colleen Alums report?

15      A    Yes.

16      Q    Okay.  Is it fair to say that this complaint is

17           from the area of West 59th Street?

18      A    Yes.

19      Q    What's the address on it?

20      A    5918 Gilbert Court.

21      Q    At 5918, we're talking about a house within a

22           block of West 59th, right?

23      A    Correct.

24      Q    All right.  This report does mention Dalonte

25           White and Rayvion Edwards, right?
```

CADY REPORTING SERVICES, INC.

```
 1                       EXCERPT
 2          If you want to, you can turn all the way
 3       to the last page, which is 21842.
 4          You'll see up in that first paragraph it
 5       says that the witnesses stated that there was a
 6       game of basketball going on in front of the
 7       house when Offender 1, in company with Dalonte
 8       White and another black male known as
 9       Shartrell, approached --
10    A  Right.
11    Q  -- the game.
12          Do you understand that that Offender 1
13       who was redacted is Rayvion Edwards?
14    A  It's possible, but I'm not sure.
15    Q  You've reviewed this report before, right?
16    A  I have.
17    Q  All right.  Do you remember who that was in
18       there?
19    A  I don't.
20    Q  Okay.  Do you remember this report referring to
21       Rayvion Edwards at all?
22    A  I remember Rayvion Edwards being a part of
23       this, correct.
24    Q  Okay.
25    A  I just don't remember exactly where they have
```

CADY REPORTING SERVICES, INC.

608

```
 1                          EXCERPT
 2        his name.
 3   Q    This report does make reference to Dalonte
 4        White and Rayvion Edwards, right?
 5   A    It does.
 6   Q    All right.  This report generally matches the
 7        description that Schade provided, correct?
 8   A    It does.
 9   Q    Okay.  Is there any report in existence in the
10        Cleveland Division of Police that better
11        matches the description that Schade provided
12        than this report, Exhibit 1024?
13                     MR. PUIN:        Objection.
14   A    Not that I'm aware of.
15   Q    Okay.  Not that the city is aware of, right?
16   A    That's correct.
17   Q    The city has conducted a thorough search for
18        such a record, right?
19   A    I did not conduct or the city -- as far as I'm
20        aware, we did not conduct a thorough search for
21        any other reports.
22   Q    The city did not conduct a -- okay.
23   A    That was your question to me, correct?
24   Q    I hope not.  Let me try it again.
25             Do you understand that the city has
```

|    |   |                                              |
|----|---|----------------------------------------------|
|  1 |   | EXCERPT                                       |
|  2 |   | requested any records related to the         |
|  3 |   | investigation of the Colleen Alums incident? |
|  4 | A | Right.                                        |
|  5 | Q | That would include, would you agree, the report |
|  6 |   | that Detective Schade referred to?            |
|  7 | A | Correct.                                      |
|  8 | Q | Okay.  Has the city conducted a thorough search |
|  9 |   | for records responsive to our request?        |
| 10 | A | Beyond this report?                           |
| 11 | Q | Yes.                                          |
| 12 | A | The search I think found this report.  So this |
| 13 |   | is the report we were -- I believe that you're |
| 14 |   | asking me for.  Maybe I'm misunderstanding your |
| 15 |   | question.                                     |
| 16 | Q | I think so.                                   |
| 17 |   | Setting aside what reports are sitting in     |
| 18 |   | front of us --                                |
| 19 | A | Okay.                                         |
| 20 | Q | -- in our hands.                              |
| 21 |   | Did the city conduct a thorough search        |
| 22 |   | for the reports that we requested?            |
| 23 | A | Oh.  Yes.                                     |
| 24 | Q | Okay.                                         |
| 25 | A | I'm sorry.  I'm tired.  I apologize.          |

CADY REPORTING SERVICES, INC.

610

|    |   |                                                      |
|----|---|------------------------------------------------------|
| 1  |   | EXCERPT                                               |
| 2  | Q | All right.  Okay.  After conducting that             |
| 3  |   | thorough search, this is the -- this report is       |
| 4  |   | the closest match to what Detective Schade            |
| 5  |   | described, correct?                                   |
| 6  | A | Yes.                                                  |
| 7  | Q | Does the city have any reason to believe that        |
| 8  |   | there's another report that better matches what      |
| 9  |   | Detective Schade described?                           |
| 10 | A | No.                                                   |
| 11 | Q | Okay.  Then we're in agreement that Exhibit          |
| 12 |   | 1024 is the report that Detective Schade told        |
| 13 |   | Detective Lam about, correct?                         |
| 14 |   | MR. PUIN:          Objection.                        |
| 15 | A | And, once again, I believe he's probably             |
| 16 |   | talking about this report, but since the             |
| 17 |   | subjects in both reports are related, I think        |
| 18 |   | that he may have -- because I think Shartrell        |
| 19 |   | Harris is part of this first report you're           |
| 20 |   | talking about, 82488.  And he's in this one as       |
| 21 |   | well, correct?                                        |
| 22 |   | And there was two unidentified subjects        |
| 23 |   | in this first report that I'm not sure if the        |
| 24 |   | detectives had -- possibly had information that      |
| 25 |   | led them to believe that -- I can't remember         |

CADY REPORTING SERVICES, INC.

611

