IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DALONTE WHITE**<br><br>*Plaintiff,*<br>v.<br>**CITY OF CLEVELAND,** *et al.*<br><br>*Defendants.* | Case No.:  1:17-CV-1165<br><br>Judge Pamela A. Barker<br><br>Magistrate Judge Jonathan D. Greenberg |

**PLAINTIFF DALONTE WHITE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Dalonte White respectfully moves this Court for partial summary judgment on (1) the question of liability, (2) for Defendants John Kubas and David Santiago Sr., (3) on Claims 9 and 10, which allege intimidation and civil liability for criminal acts. The reasons for this motion are set forth in the attached memorandum in support.

May 5, 2020

Respectfully submitted,

*/s/ Brian D. Bardwell*
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com
*Counsel for Plaintiff Dalonte White*

# TABLE OF CONTENTS

Table of Authorities...........................................................................................................iii

Issues Presented .................................................................................................................1

Factual background .............................................................................................................1

Legal Standard ....................................................................................................................8

Law & Argument .................................................................................................................9

    I.     Defendants Kubas and Santiago are liable under the state intimidation statute, Ohio Rev. Code § 2921.03...........................................................................................9

         A.    The victims' sworn testimony establishes that Kubas and Santiago committed the criminal offense of intimidation.......................................................9

         B.    No one has offered evidence sufficient to raise a genuine dispute as to the material facts of the victims' testimony. ............................................12

    II.    Defendants Kubas and Santiago are liable under the state statute providing civil damages for criminal activity, Ohio Rev. Code § 2307.60...........................................16

         A.    Kubas and Santiago committed the criminal act of intimidation. ..................17

         B.    Kubas and Santiago committed the criminal act of interfering with civil rights. ........................................................................................................17

Conclusion ........................................................................................................................19

### TABLE OF AUTHORITIES

**Cases**

*Am. Cas. Co. of Reading, Pennsylvania v. F.D.I.C.*, 39 F.3d 633 (6th Cir. 1994) .........................................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................13

*Bishop v. Hackel*, 636 F.3d 757 (6th Cir. 2011) ...........................................................15

*Brady v. Maryland*, 373 U.S. 83 (1963) .................................................................20

*Caie v. W. Bloomfield Twp.*, 485 F. App'x 92 (6th Cir. 2012) ...........................................17

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146 (6th Cir. 1995) ..........................................13

*Giglio v. United States*, 405 U.S. 150 (1972) ...............................................20, 21

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ..........................................21

*Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479 (6th Cir. 2006) ..............................13

*Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005) .....................................................21

*Jacobson v. Kaforey*, 149 Ohio St. 3d 398 (2016) .....................................................18

*Kavanaugh v. Lexington Fayette Urban Cty. Gov't*, 638 F. App'x 446 (6th Cir. 2015) ..........................14, 17

*Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) ................................................20

*Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347 (6th Cir. 2013) ...........................17

*Pratt v. Brown Mach. Co., a Div. of John Brown*, 855 F.2d 1225 (6th Cir. 1988) .........................18

*State v. Steele*, 138 Ohio St. 3d 1 (2013) .................................................................9

*Stovall v. Denno*, 388 U.S. 293 (1967) ..........................................................21

*Stumpf v. Robinson*, 722 F.3d 739 (6th Cir. 2013) ...................................................20

*Vander Boegh v. EnergySolutions, Inc.*, 536 F. App'x 522 (6th Cir. 2013) ...........................17

*White v. Sunrise Senior Living Mgmt., Inc.*, 535 F. App'x 485 (6th Cir. 2013) ..........................17

*Young v. City of Louisville*, 7 F.3d 237 (6th Cir. 1993) .............................................14

**Statutes**

Ohio Rev. Code § 2307.60 ...........................................................................16, 17

Ohio Rev. Code § 2921.03 .........................................................................9, 12, 16

Ohio Rev. Code § 2921.45 ...............................................................................17

Ohio Rev. Code 2901.22(B) ...............................................................................11

Ohio Rev. Code Ann. § 2921.01 ........................................................................17

**Rules**

Fed. R. Civ. P. 56 ...........................................................................................8

Fed. R. Evid. 602 ..........................................................................................13

Two witnesses, under oath, have accused Defendants John Kubas and David Santiago Sr. of instructing them to falsify records of their identifications of the shooter in a robbery investigation. Both defendants admit participating in those identifications but deny any personal recollection of what happened during them. Because their general speculation about what they "would have done" is insufficient to create a genuine dispute as to what actually happened, the Court should enter summary judgment in Mr. White's favor on the question of Defendants' liability, saving the question of damages for trial.

## ISSUES PRESENTED

1. Ohio's intimidation statute prohibits the knowing use of a materially false writing to influence or hinder a public servant in the discharge of his duty. Defendants Kubas and Santiago directed witnesses to falsify the results of a photographic identification and then passed on those results to be used by police, prosecutors, and the courts.

