IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DALONTE WHITE**<br><br>*Plaintiff,*<br>v.<br>**CITY OF CLEVELAND**, *et al.*<br><br>*Defendants.* | Case No.: 1:17-CV-1165<br><br>Judge Pamela A. Barker<br><br>Magistrate Judge Jonathan D. Greenberg |
| **PLAINTIFF DALONTE WHITE'S REPLY IN SUPPORT OF HIS MOTION TO LIFT CONFIDENTIAL DESIGNATIONS AND UNSEAL THE DEPOSITIONS OF DAVID LAM, JOHN KUBAS, DAVID SANTIAGO, AND THE CITY OF CLEVELAND** | |

Plaintiff Dalonte White respectfully submits this reply in support of his Motion to Lift Confidential Designations and Unseal the Depositions of David Lam, John Kubas, David Santiago, and the City of Cleveland (ECF #212).

The Sixth Circuit warns against sealing records in civil cases, a practice that "insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption."[1] Mr. White has moved to support his claims for malicious prosecution and other civil-rights violations using evidence that would remove that insulation, unmask Defendants' improprieties, expose their incompetence, and reveal their corruption. Defendants object. Because they refuse to acknowledge or even attempt to meet the high burden they face in justifying a seal, the Court should grant Mr. White's motion.

**ISSUES PRESENTED**

1. Discovery material may only be designated confidential and required to be filed under seal with "good cause." Defendants have designated the OHLEG records confidential, claiming a state statute prohibits their release without consent of the superintendent of the Ohio Bureau of Criminal Investigation. The superintendent has consented to their

---

[1] *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983).

release. Is there any good cause for this Court to keep the records confidential, under seal, and shield a key piece of evidence in this proceeding from public scrutiny—despite the Sixth Circuit's warnings?

2. Court records and proceedings are generally open to the public and may not remain under seal, unless a court makes case-specific findings demonstrating the necessity of closure. Defendants demand that records from their prosecution of Mr. White be sealed in his civil suit for malicious prosecution, but they provide no factual basis to support prohibiting public access. Must the Court place the records on the public docket?

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background are laid out more fully in Mr. White's original motion (ECF #212). In short:

- Mr. White sought copies of records of Defendants' investigation of him through Fed. R. Civ. P. 34.
- The City refused to produce photo arrays and "person detail records," relying on Ohio Rev. Code § 2913.04(D), which requires the consent of the Superintendent of the Bureau of Criminal Investigation ("BCI") for certain disclosures of information from the Ohio Law Enforcement Gateway ("OHLEG").
- BCI does not believe that law governs a request in federal discovery, but at Mr. White's request, it explicitly gave "consent to release the photo lineups and person detail records."
- Defendants produced the records under protest and insisted that they be designated confidential subject to the Court's protective order (ECF #56).
- Mr. White's counsel objected to that designation, including in December and again in January.
- Defendants refused to lift the designation, still relying on Ohio Rev. Code § 2913.04, despite BCI's consent. They argued that BCI's consent could, theoretically, be interpreted to require that the materials be designated as confidential.
- Mr. White's counsel reached out to BCI again, this time asking explicitly whether BCI's consent required that the records be designated confidential, and explaining that the purpose in asking was to determine whether motions relying on the photo arrays needed to be filed under seal.
- BCI made clear that it "has no preference" for or against a protective order, because "there is nothing confidential in those photo arrays."
- Defendants continued to insist on a confidential designation and demanded that Mr. White file those records under seal.[2]

---

[2] Declaration of Brian D. Bardwell, ¶¶ 2–10 (attached as Ex. A).

