IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DALONTE WHITE,** | **CASE NO. 1:17-CV-01165** |
| Plaintiff, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **CITY OF CLEVELAND, et al.,** | |
| Defendants. | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon Plaintiff Dalonte White's ("White") Motion to Lift Confidential Designations and Unseal the Depositions of David Lam, John Kubas, David Santiago, and the City of Cleveland ("Motion"). (Doc. No. 212.) Defendants Robert Beveridge, John Kubas, David Lam, David Santiago, Michael Schade, Thomas Shoulders, and the City of Cleveland (collectively, "Defendants") filed a brief in opposition on May 22, 2020, to which White responded on May 24, 2020. (Doc. Nos. 213, 214.) For the following reasons, White's Motion (Doc. No. 212) is GRANTED IN PART and DENIED IN PART.

**I. Background**

This case arises from White's arrest as a suspect in a home invasion that occurred in April 2015 at the home of Colleen Allums ("Allums"). (Doc. No. 181 at ¶¶ 9-10, 25.) In his Second Amended Complaint, White sets forth a variety of allegations of improper conduct relating to White's arrest, including allegations related to the administration of two photo arrays. White alleges that the first set of photo arrays, in which three witnesses identified him as one of the perpetrators of the home invasion, was highly suggestive for a number of reasons. (*Id.* at ¶¶ 20-22.) In addition, White alleges that two or three weeks after White's arrest, officers administered a second set of photo arrays in

which two of the same witnesses identified a different individual as the perpetrator of the crime for which White had been arrested, and the officers improperly instructed the witnesses not to mark their identifications. (*Id.* at ¶¶ 27-29.)

These photo lineups, as well as a Computerized Criminal History ("CCH") report for Allums, the victim of the home invasion, were the subject of a discovery dispute earlier in this case. (*See* Doc. No. 58.) These documents were all derived from the Ohio Law Enforcement Gateway ("OHLEG"), and Defendants objected to their production based on Ohio Revised Code ("O.R.C.") § 2913.04(D), which criminalizes the disclosure of information from OHLEG without the consent of the superintendent of the Bureau of Criminal Investigation ("BCI"). (*Id.* at 9.) To resolve the dispute, White sought consent from BCI's superintendent for the release of the photo lineups and accompanying photo lineup keys or "person detail records," which include the photographs, names, birth dates, and physical descriptions of the individuals in the lineups. (*See* Doc. No. 213-2 at 2-3.) Specifically, White's counsel emailed BCI's chief counsel, in relevant part, the following:

> In the case I'm litigating against the City of Cleveland, we've made document requests to the City for various photo lineups and "person detail" records from OHLEG. The City's attorney, Tim Puin (copied on this e-mail), has indicated that he cannot release those records, because it would be "without the consent of, or beyond the scope of the express or implied consent of, the superintendent of the bureau of criminal identification and investigation" under R.C. 2913.04(D).
>
> . . .
>
> From conversations with Mr. Puin, it sounds like we'd need an explicit statement that the superintendent consents to the production of OHLEG records in compliance with federal discovery obligations.

(*Id.* at 3.)

On September 23, 2019, the superintendent gave his consent to the documents' release. (Doc. No. 212-1 ("After discussing this matter with the Superintendent of BCI, Joseph A. Morbitzer, on

2

behalf of the Superintendent, please consider this email his consent to release the photo lineups and person detail records.").) Subsequently, Defendants produced the OHLEG records, but insisted that they be treated as confidential pursuant to the Stipulated Protective Order ("Protective Order"). (Doc. No. 212-2 at 1.)

After the production, the parties continued to disagree over whether the superintendent's consent permitted the documents to be filed on the public record. As a result, Defendants' counsel reached out to BCI's chief counsel, seeking clarification of the scope of the consent that had been provided, specifically asking, "Can the photo lineup keys, photo lineups, and other OHLEG search results be put on the public record?" (Doc. No. 212-3 at 5.) In response, BCI's chief counsel wrote, in relevant part, the following:

> *I am unclear why these discovery materials are any different than any other discovery materials. If other materials are subject to the protective order, then why would these photo arrays also not be protected? That being said, I have reviewed the photo arrays that were attached to [Mr. Bardwell's] email dated January 8, 2020. There is nothing contained in those photo arrays which would be considered confidential or otherwise not subject to disclosure.* **Since the Superintendent has previously granted his consent to disseminate these photo arrays, and there is nothing confidential in those photo arrays, it makes no difference to the Bureau of Criminal Investigation (BCI) whether they are subject to a protective order or not.** *BCI has no preference for or against the photo arrays protection by the court's prior order.*
>
> . . .
>
> **If you are worried about whether the Attorney General of Ohio (AGO) or BCI is going to prosecute an individual for disseminating these photo arrays in violation of R.C. 2913.04, know that the Superintendent of BCI has previously consented to their dissemination.**

(*Id.* at 4 (italics in original; bolding added for emphasis).)