```
 1                          EXCERPT
 2           that conversation between the two.
 3      Q    Do you have any -- does the city have any
 4           information indicating that Detective Schade
 5           believed -- let me start over.
 6                Does the city -- pardon me.
 7                Does the city have any evidence that
 8           Detective Schade had reason to believe that
 9           Dalonte White and Rayvion Edwards were involved
10           in the complaint described in Exhibit 988?
11      A    I don't.
12      Q    Okay.
13      A    We don't.
14      Q    Okay.  Does the city agree, then, that Exhibit
15           1024 is the report Schade was talking about?
16                          MR. PUIN:        Objection.
17      A    Yes.
18      Q    Okay.  So it's the same report that Detective
19           Lam was talking about in his cleanup?
20                          MR. PUIN:        Objection.
21      A    It appears that way.
22      Q    All right.  Does the city believe that that is
23           the case?
24      A    Yes.
25      Q    Does the city believe that Exhibit 1024 is the
                          CADY REPORTING SERVICES, INC.
```

```
 1                        EXCERPT
 2         report that detective -- that Sergeant
 3         Shoulders was referring to in paragraph 12 of
 4         his warrant application?
 5                     MR. PUIN:          Objection.
 6    A    Once again, it would appear that that's the
 7         report, yes.
 8    Q    The city believes that that's the case,
 9         correct?
10    A    Yes.
11    Q    Okay.  What does the report say about Dalonte
12         White's involvement in this case?
13    A    Which report, sir?
14    Q    Exhibit 1024.  What does it say about Dalonte
15         White's involvement in this aggravating
16         menacing incident?
17                     MR. PUIN:          Objection.
18    A    It says:  According to the witness, Dalonte
19         White was not involved in the menacing and in
20         fact attempted to convince the other two males
21         that the witness was not who they thought.
22    Q    Okay.  So he's not a suspect in this case, is
23         he?
24    A    That's correct.
25    Q    He's actually trying to stop the crime from
```

613

```
 1                            EXCERPT
 2          happening, correct?
 3     A    Yes.
 4     Q    He was playing peacemaker, is that fair to say?
 5     A    It is.
 6     Q    All right.  Who's the investigating officer on
 7          this report?
 8     A    Weber.
 9     Q    All right.  And then there's a secondary
10          investigating officer?
11     A    It's me, but it's not me.
12     Q    All right.
13     A    Connelly 143.
14     Q    All right.  You are Connelly, but you are not
15          143, is that correct?
16     A    I was 143 25 years ago.
17     Q    All right.
18     A    But I am not 143 anymore.  So there's probably
19          a data error.
20     Q    Okay.  All right.  Just to be clear, did you
21          have anything to do with investigating this
22          report?
23     A    I did not.
24     Q    Okay.  As far as you know, is it possible that
25          there's another Connelly out there, badge 143?
```

614

```
 1                          EXCERPT

 2       A    There's not another Connelly 143.  But my badge

 3            is not 143 and it wasn't 143 at the time of

 4            this incident.