2. A genuine dispute as to a material issue requires more than a scintilla of evidence supporting the non-moving party. Multiple witnesses have testified under oath that Defendants Kubas and Santiago ordered them to falsify the results of a photo line-up; Kubas and Santiago deny remembering anything that happened when they met with the witnesses but don't believe they would have given those orders. Is their unsupported speculation sufficient to avoid summary judgment?

3. Ohio allows a civil action when a public servant knowingly attempts to deprive another person of a constitutional or statutory right. Defendants Kubas and Santiago tampered with exculpatory evidence in Mr. White's delinquency proceeding and covered up evidence of their misconduct knowing it would violate his rights to be free from unreasonable seizure, to a fair trial, and to due process. Are the liable for interference with Mr. White's civil rights?

## FACTUAL BACKGROUND

Edward Bunch is a career criminal. According to the City's records, Mr. Bunch is suspected of has been convicted of committing numerous offenses dating back at least to 2010, including domestic violence, rape, felonious assault, theft, grand theft, receiving stolen property, robbery, aggravated burglary, drug possession, drug abuse, and drug trafficking.[1]

---

[1] Cleveland Division of Police Global Subject Activity Report at CLE07756–59. Consistent with the Court's protective order (ECF #56), Plaintiff will await leave from the Court to file under seal this and other exhibits designated as confidential.

On April 13, 2013, for example, Defendant Thomas Shoulders, with the help of Defendant Robert Beveridge, arrested Mr. Bunch for a home invasion on Denison Avenue, about a mile away from the Cleveland Division of Police's Second District Headquarters.[2] Mr. Bunch, backed up by two other males, waited for the homeowner to open a front door and forced his way in.[3] The victim was held at gun point, ordered to hand over "everything" and struck repeatedly in the face with a gun.[4] Bunch and his accomplices took cash, a cell phone, and a gun before fleeing on foot.[5] When Defendant Shoulders found him, Bunch confessed to the crime.[6]

A crime with an eerily similar M.O. occurred at the West 54th Street home of Colleen Allums on April 21, 2015 ("the Allums incident").[7] Again, a group of three men—one of them carrying a gun—targeted a home about a mile from the Second District.[8] Again, they waited for someone from the house to open the front door, and then they forced their way in.[9] Again, one of the men, carrying a gun, told the homeowner—this time Ms. Allums—that he wanted "everything" and then repeatedly struck her in the face with his gun.[10] Again, the gunman and his accomplices took cash, a cell phone, and a gun.[11] This time, though, the gunman shot Ms. Allums.[12]

---

[2] Cleveland Division of Police Report #2013-101126 (Lam Dep., Ex. 990).

[3] *Id.* at WHITE03320.

[4] *Id.* at WHITE03321.

[5] *Id.*

[6] *Id.*.

[7] Lam Dep. 328:6–13 ("Q Okay. It's fair to say that the MO in this case with Edward Bunch matched the Colleen Allums incident, correct? … A It's similar."); Connelly Dep. 213:11–15 ("Q All right. Do you agree that the MO of the Colleen Alums case was similar to the MO in at least one of Bunch's previously crimes? … A Yes.").

[8] Cleveland Division of Police Report #2015-110291 (Lam Dep., Ex. 972).

[9] Lam Dep. 324:11–328:13.

[10] *Id.*

[11] *Id.*

[12] Report #2015-110291 at WHITE03271 (Lam Dep., Ex. 972).

One other difference from the Denison Avenue robbery: Ms. Allums had three pit bulls.[13] During the commotion, one of them broke loose and came into the room where she and the other two victims were being held.[14] The dog attacked the shooter, and police investigation indicated that during the attack, the dog may have bit the shooter's ankle, or the shooter may have accidentally shot himself while trying to get free from the dog.[15] His two accomplices ran off when the shooting began.[16] A neighbor's surveillance camera showed the shooter hobbling away soon after.[17]

Within half an hour, Edward Bunch arrived at the emergency room at Lakewood Hospital with a gunshot wound to the ankle.[18] Following standard procedure, two officers interviewed Mr. Bunch about his injury, but they were apparently not yet aware of the possible connection to the incident on West 54th Street.[19] Bunch reported that he was shot while riding his bicycle on West Boulevard, but police were not able to find the bicycle he reported abandoning there.[20] Hospital employees reported that Bunch was brought to the hospital by "friends and family," but Bunch told police that a stranger found him on the side of the road and gave him a ride. Over the course of several interviews, Bunch would eventually give three different accounts of how we was shot, none of which the police found credible.[21]

Meanwhile, other officers had arrived to begin investigating the robbery on West 54th Street.[22] Officer Donato Daugenti was first on the scene.[23] He spoke with the two other people in

---

[13] *Id.* at WHITE03270.