**LEGAL STANDARD**

"While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and 'is circumscribed by a long-established legal tradition' which values public access to court proceedings."[3] "Rule 26(c) allows the sealing of court papers only 'for good cause shown' to the court that the particular documents justify court-imposed secrecy."[4] Courts of appeal "review the sealing of court records for an abuse of discretion—'although, in light of the important rights involved, the district court's decision is not accorded the deference that standard normally brings.'"[5]

**LAW & ARGUMENT**

**I.  This motion is before the Court as prescribed by the Court's protective order.**

Defendants suggest either that Mr. White was not permitted to file evidence in support of his motion for summary judgment, or perhaps that the Court is not yet empowered to act on his motion. Because their argument neither cites any provision of the protective order nor explains how that order was violated, it is unclear what procedure they expected or how this purported lapse should bear on the Court's decision. In any event, the proper procedures were, in fact, followed.

> **A.  Mr. White has followed the procedure for contesting Defendants' overuse of the confidential designation.**

The Court's protective order lays out the procedure for contesting a confidential designation:

> Any CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER designation is subject to challenge … Before filing any motions or objections to a confidentiality designation with the Court, the objecting party shall have an obligation to meet and confer in a good faith effort to resolve the objection by agreement. …

---

[3] *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996) (quoting *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177).
[4] *Id.*
[5] *Beauchamp v. Fed. Home Loan Mortg. Corp.*, 658 F. App'x 202, 207 (6th Cir. 2016).

> Applications to the Court for an order relating to any documents designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER shall be by motion under Local Rule 7.1.[6]

Here, Mr. White met and conferred with Defendants repeatedly on the question of these confidential designations, dating back at least to December 2019. When Defendants refused to lift the designation, Mr. White submitted a motion under Local Rule 7.1.

### B. Mr. White has followed the procedure for filing documents under seal.

The Court's protective order also lays out the procedure for filing documents under seal:

> To the extent that a brief, memorandum or pleading references any document marked as CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER, then the brief, memorandum or pleading shall refer the Court to the particular exhibit filed under seal without disclosing the contents of any confidential information. If, however, the confidential information must be intertwined within the text of the document, a party may timely move the Court for leave to file both a redacted version for the public docket and an unredacted version for sealing.[7]

Here, Mr. White began the process of resolving the confidential designation on the contested records months ago, but Defendants refused to budge. Because Mr. White needed to support his motion with deposition transcripts, and because information designated as confidential was "intertwined within the text" of those transcripts, he moved the Court "for leave to file both a redacted version for the public docket and an unredacted version for sealing."[8]

It is unclear how this departs from the protective order, as Defendants identify neither an alternative procedure or nor any prejudice resulting from this one. They merely offer the incorrect claim that Mr. White somehow shifted a burden to them, and the also-incorrect representation to the Court that they did not "stipulate to such motion."[9] In truth, the burden is always on the party

---

[6] ECF #56 at 7.
[7] *Id.* at 6.
[8] ECF # 203.
[9] ECF #216 at 5.

looking to litigate in secret,[10] and Defendants explicitly and repeatedly demanded that Mr. White use this procedure.[11])

Mr. White's submission of both the documents designated as confidential and the motion challenging that designation are therefore properly before the Court.

## II.  Defendants have neither acknowledged nor carried their burden in demanding secrecy for evidence of their misconduct.

"During discovery, courts often issue blanket protective orders that empower the parties themselves to designate which documents contain confidential information. ***Once the parties place a document in the record, however, 'very different considerations apply.'***"[12] "The proponent of sealing must provide compelling reasons to seal the documents and demonstrate that the sealing is narrowly tailored to those reasons—specifically, by analyzing in detail, document by document, the propriety of secrecy, providing reasons and legal citations."[13]

Although Defendants invoke *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589 (6th Cir. 2016) to support their bid to draw a cloak of secrecy around key evidence of their misconduct, that case only highlights how far short they have fallen of carrying their burden. As Defendants' lead case makes clear, their bid to keep records under seal implicates "the public's First Amendment and common law right of access to court filings."[14] While Defendants elected not to acknowledge or apply the tests *Rudd Equip. Co.* requires, Mr. White does so gladly.

---

[10] *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 534 (S.D. Ohio 2014) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)).