Still, Defendants continued to object to the filing of the photo arrays or any other OHLEG material on the public docket. (*See* Doc. No. 212-6.) As a result, in support of his Motion for Partial

3

Summary Judgment, White filed several depositions that included the contested OHLEG materials as exhibits under seal.  (*See* Doc. Nos. 207-10.)  In his Motion, White now seeks to lift the confidential designations on the OHLEG materials—specifically, the photo lineup documents[1] and the CCH report for Allums[2]—and to unseal the depositions of David Lam, John Kubas, David Santiago, and the City of Cleveland.  (Doc. No. 212.)  Defendants have opposed his request, arguing that BCI's superintendent did not consent to filing the documents publicly and that third-party privacy interests require the continued sealing of the relevant documents.  (Doc. No. 213.)[3]  Having been fully briefed, White's Motion is ripe for consideration.

## II. Analysis

"[T]he public enjoys a presumptive right of access to judicial records under both the common law and the First Amendment."  *Waste Mgmt., Inc. v. ChemLawn Corp.*, No. C-2-87-254, 1987 U.S. Dist. LEXIS 12935, at *6 (S.D. Ohio Nov. 23, 1987).  "Although the scope of the First Amendment and common law rights differ somewhat, when a right of access arises under either, the burden rests on the party opposing disclosure to show compelling reasons that justify confidentiality."  *In re Morning Song Bird Food Litig.*, 831 F.3d 765, 772 (6th Cir. 2016).  Importantly, "[d]ocuments supporting a dispositive motion, such as one for summary judgment, are of paramount interest to the public."  *McCallum v. Corizon, Inc.*, No. 1:15-cv-700, 2016 U.S. Dist. LEXIS 192205, at *3 (W.D. Mich. Sept. 21, 2016).  As such, "[t]hey are 'judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.'"  *Id.* (quoting *Lugosch v.*

---

[1] (Doc. Nos. 207-1, 207-12, 207-13, 207-21, 207-22, 207-23, 208-3, 208-4, 209-1, 209-2, 210-11, 210-12, 210-13.)
[2] (Doc. No. 207-20.)
[3] Defendants also criticize White for not following the proper procedure to file the OHLEG documents, but the Court is unclear as to what procedure was allegedly violated and finds their argument unpersuasive.

4

*Pyramid Co. of Onondoga*, 435 F.3d 110, 121 (2d Cir. 2006)). Because the documents at issue in this case were filed in support of White' Motion for Partial Summary Judgment, Defendants have the burden to justify their confidentiality under both the common law and the First Amendment.

With regard to the common law, "[d]isclosure of judicial records . . . is 'left to the sound discretion of the trial court[.]'" *In re Search Warrant*, No. M-3-94-80, 1994 U.S. Dist. LEXIS 18360, at *20 (S.D. Ohio June 7, 1994) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)). However, the Sixth Circuit has indicated that "'[o]nly the most compelling reasons can justify the total foreclosure of public and professional scrutiny' to documents forming the basis of the adjudication." *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, No. 2:04-CV-1069, 2007 WL 1796089, at *3 (S.D. Ohio June 21, 2007) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). For example, a court may restrict access where "necessary to preserve a litigant's right to a fair trial and where necessary to protect 'certain privacy rights of participants or third parties, trade secrets and national security.'" *Id.* (quoting *Brown & Williamson Tobacco*, 710 F.2d at 1179). On the other hand, naked conclusory statements of harm are not sufficient to overcome the strong common law presumption in favor of public access. *See id.*

Similarly, "the First Amendment presumption in favor of access can only be overcome 'by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *United States v. Nallani*, No. 11-CR-20365, 2016 WL 4138227, at *2 (E.D. Mich. Aug. 3, 2016) (quoting *Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501, 510 (1984)); *Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) (Gwin, J., concurring and dissenting in part) ("The First Amendment access right extends to court dockets, records, pleadings, and exhibits, and establishes a presumption of public access that can only be

overcome by specific, on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm."). "One such interest is the privacy interest of the movant and third parties." *Nallani*, 2016 WL 4138227, at *2.