 5       Q    Okay.  What is your badge number?

 6       A    6129.

 7       Q    How long has that been your badge number?

 8       A    Just over a year.

 9       Q    All right.

10       A    And before that it was 8440 for about 17 years.

11       Q    Okay.  Why do badge numbers change?

12       A    When you get promoted they change.

13       Q    Okay.  Does the city have any evidence that

14            Schade was involved in investigating this

15            report?

16       A    Not at this time.

17       Q    Okay.  Does the city know any facts indicating

18            that Schade was involved in creating this

19            report?

20       A    And we are still discussing --

21       Q    Exhibit 1024.

22       A    1024.

23                 No.

24       Q    All right.  Does the city have any facts

25            indicating that Schade did any follow-up

                          CADY REPORTING SERVICES, INC.
```

```
1                              EXCERPT
2          investigation on this report?
3      A   No.
4      Q   Does the city know any facts indicating that
5          Weber and mystery secondary investigating
6          officer were mistaken about what happened?
7      A   We do not.
8      Q   Does the city know any facts indicating that
9          Weber and mystery officer misunderstood what
10         the witnesses told them in this case?
11     A   No.
12     Q   Does the city know any facts indicating that
13         the witnesses mischaracterized what happened to
14         Weber and mystery officer?
15                    MR. PUIN:          Objection.
16     A   We do not.
17     Q   All right.  If Schade had said that Dalonte was
18         a suspect in this case, in Exhibit 1024, that
19         statement would contradict this report,
20         correct?
21     A   That's correct.
22     Q   All right.  If Schade did make that statement
23         contradicting this report, does the city have
24         any facts suggesting that he was correct,
25         rather than the report?
```

616

```
 1                            EXCERPT
 2      A   We do not.
 3      Q   Okay.  Looking again at paragraph 12 of that --
 4          pardon me.
 5              Looking again at paragraph 12 of the
 6          Shoulders' search warrant affidavit at Exhibit
 7          975.
 8              Does the city have any aggravated
 9          menacing complaints that match the description
10          that Sergeant Shoulders provided in paragraph
11          12?
12      A   It doesn't.  No, it does not exactly match the
13          description.
14                       -   -   -   -   -
15
16
17
18
19
20
21
22
23
24
25
```

CADY REPORTING SERVICES, INC.

617

```
 1                              EXCERPT

 2      Q   Let's go back to Exhibit 1024.

 3                  All right.  We talked last time about the

 4          city's obligation to produce Brady evidence,

 5          right?

 6      A   We did.

 7      Q   That includes evidence that the defendant is

 8          not guilty of the crime in question, correct?

 9      A   Correct.

10      Q   And also evidence that would tend to impeach,

11          you know, the reliability of witnesses in the

12          case, right?

13      A   Uh-huh.

14      Q   Okay.  Does the city agree that Exhibit 1024 is

15          Brady evidence?

16                      MR. PUIN:          Objection.

17      A   I really don't have an opinion on it one way or

18          the other.  I think that I would leave that up

19          to the prosecutor's office to decide.  It would

20          be provided to them.

21      Q   Okay.  Does the city have any evidence that it

22          ever was provided to the prosecutor?

23      A   I think the prosecutor -- I don't have the

24          evidence in front of me, but -- my recollection

25          is kind of foggy on this.  I don't have that
```

                       CADY REPORTING SERVICES, INC.

618

```
 1                          EXCERPT

 2          evidence in front of me.  I don't recall that

 3          evidence.

 4     Q    Okay.  Let's imagine we're at trial and we call

 5          the prosecutor and he says "I never received

 6          this."  Do you have any information sitting

 7          here today that would suggest the prosecutor

 8          was not correct?

 9     A    I don't know that the prosecutor would do that.

10          So I don't know.  I don't know whether the

11          prosecutor received this or not.

12     Q    Okay.  Do you have any evidence indicating that

13          the prosecutor did receive this evidence -- did

14          receive this report?

15     A    Without reviewing Detective Lam's notes and

16          emails between the prosecutor, I can't answer

17          that.

18     Q    Okay.

19     A    I know they were in constant communication and

20          that he provided the prosecutor's office with

21          almost his daily activity on this case.

22     Q    Okay.  You have reviewed Detective Lam's

23          reports and communications with the prosecutor,

24          right?