[14] *Id.* at WHITE03268.

[15] Connelly Dep. 209:20–210:12.

[16]  Report #2015-110291 at WHITE03268 (Lam Dep., Ex. 972).

[17]  *Id.* at WHITE03270

[18] Cleveland Division of Police Report #2015-110336 at WHITE03060 (Lam Dep., Ex. 955).

[19] *Id.*

[20] *Id.*

[21] Lam Dep. 349:20–350:8.

[22] Report #2015-110291 at WHITE03268 (Lam Dep., Ex. 972).

[23] *Id.*

Ms. Allums's house during the robbery, her niece Savannah LaForce and nephew Zachary Hale.[24] From their accounts, he was able to piece together a description of the shooter: a black male, with black hair and brown eyes, 19 years old, about 6 feet one inch tall, about 225 pounds, and likely suffering from a nasty ankle injury.[25] Every piece of the description matched Edward Bunch.[26]

Soon after, three detectives arrived on the scene: Defendant Shoulders, Detective Cynthia Moore, and their trainee, Defendant Lam.[27] Although Lam had only joined the detective bureau about a month earlier[28] and the vast majority of his training was incomplete, Defendant Shoulders assigned Lam to act as lead detective, giving him "complete responsibility for the investigation."[29]

Lam and the other detectives viewed the Allums residence, canvassed for witnesses, took a copy of the surveillance video showing the shooter limping away from the scene, and obtained the descriptions collected by Officer Daugenti.[30] The detectives also spoke with Defendant Schade, who told them that Mr. White was the suspect in "an aggravated menacing complaint in the area of W. 59th St." that happened during the weekend immediately before.[31] Lam found no record of Mr. White having been a suspect in the West 59th Street incident.[32] The City admits the report Schade had told Lam about explicitly exonerated Mr. White.[33]

---

[24] *Id.* at WHITE03268–69.

[25] Report #2015-110291 at WHITE03259 (Lam Dep., Ex. 972).

[26] Report #2015-110336 at WHITE03059 (Lam Dep., Ex. 955).; Lam Dep. 315:24–320:1.

[27] Lam Dep. 127:12–23.

[28] *Id.* at 158:23–25.

[29] *Id.* at 162:11–12.

[30] Report #2015-110291 at WHITE03270 (Lam Dep., Ex. 972).

[31] *Id.*

[32] Lam Dep. 293:18–20 ("Q There's no mention of Dalonte in this report at all, is that correct? A That's correct.").

[33] Connelly Dep. 388:21–390:10 ("It says: According to the witness, Dalonte White was not involved in the menacing and in fact attempted to convince the other two males that the witness was not who they thought.").

Defendant Lam spoke next to Defendant Beveridge, who said that Mr. White was part of a gang called "Hungry Money Family" or "Heartless Money Family."[34] At deposition, Beveridge was unable to attribute a single crime to this supposed "gang." The only crime he actually identified as involving this gang was one in which the gang member was the victim.[35]

Mr. White didn't match the description of the shooter officers gathered at the scene of the crime[36]—he was younger, "7 or 8 inches shorter," and "65 to 115 pounds lighter"[37] Still, based on his conversations with Defendants Schade and Beveridge, Lam placed Mr. White and two of his friends into photo arrays to administer to the victims.[38] Although the propriety of the methods used for assembling and administering the arrays is disputed, it is not disputed that using those arrays, the police were able to elicit statements from each of the three victims that Mr. White was the shooter.

Police went to Mr. White's house looking for any evidence that could corroborate the witnesses' identifications. They pulled Mr. White from his front yard and demanded that he show them his legs. There was no sign of any dog bite, gun shot, or any other injury like the one that left the shooter limping away from the Allums house.[39] This made Defendant Lam less suspicious of Mr. White.[40] But he and Defendant Shoulders still sought and secured warrants for Mr. White's arrest and a search of his house.[41]

---

[34] Cleveland Division of Police Report #2015-110291 at WHITE03270 (Lam Dep., Ex. 972).
[35] Beveridge Dep. 100:2–16.
[36] Lam Dep. 289:2–6.
[37] *Id.* at 289:6–19.
[38] *Id.* at 171:21–4.
[39] *Id.* at 221:5–17.
[40] *Id.* at 222:17–20.
[41] *Id.* at 207:15:22.