[11] T. Puin e-mail to B. Bardwell (May 5, 2020, attached as Ex. A-3) ("The photo arrays and any other material derived from OHLEG should be completely redacted with the originals filed under seal."); T. Puin e-mail to B. Bardwell (May 4, 2020, attached as Ex. A-2) ("[O]ur position is photo lineups and OHLEG material have to be filed under seal.").

[12] *Beauchamp*, 658 F. App'x at 207.

[13] *Id.* (cleaned up, quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305–06 (6th Cir. 2016)).

[14] *Rudd Equipment Company, Inc.*, 834 F.3d at 595.

> **A.** **The common-law right of access requires the court to place the OHLEG records on the public docket.**
>
> **1.** **The common-law right of access attaches to the OHLEG records.**

"The courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."[15] The general rule of common law is that when a filing *"is the basis for [an] adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny."*[16]

Allowing access to any record that is "the basis for [an] adjudication"[17] naturally results in broad access, as parties rarely submit anything to the Court except as the basis for some adjudication. Virtually all orders are entered to either grant or deny relief requested in some sort of motion, bringing all those motions under the umbrella of the common-law right of access. Naturally, then, courts recognize that the common-law right of access attaches to nearly any judicial proceeding or record, including pleadings,[18] complaints,[19] counterclaims,[20] motions to dismiss,[21] oppositions to

---

[15] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).

[16] *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180). *See also Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-CV-00882, 2016 WL 5231805, at *5 (M.D. Tenn. Sept. 20, 2016) ("Since [the document] is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny."); *Foster v. Am. Fire & Cas. Co.*, No. 5:13-CV-426-GFVT-REW, 2016 WL 10409304, at *1 (E.D. Ky. Feb. 4, 2016) ("If a document 'is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny.'"); *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, No. 2:04-CV-1069, 2007 WL 1796089, at *3 (S.D. Ohio June 21, 2007) ("[A] strong public right of access attaches when a document is filed or utilized in public proceedings.").

[17] *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180 (quoting *Joy v. North*, 692 F.2d 880 (2d Cir. 1982)). *See also Garden City Employees' Retirement System*, 2016 WL 5231805, at *5 ("Since [the document] is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny."); *Foster*, 2016 WL 10409304, at *1 ("If a document 'is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny.'"); *Wedgewood Ltd. Partnership I*, 2007 WL 1796089, at *3 ("[A] strong public right of access attaches when a document is filed or utilized in public proceedings.").

[18] *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 939 (6th Cir. 2019).

[19] *Shane Group, Inc.*, 825 F.3d at 306.

[20] *Karl v. Bizar*, No. CIV.A. 2:09-CV-34, 2009 WL 3644115, at *4 (S.D. Ohio Oct. 28, 2009).

[21] *Cinpres Gas Injection Ltd. v. Volkswagen Grp. of Am., Inc.*, No. 12-CV-13000, 2013 WL 11319319, at *4 (E.D. Mich. Feb. 14, 2013).

motion to dismiss,[22] replies in support motions to dismiss,[23] exhibits to motion to disqualify,[24] motions for class certification,[25] exhibits to motions for class certification,[26] responses to motions for class certification,[27] briefs,[28] affidavits,[29] exhibits to motions to compel,[30] motions for summary judgment,[31] exhibits to motions for summary judgment,[32] motions to strike expert reports and testimony,[33] oppositions to motions to seal,[34] motions in limine,[35] exhibits,[36] witness lists,[37] trial exhibits,[38] search warrants,[39] plea agreements,[40] and motions for reconsideration.[41]

    The OHLEG records in question here are part of exhibits to motions for summary judgment, one of the most routine bases for adjudication. Further, they are central to the case, which alleges that Mr. White was prosecuted because of a first set of an unduly suggestive lineups and a

---

[22] *Id.*

[23] *Id.*

[24] *Edelstein v. Stephens*, No. 1:17-CV-00305, 2018 WL 4854593, at *12 (S.D. Ohio Oct. 5, 2018).

[25] *Shane Group, Inc.*, 825 F.3d at 306.