In addition, "[s]tatutes and privileges might also create an interest capable of rebutting the First Amendment and common law presumptions in favor of public access." *Id.* at *3*; see also Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 308 (6th Cir. 2016) ("[I]nformation required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access.") (citation and internal quotations omitted).

### a. Photo Lineups

With regard to the photo lineups, Defendants contend that the scope of the consent provided by BCI's superintendent did not include a release to file the documents publicly, and, therefore, public disclosure is prohibited by O.R.C. § 2913.04(D).  (Doc. No. 213 at 5-7.)  Defendants also argue that the harm to the privacy interests and reputations of the third parties included in the lineups, some of whom were minors at the time, requires the redaction of all their information except for their initials and birth years.  (*Id.* at 7-8.)  Conversely, White contends that BCI's superintendent consented to the documents' release such that disclosure is no longer prohibited, and that Defendants have failed to adequately demonstrate the specific harm to third parties required to overcome the presumption of public access.  (Doc. Nos. 212, 214.)  The Court agrees with both parties, in part, as described below.

First, Defendants rely on O.R.C. § 2913.04(D), which provides:

> No person shall knowingly gain access to, attempt to gain access to, cause access to be granted to, or disseminate information gained from access to the Ohio law enforcement gateway established and operated pursuant to division (C)(1) of section 109.57 of the Revised Code without the consent of, or beyond the scope of the express or implied consent of, the superintendent of the bureau of criminal identification and investigation.

6

O.R.C. § 2913.04(D). Defendants argue that BCI's superintendent consented to the production of the photo lineups only in the context of discovery and that publishing the documents on the record would be beyond the scope of any express or implied consent, which would violate O.R.C. § 2913.04(D) and constitute a fifth-degree felony under O.R.C. § 2913.04(I). (Doc. No. 213 at 6.) However, the superintendent's initial consent to release the documents did not limit the scope of the release or otherwise require continued protection of the OHLEG documents under the Protective Order. (*See* Doc. No. 212-1.) Moreover, when Defendants sought to clarify the scope of the superintendent's consent, BCI's chief counsel indicated that *"[s]ince the Superintendent has previously granted his consent to disseminate these photo arrays, and there is nothing confidential in those photo arrays, it makes no difference to the Bureau of Criminal Investigation (BCI) whether they are subject to a protective order or not"* and that "[i]f you are worried about whether the Attorney General of Ohio (AGO) or BCI is going to prosecute an individual for disseminating these photo arrays in violation of R.C. 2913.04, know that the Superintendent of BCI has previously consented to their dissemination." (Doc. No. 212-3.) Thus, it is clear that BCI's superintendent has consented to the general disclosure of the photo lineups, such that the filing of the documents on the public docket would not violate O.R.C. § 2913.04(D). As a result, O.R.C. § 2913.04(D) does not justify the nondisclosure of these documents.

Next, Defendants contend that the privacy interests of the other individuals in the lineups require additional redactions. (Doc. No. 213 at 7-8.) In determining the appropriateness of sealing court records, "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *Shane Grp.*, 825 F.3d at 308 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). Specifically, "the Court must consider 'the sensitivity of the information and

7

the subject,' 'the reliability of the information,' and whether 'there is a fair opportunity for the subject to respond to any accusations contained therein.'" *Nallani*, 2016 WL 4138227, at *3 (quoting *Amodeo*, 71 F.3d at 1051).

In this case, the photo lineups provide the name, head shot, date of birth, height, weight, eye color, and hair color of the individuals in the lineups. (*E.g.*, Doc. No. 210-11.) While some of the individuals were minors at the time the lineups were issued, all of them are now over the age of eighteen. (*Id.*) The Court finds that the actual information regarding the third parties in the photo lineups is not the type of sensitive information, such as private medical and financial information, that justifies limiting public access to the documents based on the third parties' privacy interests. *See, e.g.*, *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 229-30 (5th Cir. 2020) (citing cases where nondisclosure was warranted, such as when documents contained detailed descriptions of the minor's behavioral problems and medical and emotional conditions, pictures of the minor's injuries that could be humiliating or stigmatizing, and the names of other children not parties to the lawsuit).