25     A    Yes.

                   CADY REPORTING SERVICES, INC.
```

619

1                              EXCERPT

2        Q    Okay.  You did that in preparation for your

3             deposition, correct?

4        A    I did.

5        Q    Having done all of that, you don't know of any

6             evidence indicating that Detective Lam ever

7             turned over the report, Exhibit 1024, to the

8             prosecutor, do you?

9        A    I think my testimony's going to be that I don't

10            recall without reviewing all of that

11            information, like, right now.

12       Q    You don't recall what?

13       A    My memory -- I do not remember whether or not

14            this was provided to the prosecutor.

15       Q    Sitting here today, you have no testimony you

16            could give me?

17       A    Without reviewing that information again.

18       Q    Okay.  So it's a no?

19       A    No, it's without reviewing that information

20            again.

21       Q    Okay.  Does the city have any evidence that it

22            disclosed this report to the defense?

23                      MS. MILEY:          Objection.

24       Q    In the prosecution of Dalonte White.

25       A    No.

                     CADY REPORTING SERVICES, INC.

```
 1                         EXCERPT
 2     Q    Does the city agree that disclosing this report
 3          to the prosecution could have changed what
 4          happened in the criminal proceeding?
 5                    MS. MILEY:        Objection.
 6                    MR. PUIN:         Objection.
 7                    MS. KEEFER:       Objection.
 8     A    The city does not agree with that.
 9     Q    It couldn't have?
10                    MR. PUIN:         Objection.
11     A    Could you repeat the question again?
12     Q    The city's position is that disclosing this to
13          the prosecution could not have changed how the
14          prosecutor's office proceeded with the
15          prosecution of Dalonte White?
16     A    I can't make a decision on what the
17          prosecutor's office would have done.
18     Q    Okay.  Do you believe that it could have
19          influenced or changed their decision making?
20                    MS. MILEY:        Objection.
21     A    I believe that the prosecutor would have
22          probably talked to the officers involved,
23          pulled both those reports, sat everybody down
24          and came to the bottom of it.
25     Q    Okay.  You've been involved in the process of
                    CADY REPORTING SERVICES, INC.
```

```
 1                        EXCERPT

 2        deciding whether to proceed with a case with

 3        the prosecutor --

 4   A    Yes.

 5   Q    -- tons of time?

 6   A    I have.

 7   Q    Okay.  Based on your experience, do you believe

 8        that disclosing this to the prosecutor could

 9        have changed the way he decided to proceed with

10        the prosecution of Dalonte White?

11                    MS. MILEY:        Objection.

12                    MR. PUIN:         Objection.

13                    MS. KEEFER:       Objection.

14   A    "Could have" is a broad statement.  And

15        depending on who the prosecutor is and

16        depending on what other information -- you

17        know, this is just part of -- this is one thing

18        in the totality of the whole case.

19   Q    Okay.

20   A    So if you pull this information out but you

21        still have -- you still have identification and

22        you still have other evidence that provides

23        probable cause, then you still have probable

24        cause.

25   Q    Okay.

                    CADY REPORTING SERVICES, INC.
```

| | | |
|---|---|---|
| 1 | | EXCERPT |
| 2 | A | So it's a difficult -- once again you're asking |
| 3 | | me a subjective question. |
| 4 | Q | Okay.  So given the evidence that you do have |
| 5 | | and what you do know and everything that did |
| 6 | | unfold in this case, you would agree, I assume, |
| 7 | | that disclosing this report to the prosecutor |
| 8 | | is not certain to change the prosecutor's |
| 9 | | decision making, right? |
| 10 | A | That's what I would say.  It is not certain. |
| 11 | Q | It sounds like you were not even saying that it |
| 12 | | would have a high probability of changing the |
| 13 | | prosecutor's decision whether to prosecute. |
| 14 | A | I'm not sure what the probability is, because, |
| 15 | | once again, it would require the prosecutor to |
| 16 | | sit down with all of the officers involved and |
| 17 | | hash it all out. |
| 18 | Q | Okay. |
| 19 | A | It could just be like -- you know, it could |
| 20 | | just be:  Hey, I mixed this up, this report up |
| 21 | | with that report, and I have independent |
| 22 | | information that's not in this report as a |
| 23 | | police officer working in the second district. |
| 24 | Q | Okay. |
| 25 | A | But -- |

CADY REPORTING SERVICES, INC.