Their affidavits did not disclose the disparities between Mr. White's size and the description of the shooter assembled the night of the shooting.[42] Their affidavits did not disclose the fact that Mr. White had none of the injuries they knew the perpetrator had sustained during the incident.[43] Their affidavits did not disclose that Dalonte was not a suspect in the case Schade had identified.[44]

Days later, police arrested Mr. White on charges of burglary, kidnapping, and felonious assault, and they transported him to the Cuyahoga County Juvenile Justice Detention Center.[45] While Mr. White waited to see a judge, Detective Lam learned that Edward Bunch had checked into the hospital immediately after the Allums incident.[46] He quickly identified Bunch as a "person of interest" in the case, based on the proximity of the "date, time, and location" to the Allums incident, Bunch's inconsistent accounts of how he had been shot, and surveillance video of the limping perpetrator, which Lam described as "consistent with the injuries sustained by Edward Bunch."[47]

Lam prepared photo arrays with Edward Bunch and another possible suspect in them.[48] He asked Defendants Kubas and Santiago and Detective Thomas Balak to administer them to the three victims.[49] Detective Balak administered the arrays to Zachary Hale.[50] Despite having identified Mr. White as the shooter previously (with 70% certainty), he now identified a second person as the shooter (with 80% certainty), and then he identified Bunch as the shooter (with 90% certainty).[51]

---

[42] Shoulders Aff. at CLE07397–98 (Connelly Dep., Ex. 975); Lam Aff. at CLE07392–93 (Connelly Dep., Ex. 959).

[43] *Id.*

[44] *Id.*

[45] Report #2015-110291 at WHITE03273 (Lam Dep., Ex. 972).

[46] *Id.* at WHITE03275.

[47] *Id.*.

[48] *Id.*

[49] *Id.* at WHITE03275–76.

[50] *Id.* at WHITE03276.

[51] *Id.*

While Defendant Kubas does not remember administering the photo array to Ms. Allums, he does not dispute doing so.[52] Although he denies remembering literally any facts about his involvement in this case,[53] Ms. Allums remembered the interaction in detail. She testified in juvenile court that when she saw Edward Bunch, she immediately recognized him and the eyes that "looked at me while I was lying on the floor bleeding to death."[54] Having identified her shooter, she wanted to circle his picture but didn't,[55] following the instructions of Defendant Kubas, who told her not to identify someone who she thought had already been already arrested because he didn't want his investigation "going in circles."[56]

Defendant Santiago does not remember administering the photo array to Ms. LaForce, but he does not dispute doing so.[57] Although Santiago denies remembering literally any facts about his involvement in this case,[58] Ms. LaForce remembered the interaction in detail. She testified in juvenile court that when she saw Edward Bunch, she recognized him as the one with the gun. [59] Having identified the shooter, she was going to circle him but didn't, following Defendant Santiago's instructions. He told her, "don't circle him if you already picked him out of a lineup."[60]

Neither Kubas nor Santiago told the prosecutor assigned to the case that they had tampered with their witnesses' identifications.[61] That left Mr. White's attorney unable to use those facts to

---

[52] Kubas Dep. 93:17–94:8 ("Q Do you dispute that you conducted these photo lineups? A I'm not disputing, no. I don't remember.").

[53] *Id.* at 99:6–106:7.

[54] Transcript of Juvenile Court Bindover Hearing, 141:20–21 (attached as Ex. 1).

[55] Bindover Tr. 134:11–21 ("Q. Did you actually ever make any markings? A. No, I did not. Q. Did you want to? A. Yes.").

[56] *Id.* at 135:7–14 ("[H]e said not to circle him because we were -- that they were looking for the other two suspects and that if he was already arrested, that it would be them going in circles.").

[57] Santiago Dep. 97:8–15.

[58] *Id.* at 83:14–17; 87:8–91–20.

[59] Bindover Tr. 101:15–18.

[60] *Id.* at 101:5–13.

[61] Schroth Decl. ¶¶ 6–7.

argue for Mr. White's release, and it left the judges supervising his case unable to consider them in deciding whether to continue Mr. White's detention.

When the case finally reached Cuyahoga County Juvenile Court Judge Denise Rini, both the prosecutor and the court learned for the first time about the "serious and exculpatory" improprieties in how Kubas and Santiago handled the photo arrays.[62] Relying on the new information about witnesses identifying Bunch[63] and the complete lack of evidence corroborating the initial identification of Mr. White as the shooter,[64] along with her findings that the photo array used to make that identification was too suggestive,[65] that the shooter was much larger than Mr. White,[66] that Lam's assertion that Ms. Allums described the shooter as matching Mr. White's height was refuted by his audio recording of that conversation,[67] and that Bunch was at the hospital with injuries matching the description of the shooter's,[68] the court found that there was not "probable cause that Dalonte White was part of the home invasion."[69]

## LEGAL STANDARD

Under Fed. R. Civ. P. 56, the Court shall grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate when, based on the evidence or stipulations, "reasonable minds can come to but one conclusion and that conclusion is adverse to the [non-moving] party...,

---

[62] *Id.* at ¶¶ 6–7.
[63] Bindover Tr. 432:23–433:2.
[64] *Id.* at 434:20–435:3 ("There is no corroborating evidence.").
[65] *Id.* at 433:3–10.
[66] *Id.* at 433:21–23.
[67] *Id.* at 433:23–434:2.
[68] *Id.* at 434:9–19.
[69] *Id.* at 435:4–6.