[26] *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 640 (6th Cir. 2019).

[27] *Shane Group, Inc.*, 825 F.3d at 306.

[28] *In re National Prescription Opiate Litigation*, 927 F.3d at 939.

[29] *SKF USA Inc. v. Richardson*, No. 1:09-CV-299, 2010 WL 11519999, at *2 (E.D. Tenn. July 2, 2010).

[30] *United States ex rel. Scott v. Humana, Inc.*, No. 3:18-CV-61-GNS-CHL, 2019 WL 7403962, at *1 (W.D. Ky. Sept. 26, 2019).

[31] *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, No. 1:11CV851, 2015 WL 4366081, at *2 (S.D. Ohio July 16, 2015).

[32] *Id.*; *United States ex rel. Martin v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2014 WL 12640234, at *1 (E.D. Tenn. Feb. 21, 2014).

[33] *Shane Group, Inc.*, 825 F.3d at 306.

[34] *Karl*, 2009 WL 3644115, at *4.

[35] *Bell v. Sam's E., Inc.*, No. 1:16-CV-315-SKL, 2018 WL 8512583, at *3 (E.D. Tenn. Jan. 12, 2018).

[36] *Shane Group, Inc.*, 825 F.3d at 306.

[37] *In re: Ohio Execution Protocol Litig.*, No. 2:11-CV-1016, 2019 WL 5799575, at *13 (S.D. Ohio Nov. 7, 2019).

[38] *United States v. Beckham*, 789 F.2d 401, 415 (6th Cir. 1986) ("[T]he common-law right was curtailed" by order denying access to copies of tapes played at trial.).

[39] *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) ("[T]he common law right of access to judicial documents may in some situations permit access to search warrant proceedings.").

[40] *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016) (order sealing plea agreement "fail[ed] to satisfy the less-burdensome standard for abridging the common law right of public access to judicial records").

[41] *Cinpres Gas Injection Ltd.*, 2013 WL 11319319, at *4.

second set of falsified lineups. It should be no surprise, then, that courts reject the sealing of exhibits to summary-judgment motions such as those at question here.

In *United States ex rel. Martin v. Life Care Centers of Am., Inc.*,[42] for example, a medical provider accused of defrauding the federal government sought to seal an exhibit to its motion for partial summary judgment, arguing that secrecy was required because the document had been designated confidential subject to a stipulated protective order and because they contained patient medical information. The court found the common-law right of access attached to the records because they "cut to the heart of the [plaintiff's] allegations" and because they "may provide an important basis for the Court's decision in granting or denying partial summary judgment."

Here again, the OHLEG records are at the heart of Mr. White's allegations and will be part of the basis for the Court's adjudication of the motions for summary judgment. The Court should therefore find that common-law right of access attaches, making the OHLEG records presumptively open to the public.

### 2. Sealing the OHLEG records is not justified under the common-law test.

Admittedly, the common-law right of access is not absolute. A court may close proceedings or seal records if "in the exercise of the court's sound discretion, it determines that non-disclosure is warranted."[43] But that discretion is not limitless. The court exercising it must do so with an emphasis on "the relevant facts and circumstances of the particular case,"[44] and the court must make factual findings specific to the case explaining why disclosure should not be allowed.[45]

---

[42] No. 1:08-CV-251, 2014 WL 12640234, at *2 (E.D. Tenn. Feb. 21, 2014).

[43] *DeJournett*, 817 F.3d at 485.

[44] *Id.* (quoting *Nixon*, 435 U.S. at 599).

[45] *Id.* ("Having failed to identify the relevant facts and circumstances justifying non-disclosure in this particular case, the district court's decision still falls short under the common law framework.").

Because the analysis begins with the presumption of openness, the question is not whether there is a basis to unseal the OHLEG records, but whether there was a basis for Defendants to demand that they be filed under seal in the first place.[46] This is high bar to clear, as very little happens in a civil proceeding without the common-law right of access attaching.