However, Defendants also argue that the third parties pictured in the photo lineups have a strong interest in maintaining the lineups' nondisclosure because of the implications that arise from being included in a photo lineup, which is generally perceived to be derived from mug shots or other pictures of criminals or suspects. (Doc. No. 213 at 8.) The Court agrees that this creates a significant privacy interest that warrants protecting the identities of the third parties included in the photo lineups. The Sixth Circuit has recognized that "[m]ore than just 'vivid symbol[s] of criminal *accusation*,' booking photos convey *guilt* to the viewer." *Detroit Free Press Inc. v. United States Dep't of Justice*, 829 F.3d 478, 482 (6th Cir. 2016) (citation omitted) (holding individuals have a non-trivial privacy interest in their booking photos in the context of a FOIA request); *see also Am. Civil Liberties Union*

*v. United States Dep't of Justice*, 750 F.3d 927, 933 (D.C. Cir. 2014) ("[M]any may well assume that individuals charged with a crime likely committed that crime regardless of how the case was ultimately resolved."). Thus, many people will assume that each individual pictured in the lineups is guilty either of the crime being investigated or another crime for which they previously had their booking photo taken. As Defendants point out, the general public is not commonly aware that photo lineups also draw on the Ohio driver's license database, and individuals may be pictured that have never been charged with a crime. (*See* Doc. No. 213-3 at 51:2-9.) Consequently, releasing the photo lineups to the public would result in significant harm to the third parties pictured, and there is a compelling need to protect their identities that overcomes the presumption of access under both the common law and the First Amendment.

Defendants' proposed redactions, however, are not narrowly tailored, as required. There is no need to redact information regarding the third parties' height, weight, hair color, or eye color, as none of that information is particularly sensitive, as noted above, and will not reveal the individuals' identities. Instead, in addition to the redactions required under Federal Rule of Civil Procedure 5.2, the third parties' pictures should be redacted, and the third parties' names should be redacted so that only their initials may be viewed.

### b. CCH Report

With respect to the other document at issue, the CCH report, Defendants again assert that sealing is appropriate because of the third-party privacy interests at stake and because BCI's superintendent has not consented to the document's release. (Doc. No. 213 at 6, 8.) White has not made any arguments specific to the CCH report. The Court finds that continued sealing of the CCH report is appropriate.

9

First, multiple courts have found that individuals have a privacy interest in their criminal history, which may warrant protection from disclosure. *Holiday Hosp. Franchising, LLC v. J&W Lodging, LLC*, No. 1:17-CV-01663-ELR, 2019 WL 3334614, at *10 (N.D. Ga. Mar. 7, 2019) (granting motion to seal portions of witness's deposition transcript related to his criminal history because the information "is highly personal and has no relevance to the case"); *Lawman v. City & Cty. of San Francisco*, No. 15-cv-01202-DMR, 2016 U.S. Dist. LEXIS 14507, at *6 (N.D. Cal. Feb. 5, 2016) (granting request to refer to two witnesses by their initials because "witnesses have a privacy interest in their criminal history"). Here, the CCH report contains the criminal background search results for Allums, the victim of the home invasion for which White alleges he was wrongfully arrested. (Doc. No. 207-20.) As an innocent third party, Allums has a strong privacy interest in her criminal history. In addition, there is no indication from either party that Allum's criminal history is relevant to any issues in this case. Thus, sealing is essential to protect a compelling interest and can be narrowly tailored to the two pages constituting the CCH report.

Further, O.R.C. § 2913.04(D) prohibits the disclosure of the CCH report, which is derived from OHLEG, as there is no evidence that BCI's superintendent ever consented to its release. Rather, it appears the superintendent was only asked to provide his consent to release the photo lineups. (*See* Doc. No. 212-1; Doc. No. 212-3 at 1; Doc. No. 213-2 at 2-3.) Thus, the statutory requirement that the CCH report remain secret further supports its nondisclosure.

### III. Conclusion

For the reasons set forth above, White's Motion (Doc. No. 212) is GRANTED IN PART and DENIED IN PART. The photo lineups shall, in addition to redactions necessary to comply with Federal Rule of Civil Procedure 5.2, be redacted to prevent the disclosure of third parties' pictures

and names, except for their initials. The CCH report shall remain under seal. White is directed to file public versions of the depositions of David Lam, John Kubas, David Santiago, and the City of Cleveland with redactions consistent with this opinion by June 5, 2020.

**IT IS SO ORDERED.**

                                                             *s/Pamela A. Barker*
                                                          PAMELA A. BARKER
Date: May 29, 2020                                     U. S. DISTRICT JUDGE