```
 1                          EXCERPT

 2     Q   It might compensate for the fact that this

 3         report contains something?

 4     A   Yes.

 5             So I don't have that information.  The

 6         prosecutor may.

 7     Q   Okay.

 8     A   So, you know, once again, it's a very

 9         subjective question and it's based on probably

10         a prosecutor that has more trial experience

11         than I do going to trial and providing

12         exculpatory information to defense.  I would

13         say that it's something that needs to be

14         discussed, absolutely.

15     Q   Okay.

16     A   Whether that would change his mind or her mind,

17         you know, I can't -- I can't say yes or no.

18     Q   Okay.  Is it fair to say that there's a

19         reasonable probability but that you cannot

20         measure that probability?

21     A   A reasonable probability to -- of what?

22     Q   Of influencing the prosecutor's decision

23         making.

24     A   It would -- it would definitely --

25                      MR. PUIN:        Objection.

                         CADY REPORTING SERVICES, INC.
```

```
1                              EXCERPT

2      A    -- cause -- it would cause him to consider this

3            information, along with all of the other

4            information.  How that would affect his case.

5      Q    Okay.  Does the city agree that it never

6            disclosed Sergeant Shoulders' memory problems

7            to the prosecution?

8                          MR. PUIN:          Objection.

9                          MS. MILEY:         Objection.

10     A    I don't think that the city was aware that

11           Sergeant Shoulders had a memory problem at the

12           time of this incident.

13                          -  -  -  -  -

14

15

16

17

18

19

20

21

22

23

24

25

                     CADY REPORTING SERVICES, INC.
```

```
 1                          EXCERPT

 2      Q    Does the city agree that disclosing both

 3           Exhibit 1024 and Sergeant Shoulders' memory

 4           issues could have changed the prosecutor's

 5           decision whether to proceed with the

 6           investigation?

 7                     MR. PUIN:          Objection.

 8                     MS. KEEFER:          Objection.

 9      Q    Assuming that Shoulders' memory problems

10           existed at the time.

11      A    So you're -- this is two questions.  One is

12           you're asking me about the documents, and then

13           on top of the documents, Sergeant Shoulders.

14      Q    Disclosing both pieces of information.

15                Does the city believe that disclosing

16           both of those pieces of information could have

17           changed the prosecutor's decision to proceed

18           with the prosecution of Dalonte White?

19      A    It could have influenced his decision.

20      Q    Okay.  It's safe to say the city does not

21           believe it's certain that it would influence

22           the decision?

23      A    Correct.

24      Q    But there's a reasonable probability?

25                     MS. MILEY:          Objection.

                     CADY REPORTING SERVICES, INC.
```

```
 1                          EXCERPT

 2                MR. PUIN:          Objection.

 3                MS. KEEFER:        Objection.

 4      A    It's reasonable to believe that putting those

 5           together that -- but then he would also have to

 6           say "What is Sergeant Shoulders going to

 7           testify to?"

 8      Q    Right.

 9      A    What can he testify to that Lam can't testify

10           to or another officer involved can't testify

11           to?  Was there, you know, two officers doing

12           the same thing all the time?

13      Q    Okay.

14      A    Was Lam with Shoulders all the time?  Was there

15           another detective involved?  So there's a lot

16           of factors involved.

17      Q    Okay.  And again assuming that all of these

18           statements would be true, the city, it sounds

19           like, would agree that disclosing Exhibit 1024

20           and Sergeant Shoulders' memory issues and the

21           don't circle instruction, that that also would

22           have a reasonable probability of influencing --

23           of changing the prosecution's decision --

24                MS. MILEY:         Objection.

25                MS. KEEFER:        Objection.

                 CADY REPORTING SERVICES, INC.
```

```
 1                        EXCERPT
 2    Q   -- to proceed with the prosecution of Dalonte
 3        White?
 4    A   Yes.
 5    Q   Okay.  In this case -- yeah, I want to talk
 6        about supervision and training for a minute.
 7             You've seen the complaint in this case,
 8        right?
 9    A   Yes.
10                      -   -   -   -   -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                   CADY REPORTING SERVICES, INC.
```

628