that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."[70]

**LAW & ARGUMENT**

I.      **Defendants Kubas and Santiago are liable under the state intimidation statute, Ohio Rev. Code § 2921.03.**

    A.      **The victims' sworn testimony establishes that Kubas and Santiago committed the criminal offense of intimidation.**

Under Ohio law, it is a criminal offense for a police officer "using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner" to "attempt to influence, intimidate, or hinder a public servant … in the discharge of the [public servant's] duty." [71]

        1.      **There is no genuine dispute that Kubas and Santiago used a false writing.**

There is no dispute as to the fact that Defendants Kubas and Santiago used false writings. Those writings included the photo lineups, which were left unmarked, indicating that Ms. Allums and Ms. LaForce didn't recognize anyone in the lineup as the person who committed the crime being investigated, and the attached cover sheets, which affirmatively state that the person who committed the crime being investigated was not in the lineup.

Those writings are false. Ms. Allums and Ms. LaForce testified, under oath, that they did, in fact, recognize Edward Bunch in their photo lineups as the person who committed the crime.[72] Although Defendants have speculated that the witnesses may have testified falsely, no one purports

---

[70] Fed. R. Civ. P. 56(C).

[71] *State v. Steele*, 138 Ohio St. 3d 1, 6 (2013) ("[W]e hold that a police officer may be prosecuted for the offense of intimidation when the police officer's actions during an interrogation satisfy the elements provided in R.C. 2921.03.").

[72] Bindover Tr. 100:6–14; 133:15–20.

to have any personal knowledge that would allow them to say that the witnesses did not actually recognize Edward Bunch.[73]

Because the witnesses testified they recognized someone in the lineup as the person who committed the crime against them, and no one has offered any evidence to the contrary, there is no genuine dispute that photo arrays or cover sheets were false writings.

> ### 2.    There is no genuine dispute that Kubas and Santiago that the writings were materially false.

Nor is there any dispute as to the materiality of these false statements.[74] "The value of a photo lineup" is in its ability to "either identify or eliminate somebody as a suspect."[75] A false statement as to whether a witness recognizes the perpetrator therefore undercuts the entire exercise of asking a witness to pick out a suspect.[76]

Defendants agree. The City says an officer should "absolutely not" give such an instruction.[77] Defendant Lam says that doing so would undermine an officer's duty "to keep the process fair, neutral and impartial."[78] And to quote Defendant Santiago's own admission, "It sounds almost criminal. … You're corrupting an investigation, if you ask me."[79]

> ### 3.    There is no genuine dispute that Kubas and Santiago acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

A defendant acts recklessly "when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."[80]

---

[73] Kubas Dep. 105:8–13; Santiago Dep. 96:7–13; Lam Dep. 107:1–21.

[74] Connelly Dep. 444:19–445:3 ("Q: Would the city agree that those facts would be material to the determination of whether there's probable cause to continue holding Dalonte? A: Yes.").

[75] *Id.* at 227:1–5.

[76] Santiago Dep. 102:4–13 ("You know, it's like why would you even say something like that? Why even bring me a photo array to show and then make a comment like that? It makes no sense.").

[77] Connelly Dep. 243:22–244:5.

[78] Lam Dep. 104:24–25.

[79] Santiago Dep. 101:3–6.

[80] Ohio Rev. Code 2901.22(C).

"When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element."[81]A defendant acts knowingly "when the person is aware that such circumstances probably exist."[82]

Here, Defendants Kubas and Santiago satisfy the recklessness requirement because they had actual knowledge that the writings they were using were false. Ms. Allums and Ms. LaForce each told the Defendants that they recognized Mr. Bunch in the lineups. They wanted to circle him and identify him as the shooter, but Defendants Kubas and Santiago intervened to stop them.[83]

Because the victims explicitly said they recognized someone in the lineups as the shooter in their case, but Defendants instructed them to answer to the contrary, Defendants acted knowing that the statements were false. That knowledge satisfies Ohio Rev. Code § 2901.22(E)'s recklessness requirement.[84]

### 4. There is no genuine dispute that Kubas and Santiago acted to influence, intimidate, or hinder public servants in the discharge of their duties.

Finally, there is no dispute that the line-ups and cover sheets in question are intended to influence public servants throughout the justice system in the discharge of their duties:

- The blind administrator expects the cover sheet to influence the course of the detective's investigation.[85]

- The blind administrator expects the cover sheet to influence supervisors in their handling of a case.[86]

---

[81] Ohio Rev. Code 2901.22(E).

[82] Ohio Rev. Code 2901.22(B).

[83] Bindover Tr. 101:5–14; 134:18–135:16.