Defendants have not come close to clearing that bar. Instead, they have offered only a conclusory assertion that unsealing the OHLEG records would result in "reputational harm and invasion of privacy."[47]

No reputational harm would occur because the lineups do not allege anything about the people depicted in them, other than their physical description from half a decade ago. Even if they did allege something scurrilous, "showing that information would harm a party's reputation does not suffice 'to overcome the strong common law presumption in favor of public access to court proceedings and records,'" because "[r]eputational harm is not a compelling reason that justifies nondisclosure."[48]

Nor will a bare invocation of third-party privacy interests justify secrecy. Instead, the party moving to seal court records must "present a reasoned analysis explaining why" sealing is required.[49] Defendants offer no "reasoned analysis"; they literally leave this question to the Court's imagination, proposing that it "imagine how all of the young men … would react."[50] Would they be irked? Miffed? Peeved? More likely, they would not care. Even if they did, their preference need not enter the Court's analysis. If, as Defendants suggest, the pictures and other information are "derived from

---

[46] *Beckham*, 789 F.2d at 420 ("Given the strong common law presumption in favor of public access to judicial records, the burden of rebutting or overcoming the presumption falls on the party opposing access.").
[47] ECF #213 at 7.
[48] *Edelstein*, 2018 WL 4854593, at *4.
[49] *Bell*, 2018 WL 8512583, at *2 (quoting *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009)).
[50] ECF #213 at 8.

mug shots,"[51] that information is already public record as a matter of state law, as the City learned when it illegally tried to keep similar records secret almost 30 years ago.[52] Beyond imagined hurt feelings, Defendants don't even try to assert a federal privacy right on behalf of these supposedly irritated young men, or cite any case law to support one.

Because the common-law right of access attaches and Defendants have not offered "the most compelling reasons" for keeping the OHLEG records under seal, the Court should lift the confidential designation and place them on the public docket.

>    **B.    The First Amendment right of access requires the court to place the OHLEG records on the public docket.**
>
>    **1.    The First Amendment right of access attaches to the OHLEG records.**

Even if the common-law did not require access to the OHLEG records, the public would have a right to them under the First Amendment, where the right of access is even stronger. That right attaches when access to a record is supported by the "experience and logic" test.[53] Under this test, a court asks whether there is a tradition of openness surrounding the kind of records in question,[54] and whether access to such records leads to structural benefits, such as promoting public confidence in the courts, encouraging reliable factfinding, or restraining parties' abuse of the judicial system.[55]

---

[51] *Id.*

[52] *State ex rel. Martinelli v. City of Cleveland Police Dep't*, No. 56461, 1991 WL 64349, at *11 (Ohio Ct. App. Apr. 22, 1991) ("The City should have disclosed the following records in full: Mug shot of Gary Andrew Buchwald; Reverse side of mug shot of Gary Andrew Buchwald."); *see also State ex rel. Thomas v. Sandusky Cty. Sheriff's Dep't*, No. S-93-46, 1994 WL 39097, at *1 (Ohio Ct. App. Feb. 8, 1994)("Both parties agree that respondent gave the representative copies of booking records … and this court must conclude that respondent has released copies of all public records in its custody.").

[53] *In re Search of Fair Finance*, 692 F.3d at 429 ("If a proceeding passes this 'experience and logic' test, a qualified right of access attaches to it.").

[54] *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 605 (1982) ("[A] tradition of accessibility implies the favorable judgment of experience.").

[55] *See, e.g., Press-Enter. Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 508 (1984) ("The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established

Because the First Amendment right is even broader than the common-law right, it should be no surprise that courts recognize the First Amendment right of access as attaching to most of the same records and proceedings, as well as to many others, including court dockets,[56] deportation hearings,[57] pleadings,[58] exhibits,[59] motions in limine,[60] motions for judicial disqualification,[61] calendar calls,[62] first appearances,[63] arraignments,[64] preliminary hearings,[65] competency reports,[66] competency hearings,[67] suppression hearings,[68] plea agreements,[69] plea hearings,[70] guilty pleas,[71] *voir dire* hearings,[72] and sentencing materials.[73]