```
1                        EXCERPT
2              MR. BARDWELL:     All right.
3         And then I wanted to ask specifically
4     about Exhibit 1024.
5              Do we have that in here?
6              I'm going to hand it off to Tim for a
7     moment.
8              Did the city ever produce -- did anybody
9     ever produce this record to us?
10                  MR. PUIN:        If this is what
11    I'm thinking of, I think we did and I think you
12    asked that at the last depo.
13             Isn't this the one that Elena came in
14    with?
15                  MR. BARDWELL:    No.  You're
16    thinking of Exhibit 988, I believe.
17                  THE WITNESS:    Right here.
18                  MR. PUIN:       Okay.  Well, I
19    mean I would have to double-check our Bates
20    number on it, but I believe we would have --
21                  MS. MILEY:      Can I see it?
22                  MR. PUIN:        -- produced it.
23         In any case, you had it, right?
24                  MR. BARDWELL:    I mean you guys
25    had it on your own, though, right, and provided
                 CADY REPORTING SERVICES, INC.
```

629

```
 1                        EXCERPT
 2        it to the witness?
 3                   MR. PUIN:        I don't want to
 4        speak to what we provided to the witness in
 5        particular, but certainly the city has access
 6        to that record.  It's generated from the LERMS
 7        system.
 8                   MR. BARDWELL:     Right.
 9                   MR. PUIN:        I don't know if
10        you got it through a public records request or
11        through a document production from us.
12                   MR. BARDWELL:     When I handed
13        it over, though, that was not the first time
14        you guys were seeing it, correct?  You guys
15        already knew about that, right?
16                   MR. PUIN:        We're on the
17        record here and I'm not sure the purpose of
18        this questioning and I'm not comfortable really
19        talking about this without understanding your
20        purpose in asking these questions.
21            I mean we can go off the record and talk
22        about it or, you know, we can proceed with the
23        questioning of the witness, but --
24                   MR. BARDWELL:     Okay.  So right
25        now you're not willing to answer that question?
                  CADY REPORTING SERVICES, INC.
```

```
 1                        EXCERPT
 2                MR. PUIN:           I don't even
 3        know what you're asking, why you're asking it.
 4            I mean we -- you have the document.  You
 5        cannot be asking us why didn't you get this
 6        document before.  It's Bates numbered with your
 7        Bates number.  You obviously had this document.
 8            Are you trying to ask me did we show it
 9        to our witness to prepare him for the depo?  I
10        mean, I don't understand.
11                MR. BARDWELL:    I'm asking if
12        when you got it from us that was the first time
13        you saw it.
14                MR. PUIN:          I don't know
15        and I really don't understand the purpose of
16        the question.  I'd rather not answer any more
17        questions about our document production at this
18        time.
19                MR. BARDWELL:    Okay.  All
20        right.
21                    -  -  -  -  -
22
23
24
25
                  CADY REPORTING SERVICES, INC.
```

```
 1    THE STATE OF OHIO, )  SS:
 2    COUNTY OF CUYAHOGA.)
 3        I, Sarah R. Drown, a Notary Public within and
 4    for the State of Ohio, duly commissioned and
 5    qualified, do hereby certify that COMMANDER MICHAEL
 6    CONNELLY, was first duly sworn to testify the
 7    truth, the whole truth and nothing but the truth in
 8    the cause aforesaid; that the testimony then given
 9    by him was by me reduced to stenotypy in the
10    presence of said witness, afterwards transcribed on
11    a computer/printer, and that the foregoing is a
12    true and correct transcript of the testimony so
13    given by him as aforesaid.
14        I do further certify that this deposition was
15    taken at the time and place in the foregoing
16    caption specified.  I do further certify that I am
17    not a relative, counsel or attorney of either
18    party, or otherwise interested in the event of this
19    action.
20        IN WITNESS WHEREOF, I have hereunto set my
21    hand and affixed my seal of office at Cleveland,
22    Ohio, this 30th day of January, 2020.
23

24

25                     Sarah R. Drown, RPR, Notary Public
                       within and for the State of Ohio
                       My commission expires April 22, 2022.
                       CADY REPORTING SERVICES, INC.
```