[84] Ohio Rev. Code 2901.22(E).

[85] Santiago Dep. 61:1–7 ("[I]f the victim or witness doesn't make a pick, then there's a possibility that the person that they were focusing on didn't do it or they just didn't pick them. Or if they did pick them and they said, 'Well, I'm only 50 percent sure', you know, that would make a difference in where your investigation goes."). *See also* Connelly Dep. 239:4–18 ("[Defendant Lam] uses the results to carry on his investigation, that's correct.").

[86] Santiago Dep. 63:25–64:3.

- The blind administrator expects the cover sheet to influence prosecutors in their decisions about whether to seek a warrant or pursue a prosecution.[87]
- The blind administrator expects the cover sheet to influence judges and juries in their evaluations of the evidence in a case.[88]

The victims' accounts, then, as to Kubas and Santiago, satisfy all the elements of this offense. Even Defendant Lam agreed Ms. Allums and Ms. LaForce's sworn testimony describes a violation of Ohio Rev. Code § 2921.03:

> Q Would somebody who fills out a photo array and instructs a witness not to identify a witness be making, presenting, or using a record, document, or thing knowing it to be false and with purpose to mislead a public official?
>
> MS. BOOP: Objection.
>
> MS. MILEY: Objection.
>
> A It would appear to be so.[89]

### B. No one has offered evidence sufficient to raise a genuine dispute as to the material facts of the victims' testimony.

"A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."[90] "'Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"[91]

Here, two witnesses independently testified, under oath, that they identified Edward Bunch in their photo arrays but received instructions from Defendants Kubas and Santiago to falsify the results. And there is no reason to doubt their testimony; the third victim testified that he identified

---

[87] *Id.* at 64:4–20 ("[T]hat would make a difference in the Prosecutor's ruling."); Connelly Dep. 241:23–242:5 ("It would be possible that they would use that as part of their evidence.").

[88] Santiago Dep. 66:7–16; Connelly Dep. 241:7–18 ("If there's no identification or if there's a misidentification … or if there's a positive identification, those all have different influences."); *id.* at 241:24–5 ("Q: You would expect it to influence, like, the jurors in making a determination about whether somebody was guilty, assuming it was presented to a jury? … A: Yes.").

[89] Lam Dep. 357:13–20.

[90] *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).

[91] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Bunch, as well,[92] and the prosecutor on the case had no indication that the victims were altering their testimony.[93]

Defendants Kubas and Santiago produced no evidence that would create a "genuine dispute" as to the truth of that testimony. While their answer formally denied giving the "don't circle,"[94] "the nonmoving party cannot respond by merely resting on the pleadings."[95] Instead, Kubas and Santiago must present some "specific facts showing that there is a genuine issue for trial."[96] This they have failed to do. In their depositions, each raised questions about whether they "would" give that instruction,[97] but speculation about hypotheticals is insufficient to create a genuine dispute.[98]

Instead, the Court is limited to admissible evidence. Because Defendants made no recording of themselves administering those photo arrays,[99] all that is left is the participants' testimony, which must be based on "personal knowledge."[100] On this count, Kubas and Santiago offer nothing to

---

[92] Report #2015-110291 at WHITE03276 (Lam Dep., Ex. 972).

[93] Schroth Decl. ¶ 9.

[94] Answer to Plaintiff's Second Amended Complaint, ¶ 6 (ECF #182).

[95] *Young v. City of Louisville*, 7 F.3d 237 (6th Cir. 1993).

[96] *Young*, 7 F.3d 237.

[97] Kubas Dep. 163:24-164:4 ("Q. Would you have ever said not to circle someone that you recognized because you've already identified them in a different photo array or a lineup? A. I would have never said that."); Santiago Dep. 97:19-98:23 ("Q. If there's a report that you -- so if there was a report that when administering this you told the witness not to pick someone out if they had already picked them before, would you have any reason to dispute that? … A. Absolutely. Because I would never say anything like that.").

[98] *Kavanaugh v. Lexington Fayette Urban Cty. Gov't*, 638 F. App'x 446, 449 (6th Cir. 2015) ("The nonmoving party must present something more than mere speculation or allegations.")

[99] Kubas Dep. 124:9–13; Santiago Dep. 122:21–3.

[100] Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

refute Ms. Allums and Ms. LaForce's sworn testimony. Each admits to administering the photo arrays,[101] but each denies the ability to remember a single detail about what happened.[102]

The courts are clear that parties cannot avoid summary judgment from this posture. In *Bishop v. Hackel*, 636 F.3d 757 (6th Cir. 2011), for instance, the defendants in an Eighth Amendment case moved for summary judgment, arguing that there was no genuine dispute that they were without notice that the plaintiff was at risk of attack from another inmate. The district court denied summary judgment, finding that the plaintiff's testimony that he had reported previous attacks by the other inmate to corrections officers created a genuine dispute as to whether the defendants ignored a risk to the plaintiff's health, even if it was short on details.