Since the Supreme Court laid out the controlling test for the First Amendment right of access, federal courts are unanimous in holding that it attaches to summary-judgment motions and

---

procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.").
[56] *Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) (Gwin, J. concurring).
[57] *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 711 (6th Cir. 2002).
[58] *Tri-County Wholesale Distributors, Inc.*, 565 F. App'x at 490 (Gwin, J. concurring).
[59] *Id.*
[60] *Bell*, 2018 WL 8512583, at *3.
[61] *Application of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 347 (6th Cir. 1987).
[62] *Fuqua v. Pridgen*, No. 1:12-CV-93(WLS), 2013 WL 12212365, at *8 (M.D. Ga. Feb. 20, 2013).
[63] *Id.*
[64] *Id.*
[65] *Press-Enter. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 10 (1986) ("[T]he right of access applies to preliminary hearings.").
[66] *United States v. Hoyt*, No. 1:15-CR-1, 2016 WL 776595, at *3 (S.D. Ohio Feb. 29, 2016).
[67] *Id.*
[68] *In re Search of Fair Finance*, 692 F.3d at 429; *Jackson v. Turner*, 166 F.3d 1214 (6th Cir. 1998).
[69] *DeJournett*, 817 F.3d at 485 ("[T]he public has a constitutional right to access plea agreements.").
[70] *In re Search of Fair Finance*, 692 F.3d at 429.
[71] *Fuqua*, 2013 WL 12212365, at *8.
[72] *Press-Enterprise Co.*, 464 U.S. 501 ("The guarantees of open public proceedings in criminal trials cover proceedings for the *voir dire* examination of potential jurors.").
[73] *United States v. Nallani*, No. 11-CR-20365, 2016 WL 4138227, at *6 (E.D. Mich. Aug. 3, 2016).

exhibits.[74] These holdings are the inevitable outcome of the experience-and-logic test. Experience has established a tradition of openness surrounding exhibits to summary-judgment motions, which were presumed open to the public long before courts even began to apply the First Amendment test.[75] Logic supports this tradition of openness because the public has greater confidence that the justice system is working as it should when it can watch the Court take these motions seriously and properly weigh the competing interests. Holding the proceeding in public encourages more reliable factfinding because the factual predicate for the motion is held up to greater scrutiny, requiring greater diligence from the parties arguing either side and subjecting witnesses to the kind of public scrutiny that encourages full honesty. And allowing the public to monitor the proceedings provides the same "community therapeutic value" the public enjoys from a trial where they see justice system taking prompt action to prevent any further harm.[76]

---

[74] *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) ("[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006); *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 578 (4th Cir. 2004) ("[T]he district court's determination that the public has a First Amendment right of access to [exhibits filed in opposition to summary judgment] is correct."); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case."); *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Organisation*, No. 2:17-CV-503-HCM, 2020 WL 973751, at *14 (E.D. Va. Feb. 7, 2020); *In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2020 WL 119736, at *2 (E.D.N.C. Jan. 9, 2020); *Nielson v. Portfolio Recovery Assocs., LLC*, No. CV 2:18-1610-RMG, 2019 WL 2513722, at *2 (D.S.C. June 18, 2019); *Burns v. Nagy*, No. 16 CV 782 (VB), 2019 WL 2409737, at *2 (S.D.N.Y. June 7, 2019); *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, No. 2:10-CV-01609-JFC, 2019 WL 3778090, at *17 (W.D. Pa. May 31, 2019); *United States ex rel. United States ex rel. Thomas v. Duke Univ.*, No. 1:17-CV-276, 2018 WL 4211375, at *4 (M.D.N.C. Sept. 4, 2018); *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2018 WL 264734, at *1 (E.D.N.C. Jan. 2, 2018); *Angilau v. United States*, No. 2:16-00992-JED, 2017 WL 5905536, at *7 (D. Utah Nov. 29, 2017), *aff'd,* No. 216CV00992JEDPJC, 2018 WL 1271894 (D. Utah Mar. 9, 2018); *Garden City Employees' Retirement Sys.*, 2016 WL 5231805, at *4; *Tropical Sails Corp. v. Yext, Inc.*, No. 14 CIV. 7582, 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016); *Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2015 WL 7288641, at *2 (S.D.N.Y. Nov. 16, 2015); *Utica Mut. Ins. Co. v. INA Reinsurance Co.*, No. 612CV194DNHTWD, 2012 WL 13028279, at *4 (N.D.N.Y. June 12, 2012); *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 CIV. 655 LTS MHD, 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012); *Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, No. CA 6:08-CV-03980-GRA, 2010 WL 890067, at *2 (D.S.C. Mar. 8, 2010).