But the Sixth Circuit reversed, holding that the district court was "simply incorrect" that such sparse testimony could create a genuine dispute: "Bishop states that he does not recall which corrections officers he complained to, he is unable to describe the corrections officers that he complained to, and he does not remember when or how many times he complained. Bishop offers no evidence that he complained to any of the Deputies, or that the Deputies had any knowledge of his alleged complaints."[103]

The denials in this case are even more sparse. Where multiple witnesses have given sworn testimony that Kubas and Santiago ordered them to falsify their identifications, where their testimony is corroborated by that of a third witness, and where all their testimony is corroborated by the abundance of evidence suggesting Edward Bunch was, in fact, the shooter in the Allums

---

[101] Kubas Dep. 94:3–5 ("Q Do you dispute that you conducted these photo lineups? A I'm not disputing, no.")Santiago Dep. 87:12–14 ("I must have, because that's my handwriting there.").

[102] Santiago Dep. 106:12–14 ("Q You do not have any recollection of that interaction, do you? A No."); Kubas Dep. 164: 11–13 ("You have no recollection of doing either of these arrays, correct? A Correct.").

[103] *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011).

incident, Defendants Kubas and Santiago insist their memories are so poor that they can't remember a single thing about those photo arrays.

Defendant Kubas doesn't remember receiving the photo arrays to administer,[104] he doesn't remember handing them back to Defendant Lam when he was finished,[105] and he doesn't remember anything else about the investigation—nine pages of his deposition testimony are dedicated to his insistence that he has no personal knowledge of anything related to the Colleen Allums case.[106] Defendant Santiago's recollection is no better. He doesn't remember receiving the arrays,[107] returning them to Lam,[108] or anything in between.[109]

Instead, both defendants offer only evidence-free assertions—not even supported by their personal recollection—that giving an instruction to falsify evidence just isn't their scene. Kubas insisted he "would never say that," but admits he has "no recollection" of administering the photo arrays on which to base his testimony.[110] Santiago mirrored his colleague's testimony, saying he "would never have said it," but admitting he does not "have any recollection of that interaction."[111]

The basis for denying summary judgment in this case, then, is even weaker than in *Bishop*. There, the Sixth Circuit reversed and ordered an entry of summary judgment due to the non-moving party's lack of memory about key details—even in the face of his explicit, under-oath statement that he personally remembered a conversation supporting his story. As in *Bishop*, Kubas and Santiago are unable to remember anything relevant to the case, but worse, they can't testify to the occurrence of

---

[104] Kubas Dep. 92:22–93:1.

[105] *Id.* at 105:2–4.

[106] *Id.* at 97:10–105:7.

[107] Santiago Dep. 87:25–88:1.

[108] *Id.* at 90:22–91:1.

[109] *Id.* at 86:24–91:20.

[110] Kubas Dep. 164:8–19.

[111] Santiago Dep. 106:5–14.

either of the facts that might exonerate them: that their witnesses did not recognize anyone in their line-ups, or that they instructed their witnesses to circle whomever they recognized.

Instead, they merely offer their speculation that what Ms. Allums and Ms. LaForce testified to, in court, under oath, subject to cross-examination, simply cannot be true and must have happened in a way that would allow them to avoid summary judgment. But "[t]estimony that an event 'has to have occurred' or was 'likely' is mere conjecture" and insufficient to create a genuine dispute.[112]

Because there is no genuine dispute as to the truth of Ms. Allums or Ms. LaForce's testimony, and because that testimony establishes that Defendants Kubas and Santiago violated Ohio Rev. Code § 2921.03, Mr. White is entitled to summary judgment as a matter of law.

## II. Defendants Kubas and Santiago are liable under the state statute providing civil damages for criminal activity, Ohio Rev. Code § 2307.60.

Under Ohio Rev. Code § 2307.60(A)(1), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action … and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code." The statute, "by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from any criminal act."[113]

---

[112] *Vander Boegh v. EnergySolutions, Inc.*, 536 F. App'x 522, 533 (6th Cir. 2013). *See also Kavanaugh v. Lexington Fayette Urban Cty. Gov't*, 638 F. App'x 446, 449 (6th Cir. 2015) ("The nonmoving party must present something more than mere speculation or allegations: there must be probative evidence upon which a jury could reasonably find for the nonmovant."); *White v. Sunrise Senior Living Mgmt., Inc.*, 535 F. App'x 485, 486 (6th Cir. 2013) ("[Non-moving party's] inability to recall does not create a disputed fact."); *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 93 (6th Cir. 2012) (finding no genuine dispute where moving parties offered testimony about key events and non-moving party "acknowledges having little or no memory of the events that occurred"); *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013) ("A deponent who professes a comprehensive and incredible lack of memory in fact declines to present evidence."); *Am. Cas. Co. of Reading, Pennsylvania v. F.D.I.C.*, 39 F.3d 633, 640–41 (6th Cir. 1994) (finding no genuine dispute where one party to a discussion "has no recollection" of the relevant events); *Pratt v. Brown Mach. Co., a Div. of John Brown*, 855 F.2d 1225, 1233 (6th Cir. 1988) ("[A party] may not create a dispute of fact concerning an issue about which he has no recollection.").
[113] *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 400 (2016).