[75] *See, e.g.*, *Joy*, 692 F.2d at 893 ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.").

[76] *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980).

### 2. Defendants have not overcome the First Amendment right of access.

The First Amendment right of access is broader than the common law's, and the requirements for circumventing it are more demanding. Once the right attaches, *the party seeking to maintain the secrecy of a filing or proceeding must establish that closure satisfies a strict-scrutiny analysis*.[77] If the Court identifies some interest justifying a denial of the public's right to access records or proceedings, that interest must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."[78]

#### a. Sealing the OHLEG records does not advance any compelling governmental interest.

Defendants assert that third parties' privacy interests could be jeopardized, but that assertion is insufficient as a First Amendment matter. A party seeking to seal records to avoid prejudicing privacy rights "cannot merely assert prejudice; he must prove it."[79] Here, Defendants offer only a vague assertion of privacy rights, but they offer no detail as to the contours of the rights implicated, the consequences of any purported infringement on those rights, or why the Court should elevate them above the First Amendment *in this case*.

#### b. Sealing the OHLEG records is not narrowly tailored.

Even if "privacy" were a compelling interest, sealing would not be a narrowly tailored means to advance that interest, as it is both under– and over-inclusive. It is under-inclusive because it prohibits Mr. White from sharing the contents of the OHLEG records while Defendants and nonparty police officers—who knew their contents of those records independent of any discovery subject to the protective order—are under no obligation to maintain secrecy now that BCI has consented to releasing them into the public domain. It is over-inclusive because the information it

---

[77] *In re Search of Fair Finance*, 692 F.3d at 429 ("Under a qualified right, sealing is appropriate if it is 'essential to preserve higher values' and is 'narrowly tailored' to serve such ends.").
[78] *DeJournett*, 817 F.3d at 484 (quoting *Press-Enterprise Co.*, 464 U.S. at 510).
[79] *Jackson*, 166 F.3d 1214.

seals—the third-parties' faces, height, weight, eye color, and hair color—is both a matter of public record through the booking records from which they were derived,[80] and, more practically, is disclosed to the public every time those people step out of their house.

Because Defendants have neither offered a compelling governmental interest to support sealing nor established that complete secrecy is a narrowly tailored means of advancing that interest, they have failed to overcome the First Amendment right of access.

## CONCLUSION

As Defendants acknowledged in relying on *Rudd Equip. Co., Inc.*, it is they who carry the burden of justifying their own confidential designation, and it is they who carry the burden of justifying the sealing of confidential records submitted to the Court. Although they must justify that request under both the common-law standard and the First Amendment standard, they did not even attempt to address either standard, leaving the Court with no factual basis with which to justify shielding the OHLEG records from public view.

The photo array will reveal to the public Defendants' incompetence, impropriety, and corruption in violating Mr. White's constitutional rights. Being exposed is no basis for sealing. The Court should grant Mr. White's motion to lift the confidential designation that Defendants improperly imposed and move the affected depositions and exhibits to the public docket.

---

[80] *State ex rel. Thomas*, 1994 WL 39097, at *1; *State ex rel. Martinelli*, 1991 WL 64349, at *11.

May 24, 2020                                           Respectfully submitted,

*/s/ Brian D. Bardwell*
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Counsel for Plaintiff Dalonte White*