### A.    Kubas and Santiago committed the criminal act of intimidation.

As discussed above, Kubas and Santiago committed the criminal offense of intimidation and are therefore separately liable to Mr. White for any resulting damages under Ohio Rev. Code § 2307.60.

### B.    Kubas and Santiago committed the criminal act of interfering with civil rights.

"No public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right."[114]

There is no genuine dispute that Kubas and Santiago are public servants, or that their actions in this case were carried under color of their office, employment, or authority.[115] And, as discussed above, the evidence shows there is no genuine dispute that they acted knowingly when they directed their witnesses to falsify their identifications.

The question, then, is whether they deprived or attempted to deprive Mr. White of a constitutional or statutory right. Here, the undisputed evidence indicates that Defendants Kubas and Santiago took actions that they knew would interfere with Mr. White's rights, including—to name only a few—his rights to be free from unreasonable search and seizure, to a fair trial, and to due process.

#### 1.    Kubas and Santiago attempted to interfere with Mr. White's right to be free from unreasonable search and seizure.

Because a suspect has a right to be free from unreasonable search and seizure, both before and after the time of his arrest, "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process."[116] Here, Defendants Kubas and Santiago came into knowledge exonerating Mr. White, or at the least seriously undercutting any

---

[114] Ohio Rev. Code § 2921.45.

[115] "Public servant" means "[a]ny public official," which "includes … law enforcement officers." Ohio Rev. Code § 2921.01.

[116] *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 913 (2017).

probable cause to hold him. By refusing to turn that evidence over to the prosecutor, they attempted to interfere with Mr. White's right to be free from an unreasonable pretrial detention.

> **2.  Kubas and Santiago attempted to interfere with Mr. White's right to a fair trial.**

The Sixth Amendment gives a criminal defendant "the right to a fair proceeding in front of an impartial factfinder based on reliable evidence."[117] Here, Defendants Kubas and Santiago attempted to deprive Mr. White of reliable, exculpatory evidence by concealing evidence of his innocence in the form of the victims' identifications of Edward Bunch, and by concealing evidence that would allow him to impeach both those victims and the officers. Mr. White has a right to both those types of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

> **3.  Kubas and Santiago attempted to interfere with Mr. White's right to due process.**

"Criminal suspects have a constitutional right to be free from identification procedures 'so unnecessarily suggestive and conducive to irreparable mistaken identification' that the identification's use violates due process of law."[118] An identification procedure violates a defendant's right to due process if it "was so unnecessarily suggestive as to run the risk of irreparable mistaken identification."[119]

Defendants Kubas and Santiago did not merely suggest, they *ordered* Ms. Allums and Ms. LaForce to record dishonest results of their identifications, and they concealed the fact of their interference from prosecutors, defense attorneys, and the court. In doing so, they attempted to and

---

[117] *Stumpf v. Robinson*, 722 F.3d 739, 751 (6th Cir. 2013).

[118] *Gregory v. City of Louisville*, 444 F.3d 725, 746 (6th Cir. 2006) (citing *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).

[119] *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

did interfere with Mr. White's right to be free from an unnecessarily suggestive identification procedure.

CONCLUSION

Although granting of summary judgment on liability to plaintiffs may be unusual, it is warranted here. Because there is no genuine dispute that Kubas and Santiago committed the offenses of intimidation and interference with civil rights when they ordered Ms. Allums and Ms. LaForce to falsify the results of their photo arrays, they are liable to Mr. White for any resulting damages under both Ohio Rev. Code §§ 2921.03 and 2307.60. Mr. White is therefore entitled to summary judgment as to liability on both of these claims, reserving the question of damages to be decided at trial.

May 5, 2020                                                    Respectfully submitted,

                                                    */s/ Brian D. Bardwell*
                                                    Subodh Chandra (0069233)
                                                    Brian D. Bardwell (0098423)
                                                    The Chandra Law Firm LLC
                                                    The Chandra Law Building
                                                    1265 West Sixth Street, Suite 400
                                                    Cleveland, OH 44113
                                                    T: 216.578.1700
                                                    F: 216.578.1800
                                                    Subodh.Chandra@ChandraLaw.com
                                                    Brian.Bardwell@ChandraLaw.com

                                                    *Counsel for Plaintiff Dalonte White*