IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DALONTE WHITE** <br> *Plaintiff,* <br><br> v. <br><br> **CITY OF CLEVELAND,** *et al.* <br> *Defendants.* | Case No.: 1:17-CV-1165 <br><br> Judge Pamela A. Barker <br><br> Magistrate Judge Jonathan D. Greenberg |
| **PLAINTIFF DALONTE WHITE'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT (AGAINST DEFENDANTS KUBAS AND SANTIAGO IN THEIR OFFICIAL CAPACITIES)** | |

Plaintiff Dalonte White respectfully submits this reply in support of his motion for partial summary judgment against Defendants Kubas and Santiago in their official capacities (ECF #205).

July 15, 2020

Respectfully submitted,

*/s/ Brian D. Bardwell*
Subodh Chandra (0069233)
Donald P. Screen (0044070)
Patrick Haney (0092333)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Don.Screen@ChandraLaw.com
Patrick.Haney@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Counsel for Plaintiff Dalonte White*

### TABLE OF CONTENTS

Table of Authorities ............................................................................................................iv

Introduction ......................................................................................................................1

Issues Presented ................................................................................................................1

Law & Argument ..............................................................................................................2

    I.  Because Mr. White is seeking equitable and declaratory relief on statutory claims, the City is not entitled to immunity on Mr. White's official-capacity claims. ...................2

        A.  Political-subdivision immunity does not apply to claims arising from statutory law...................................................................................................................2

        B.  Political-subdivision immunity does not apply to claims for anything other than monetary damages. ...................................................................................3

    II.  There is no genuine dispute as to the facts underlying either of Mr. White's claims...4

        A.  Defendants offered no evidence creating a genuine dispute that Kubas and Santiago violated Ohio's intimidation statute. ..........................................4

        B.  Defendants offered neither evidence creating a genuine dispute that Kubas and Santiago violated Ohio's intimidation statute nor legal argument relieving it from liability. ...............................................................................................6

    III. Because Defendants' arguments misread the rules of evidence, civil procedure, and juvenile procedure, there is no basis for excluding the victims' testimony that Kubas and Santiago tampered with their identifications. ..................................................6

        A.  Rule 802 does not limit the Court's ability to review transcripts of sworn testimony at the summary-judgment stage. ...............................................6

        B.  Kubas and Santiago's instructions to falsify records are not hearsay.....................8

        C.  Police officers cannot use the Ohio Rules of Juvenile Procedure to hide their misconduct. ...........................................................................................8

    IV. Because the case is already fully briefed, the Court should not make Mr. White's recovery contingent on any possible pronouncement in *Buddenberg v. Weisdack*. ...11

        A.  There is no legal basis for staying consideration of Mr. White's claims against Kubas and Santiago.............................................................................11

            1.  Given the new consensus interpretation of Ohio Rev. Code § 2307.60, *Buddenberg* is unlikely to dispose of the claims in question..........................................11

            2.  Because all parties to this case have briefed the question in *Buddenberg*, judicial economy does not warrant a stay. ...................................................13

            3.  There are no extraordinary circumstances suggesting a stay would promote the public welfare. ....................................................................................14

            4.  Granting the stay would impose a greater hardship than denying it............................14

        B.  Regardless of whether it stays consideration of Mr. White's claims, the Court should find that his allegations as to Defendants' misconduct are not genuinely in dispute and are established for this case. ..........................................15

    V.  The Court should not dismiss White's Claims 9 and 10 against Defendants Kubas and Santiago in their official capacity. ...................................................................18

**Conclusion** ............................................................................................................ **18**

**Loc. R. 7.1 Certification** ....................................................................................... **19**

TABLE OF AUTHORITIES

## Cases

*Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009) ..................................................................7

*Anadarko E&P Co. LP v. Northwood Energy Corp.*, No. 2:12-CV-00938, 2015 WL 13748033 (S.D. Ohio July 24, 2015) ..............................................................................................................13

*Baker v. Cty. of Macomb*, No. 13-13279, 2015 WL 5679838 (E.D. Mich. Sept. 28, 2015) ......................18

*Benton v. City of Cleveland*, No. 1:18-CV-2159, 2020 WL 1233943 (N.D. Ohio Mar. 13, 2020) ..............9

*Big Springs Golf Club v. Donofrio*, 74 Ohio App. 3d 1 (1991) ...........................................................2

*Bonds v. Univ. of Cincinnati Med. Ctr.*, No. 1:15-CV-641, 2017 WL 3671239 (S.D. Ohio Aug. 24, 2017) .........................................5

*Brkic v. Cleveland*, 124 Ohio App. 3d 271 (1997) ............................................................................2

*Buddenberg v. Weisdack*, No. 1:18-CV-00522, 2018 WL 3159052 (N.D. Ohio June 28, 2018) ..............12

*C.B. Fleet Co. v. Colony Specialty Ins. Co.*, No. 1:11-CV-0375, 2013 WL 1908098 (N.D. Ohio May 7, 2013) ..........................................13

*Capital City Cmty. Urban Redevelopment Corp. v. City of Columbus*, No. 08AP-769, 2009 WL 5062063 (Ohio Ct. App. Dec. 24, 2009) ........................................3

*Castleberry v. Cuyahoga Cty.*, No. 1:20 CV 218, 2020 WL 3261097 (N.D. Ohio June 16, 2020) .............18

*Cincinnati v. Harrison*, No. C-130195, 2014 WL 2957946 (Ohio Ct. App. June 30, 2014) ................ 3, 14

*Duncan v. Cuyahoga Cmty. Coll.*, 970 N.E.2d 1092 (Ohio Ct. App. 2012) .........................................3

*Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322 (6th Cir. 2013) ..........................................18

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) .............................14

*Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507 (4th Cir. 2002) .......................................................14

*Hatmaker v. PJ Ohio, LLC*, No. 3:17-CV-146, 2019 WL 1367663 (S.D. Ohio Mar. 26, 2019).............12

*Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412 (2016) .............................................................7

*Hickman v. First Am. Title Ins. Co.*, No. 1:07 CV 1543, 2010 WL 11565405 (N.D. Ohio Aug. 4, 2010).......................................11, 12, 13

*In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3737023 (N.D. Ohio June 13, 2019) ....................................13

*In re Nat'l Prescription Opiate Litig.*, No. 1:18-OP-45090, 2018 WL 4895856 (N.D. Ohio Oct. 5, 2018) ....................................12

*In re Nat'l Prescription Opiate Litig.*, No. 18-OP-45332, 2020 WL 1986589 (N.D. Ohio Apr. 27, 2020) ....................................13

*Jones v. Clinton*, 72 F.3d 1354 (8th Cir. 1996) .............................................................................15

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 225 F. Supp. 3d 670 (S.D. Ohio 2016)....................12

*Kirk Bros. Co. v. Trucraft Constr., LLC*, 97 N.E.3d 27 (Ohio Ct. App. 2017) .........................................2

*Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405 (7th Cir. 2019)......................................... 15, 16

*LaBorde v. Gahanna*, 35 N.E.3d 55 (Ohio Ct. App. 2015).................................................................3

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) .......................................................................... 11, 14

*Mentor Exempted Vill. Sch. Dist. Bd. of Edn. v. Mohat*, 128 Ohio St. 3d 395 (2011)..................................13

*Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390 (6th Cir. 1987)................14

*Portage Cty. Bd. of Commrs. v. Akron*, 156 Ohio App. 3d 657 (2004)...............................................3

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ...................................................................14

*R.W. Beckett Corp. v. Allianz Glob. Corp. & Spec. SE*,
 No. 1:19-CV-428, 2020 WL 1975788 (N.D. Ohio Apr. 24, 2020)........................................13

*Ruffin v. Cuyahoga Cty.*, No. 1:16 CV 640, 2016 WL 4543144 (N.D. Ohio Aug. 31, 2016) ...................18

*State ex rel. DeWine v. GMAC Mortg., L.L.C.*, 146 Ohio St. 3d 393 (2016)...............................13

*State ex rel. Fatur v. Eastlake*, No. 2009-L-037, 2010 WL 1254369 (Ohio Ct. App. Mar. 31, 2010)........2

*State ex rel. Plain Dealer Publ'g Co. v. Floyd*, 111 Ohio St. 3d 56 (2006)........................................9

*State ex rel. Scripps Howard Broad. Co. v. Cuyahoga Cty. Court of Common Pleas, Juv. Div.*,
 73 Ohio St. 3d 19 (1995) ...................................................................................................9

*Stevenson v. Willis*, 579 F. Supp. 2d 913 (N.D. Ohio 2008) ..........................................................18

*Studer v. Seneca Cty. Humane Soc'y*, No. 13-99-59, 2000 WL 566738 (Ohio Ct. App. May 4, 2000).... 2, 3

*Thornton v. Cleveland*, 176 Ohio App. 3d 122 (2008) ...................................................................3

*Walden v. State*, 47 Ohio St. 3d 47 (1989) ...................................................................................6

*Wells Fargo Bank, N.A. v. Allstate Ins. Co.*, 146 Ohio St. 3d 232 (2016) ...................................13

## Statutes

42 U.S.C. § 1983 ..............................................................................................................2

Ohio Rev. Code § 9.89 ......................................................................................................3

Ohio Rev. Code § 2723.01 .................................................................................................2

Ohio Rev. Code § 2744.02 .................................................................................................3

Ohio Rev. Code § 2921.03 .........................................................................................*passim*

Ohio Rev. Code § 2921.45 ...........................................................................................3, 4, 16

Ohio Rev. Code § 2923.31 .................................................................................................2

Ohio Rev. Code Chapter 2744.................................................................................... 1, 2, 3

Ohio Rev. Code Chapter 4165............................................................................................3

## Rules

Fed. R. Civ. P. 56 .............................................................................................................7

Fed. R. Evid. 802 .............................................................................................................6

Fed. R. Evid. 804 .............................................................................................................7

Ohio Juv. R. 1 ..............................................................................................................9, 10

Ohio Juv. R. 37............................................................................................................1, 9, 10

### INTRODUCTION

Two witnesses, under oath, accused Defendants John Kubas and David Santiago of instructing them to falsify their identifications of the shooter in a robbery. Both defendants admit administering those identifications but claim amnesia about what happened that day. In opposing summary judgment, they offer no admissible evidence disputing the witnesses' sworn testimony, insisting only that the evidence so far available is insufficient to create liability. Because their arguments rely on unsupported, atextual interpretations of the statutes under which Mr. White seeks relief, the Court should enter summary judgment in Mr. White's favor on the question of Defendants' liability, saving for trial and post-trial the question of what remedies are appropriate.

### ISSUES PRESENTED

1. Ohio Rev. Code Chapter 2744 immunizes political subdivisions from monetary damages in cases arising from common-law torts. Mr. White seeks equitable and declaratory relief based on violations of his statutory rights. Should the Court expand the City's protections under Chapter 2744 and grant it blanket immunity beyond what the statute allows?

2. Ohio Juv. R. 37 purports to prohibit the use of juvenile-court transcripts without consent of the court. Mr. White has obtained consent from the court to use the transcript of his bindover hearing, in which witnesses testified that Defendants tampered with exculpatory evidence in his case. Can the police rely on Rule 37 to hide testimony about their misconduct, even when the court authorizes its use?

3. A party seeking to delay judgment pending the outcome of another case must satisfy four factors supporting the stay. Defendants ask the Court to stay judgment on his motion, but they offer no suggestion that any of the four factors are satisfied. Should the Court grant the stay in the absence of any allegation that it would be justified under controlling law?

4. A court that denies a motion for summary judgment may enter an order treating facts that are not genuinely in dispute as established in the case. Mr. White provided unrebutted evidence that Defendants administered a rigged photo array in his case and hid evidence of their tampering. If the court does not grant summary judgment, should it nonetheless order that the undisputed facts are established for this case?

LAW & ARGUMENT

I.      **Because Mr. White is seeking equitable and declaratory relief on statutory claims, the City is not entitled to immunity on Mr. White's official-capacity claims.**

      A.      **Political-subdivision immunity does not apply to claims arising from statutory law.**

Political-subdivision immunity under applies only to "tort" actions, and not to statutory actions. "By its very language and title," it does not apply to anything other than tort claims for monetary damages.[1]

Ohio courts consistently reject attempts to apply it to actions outside of common-law torts. In *Kirk Bros. Co. v. Trucraft Constr., LLC*, 97 N.E.3d 27 (Ohio Ct. App. 2017), for instance, the plaintiff sought to enforce a mechanic's lien against a municipal client. The city sought to invoke Chapter 2744, but the trial court denied its motion to dismiss. The appeals court affirmed, because a mechanic's lien arises under R.C. 1311.25, not tort law: "Trucraft's claim was premised on statutory rights and therefore did not sound in tort. Consequently, the court erred to the extent it concluded that Trucraft's claims were based in tort and subject to the tort immunity statute."[2] Courts across Ohio hold the same on all manner of non-tort actions, including actions to recover illegally collected taxes under Ohio Rev. Code § 2723.01;[3] actions to vindicate civil rights under 42 U.S.C. § 1983;[4] actions for corrupt activity under Ohio Rev. Code § 2923.31;[5] actions for deceptive trade practices

---

[1] *Big Springs Golf Club v. Donofrio*, 74 Ohio App. 3d 1, 2 (1991).

[2] *Kirk Bros. Co. v. Trucraft Constr., LLC*, 97 N.E.3d 27, 31 (Ohio Ct. App. 2017).

[3] *Big Springs Golf Club v. Donofrio*, 74 Ohio App. 3d 1, 2 (1991) ("R.C. 2744.02. As such, the Act does not apply to injunctive relief, as sought by Big Springs. As the trial court clearly relied on an inapplicable chapter of the Revised Code in granting summary judgment.").

[4] *Studer v. Seneca Cty. Humane Soc'y*, No. 13-99-59, 2000 WL 566738, at *4 (Ohio Ct. App. May 4, 2000) ("Clearly, the due process claim is constitutional in nature and does not sound in tort. R.C. Chapter 2744 … applies only to tort actions for damages."); *Brkic v. Cleveland*, 124 Ohio App. 3d 271, 282 (1997) ("[A]ppellant's causes of action were constitutional in nature and did not sound in tort. … Political subdivision tort immunity is not available to Cleveland as a defense to appellant's claims.").

[5] *State ex rel. Fatur v. Eastlake*, No. 2009-L-037, 2010 WL 1254369, at *6 (Ohio Ct. App. Mar. 31, 2010) ("Appellants are not afforded immunity under R.C. Chapter 2744 with respect to these claims as alleged herein. A claim under R.C. 2923.31, et. seq., like a RICO claim, is not a tort action.").

under Ohio Rev. Code Chapter 4165;[6] actions for statutory strict liability under Ohio Rev. Code § 9.89;[7] and actions for breach of contract.[8]

Because both of Mr. White's claims are statutory and do not sound in tort, the City is not entitled to immunity.

## B.  Political-subdivision immunity does not apply to claims for anything other than monetary damages.

Although Ohio Rev. Code § 2744.02 immunizes political subdivisions from *monetary* damages in tort claims, that immunity does not extend to claims for injunctive relief, declaratory relief, or mandamus.[9] The City argues it is immune to monetary damages on the official-capacity claims. Even if that is true, the analysis does not end there, as White's complaint seeks more than just monetary damages, asking also that the Court "declare that Defendants' acts and conduct violate… Ohio Revised Code §§ 2307.60(A)(1), 2921.03, and 2921.45" and that the Court "award all other relief in law or equity, including injunctive relief, to which Dalonte is entitled and that the Court deems equitable, just, or proper."[10]

---

[6] *Thornton v. Cleveland*, 176 Ohio App. 3d 122, 126 (2008) ("Neither Thornton's claim of a RICO violation nor his claim of a violation of Ohio's Deceptive Trade Practices Act is a tort claim, and thus the city's immunity from tort liability does not resolve whether the trial court properly dismissed these claims.").

[7] *LaBorde v. Gahanna*, 35 N.E.3d 55, 60 (Ohio Ct. App. 2015) ("[P]olitical subdivision tort immunity is not available to the City as a defense to the LaBordes' claims that do not sound in tort.").

[8] *Duncan v. Cuyahoga Cmty. Coll.*, 970 N.E.2d 1092, 1097–98 (Ohio Ct. App. 2012) ("Appellants further argue in their third assignment of error that the trial court should have granted their motion for judgment on the pleadings with respect to Duncan's claim of breach of contract. However, R.C. 2744.02(C) does not apply to that claim.").

[9] *Cincinnati v. Harrison*, No. C-130195, 2014 WL 2957946 (Ohio Ct. App. June 30, 2014) ("[S]overeign immunity under O.R.C. Chapter 2744 is not a defense to claims seeking injunctive relief."); *Capital City Cmty. Urban Redevelopment Corp. v. City of Columbus*, No. 08AP-769, 2009 WL 5062063 (Ohio Ct. App. Dec. 24, 2009) ("R.C. 2744 does not apply in actions for equitable relief."); *Portage Cty. Bd. of Commrs. v. Akron*, 156 Ohio App. 3d 657 (2004), *aff'd in part, rev'd in part*, 109 Ohio St. 3d 106 (2006) ("[B]ecause Portage County's claims were for injunctive and declaratory relief, rather than tort damages, the trial court properly concluded that appellant was not statutorily immune."); *Studer v. Seneca Cty. Humane Soc'y*, No. 13-99-59, 2000 WL 566738 (Ohio Ct. App. May 4, 2000) (holding that the defendants were not immune to the plaintiff's due process claim because it was "constitutional in nature and does not sound in tort").

[10] Pl.'s Second Am. Compl., 20 (ECF #181).

The City does not dispute that it is subject to an order for such relief or that such relief is available on the claims at issue in this motion. The Court should therefore grant summary judgment on the question of liability and reserve consideration of the appropriate remedy.

## II.    There is no genuine dispute as to the facts underlying either of Mr. White's claims.

### A.    Defendants offered no evidence creating a genuine dispute that Kubas and Santiago violated Ohio's intimidation statute.

Relying almost exclusively on the City's own admissions and those of its employees, Mr. White's motion for partial summary judgment established that Kubas and Santiago's conduct satisfied all the elements of Ohio Rev. Code §§ 2921.03 and 2921.45. The City's opposition presents no facts to dispute any of those admissions or any other evidence in that motion.[11] The only argument it presents on the merits is that Mr. White is ineligible for relief under Ohio Rev. Code § 2921.03 because Kubas and Santiago tampered with witnesses in his case, not directly with his testimony, and because those witnesses eventually admitted that they were induced to lie.[12]

This argument fails because it is built on a series of false premises. First, Mr. White is not bringing a claim alleging that Kubas and Santiago intimidated the witnesses, but rather that, per the statutory language they "use[d]… materially false or fraudulent writings,"[13] i.e., the photo arrays saying that Ms. Allums and Ms. LaForce did not recognize the perpetrator in any of the photos. Second, the fact that the witnesses eventually disclosed Kubas and Santiago's tampering does nothing to change their liability, as the statute permits liability even for an "*attempt* to influence, intimidate, or hinder a public servant, party official, or witness."[14] Finally, the suggestion that Mr.

---

[11] The City does purport to incorporate the entirety of its motion for summary judgment and the entirety of Kubas's and Santiago's arguments in opposition to summary judgment. To whatever extent the Court permits those arguments, it should reciprocally incorporate Mr. White's responses to those briefs.
[12] City's Opp. to Summ. J. at 9 (ECF #249).
[13] Second Am. Compl. At 17.
[14] Ohio Rev. Code § 2921.03(A) (emphasis added).

White somehow lacks standing because he was not the one whose identification was falsified ignores the plain text of the statute, which makes offenders liable "to any person harmed by the violation."[15]

The only support the City offers for this argument is *Bonds v. Univ. of Cincinnati Med. Ctr.*, No. 1:15-CV-641, 2017 WL 3671239 (S.D. Ohio Aug. 24, 2017). In that case, the court rejected as futile a proposed amendment to add a claim, under Ohio Rev. Code § 2921.03(A), against two police officers accused of threatening the plaintiff in retaliation for his political advocacy, finding that the plaintiff did not allege the threats were directed at "a public servant, party official, attorney or witness for purposes of the statute."[16] This case doesn't support the City's argument. First, read in the context of the case's facts, it's apparent that the problem with the claim wasn't that the *plaintiff* was not a public servant or witness, but rather that the *intimidation* wasn't directed at any public servant or witness. Again, reading the decision as limiting the statute to cases where the plaintiff is the person influenced by intimidation or false statements would put the Court squarely at odds with the language in paragraph (C), which authorizes claims brought not by the public servant or witness, but by "any person harmed by the violation."[17]

Even if *Bonds* did stand for the proposition that § 2921.03(A) limits recoveries to the public servants and witnesses who were personally intimidated or influenced, the City doesn't explain why that non-binding, out-of-district, unpublished opinion should be persuasive here, especially when it is counter to the statute's plain language, and where Mr. White's complaint seeks relief under paragraph (C), which explicitly broadens its reach to "any person harmed."

Because the City doesn't not dispute the facts or law giving rise to its liability under section (C), the Court should grant summary judgment on the intimidation claim (Claim 9).

---

[15] Ohio Rev. Code § 2921.03(C).
[16] *Bonds*, 2017 WL 3671239, at *4
[17] Ohio Rev. Code § 2921.03(C).

### B. Defendants offered neither evidence creating a genuine dispute that Kubas and Santiago violated Ohio's intimidation statute nor legal argument relieving it from liability.

The City offers no evidence contradicting Mr. White's showing that Kubas and Santiago interfered with his civil rights. It offers no law suggesting that those facts do not give rise to their liability for that offense. It merely argues that it is entitled to political-subdivision immunity. As discussed above, that immunity does nothing to shield it from equitable or declaratory relief. Because the City doesn't dispute the facts or law giving rise to the potential for equitable or declaratory relief, the Court should grant Mr. White's motion for summary judgment on his claim for civil liability arising from Kubas and Santiago's interference with his civil rights (Claim 10).[18]

## III. Because Defendants' arguments misread the rules of evidence, civil procedure, and juvenile procedure, there is no basis for excluding the victims' testimony that Kubas and Santiago tampered with their identifications.

### A. Rule 802 does not limit the Court's ability to review transcripts of sworn testimony at the summary-judgment stage.

Fed. R. Evid. 802, like all evidence rules, is superseded when "[a] federal statute or a rule prescribed by the Supreme Court [provides] for admitting or excluding evidence independently from these rules."[19] Fed. R. Civ. P. 56(c)(1)(A) supersedes Rule 802's rule against hearsay by explicitly permitting parties to demonstrate the absence of a genuine dispute as to a material fact using hearsay such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or *other materials*." (Emphasis added.)

---

[18] The City also implies that because Mr. White's damages arise from criminal acts, he may be required to prove the elements of his claims beyond a reasonable doubt. The City offers no cases supporting that proposition, and no court has imposed such a high burden for civil claims under Ohio Rev. Code § 2307.60. Instead, the Ohio Supreme Court holds that in absent explicit instructions otherwise, civil actions arising out of statutes should proceed under the normal preponderance-of-the-evidence standard. *Walden v. State*, 47 Ohio St. 3d 47, 53 (1989) ("The General Assembly, had it wanted to do so, knew how to specify a 'clear and convincing' standard.").

[19] Fed. R. Evid. 1101(e).

The question, therefore, is not whether facts are presented as evidence admissible at *trial*, but whether they *could be* "presented in a form that would be admissible in evidence."[20] Allowing such evidence is only common sense; because motions for summary judgment are meant to avoid the time and expense of a trial, the Court will not require the parties to subpoena witnesses to repeat at a summary-judgment hearing the undisputed facts they've already testified to under oath.

Defendants appear to appreciate this concept, given their own heavy reliance on evidence that meets their definition of "inadmissible hearsay," including their own out-of-court statements in depositions and declarations.[21] Still, they urge the Court to accept facts laid out in the declarations their attorneys drafted for them while ignoring the facts presented under oath by independent witnesses in open court, as well as their own admissions at deposition.

They urge the Court not to read the Bindover Transcript because they were not parties to it, but that standard would also exclude their own declarations, which Mr. White had no knowledge of until Defendants filed them. They also insist the Court cannot read the transcript because the witnesses who testified there are not "unavailable witnesses" under Fed. R. Evid. 804, but that too would require the Court to strike their own declarations, as Mr. White "did not have an opportunity … to develop the testimony by direct, cross or redirect examination."[22]

Why, then, is sworn testimony that Kubas and Santiago tampered with witnesses and falsified evidence an exception to the Supreme Court's rule that "what is sauce for the goose is normally sauce for the gander"?[23] Defendants never say; they merely insist that the Court not read the Bindover Transcript. Because Defendants offer no reason why the Rule 56 exception to the rule

---

[20] Fed. R. Civ. P. 56(c)(2). *See also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial.").

[21] Kubas and Santiago Opp. to Mot. for Summ. J. (ECF #250).

[22] Kubas and Santiago Opp. to Mot. for Summ. J. at 9 (ECF #250).

[23] *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016).

against hearsay applies to them but not Mr. White, the Court should apply the plain language of both rules and accept the sworn testimony in the Bindover Transcript as evidence.

**B.**     **Kubas and Santiago's instructions to falsify records are not hearsay.**

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted.[24] Hearsay doesn't include statements offered as evidence against the party who made them.[25]

Mr. White presents Ms. Allums and Ms. LaForce's testimony about the instructions Kubas and Santiago gave them to prove *what* they said, not the truth of what they said. Indeed, he disputes the truth of their statements, i.e., that the witnesses should falsify their identifications. Because Mr. White is not seeking to prove the truth of what Kubas and Santiago told the witnesses, those statements are not hearsay. Even if he were, the witnesses' testimony about those statements would still not be hearsay, as Defendants Kubas and Santiago are the party-opponents against whom those statements are being offered.

Because the witnesses' statements about being ordered to falsify the results of the identification are being offered to prove something other than the truth of the matter asserted and because they are being offered as evidence against the people who said them, they are not hearsay.

**C.**     **Police officers cannot use the Ohio Rules of Juvenile Procedure to hide their misconduct.**

Under Ohio Juv. R. 34(B), "No public use shall be made by any person, including a party, of any juvenile court record … except in the course of an appeal or as authorized by order of the court or by statute."

---

[24] Fed. R. Evid. 801(c).
[25] Fed. R. Evid. 801(d)(2).

Here, Mr. White sought and obtained an order from the juvenile court authorizing him to use the Bindover Transcript in this proceeding.[26] Although they have had a copy of that order for well over a year, Defendants failed to disclose it to this Court, nor do they explain why it is insufficient. As their co-defendants did in another case, Kubas and Santiago merely ignore the order and argue that the transcript is privileged because an order was required. The Court should reject that argument here as it has before.[27]

Even without that court's authorization, Rule 37 does not create a privilege preventing Mr. White from using his transcript to advance his case, as the Ohio Rules of Juvenile Procedure apply only to Ohio's juvenile courts and only in proceedings coming within their jurisdiction.[28] This case fits neither criterion. In a pair of cases challenging the Rule 37's constitutionality, the Ohio Supreme Court acknowledged that its secrecy provisions must give way to both First Amendment interests[29] and to due-process rights.[30] In the earlier case, the court said Rule 37 could not prevent the release of a transcript of a hearing that was open to the public—like Mr. White's—if its release would not endanger the juvenile.

In that case, the court rejected an attempt to use Rule 37 to protect the transcript of a contempt hearing involving two government employees who failed to produce subpoenaed records. As Justice Douglas explained in a concurrence to that unanimous opinion, Rule 37 "involves records which specifically relate to, name and/or identify a particular juvenile(s)." He noted the irony of nonparties exploiting the rule to avoid disclosure of matters having nothing to do with the juvenile

---

[26] Order, *In the matter of D.W.*, No. DL15105751 (Cuyahoga C.P., May 20, 2017) (ECF #247-3).

[27] *Benton v. City of Cleveland*, No. 1:18-CV-2159, 2020 WL 1233949, at *5 (N.D. Ohio Mar. 13, 2020) ("This court is not persuaded by defendants" argument that the Ohio Juvenile Court's decision is not admissible in this case.").

[28] Ohio Juv. R. 1.

[29] *State ex rel. Scripps Howard Broad. Co. v. Cuyahoga Cty. Court of Common Pleas, Juv. Div.*, 73 Ohio St. 3d 19, 25 (1995).

[30] *State ex rel. Plain Dealer Publ'g Co. v. Floyd*, 111 Ohio St. 3d 56, 68 (2006).

in question: "Juv.R. 37(B) was not designed to frustrate the release of records that do not involve a juvenile but, nevertheless, are part of a juvenile court proceeding."

That is just what Defendants Kubas and Santiago hope to do here. To frustrate Mr. White's efforts to hold them accountable for their crimes against him, they seek to turn Rule 37 into a shield not for the juvenile, but to avoid the public disclosure of third parties testifying that fourth and fifth parties instructed them to falsify their identifications of a sixth party. Allowing them to do so would turn the juvenile rules on their head, twisting a system designed to protect and rehabilitate juveniles into one that protects those who commit crimes against them:[31]

- Rule 37 is meant to be "liberally interpreted and construed" to ensure "the recognition and enforcement of [juveniles'] constitutional and other legal rights,"[32] but Kubas and Santiago construe it to spare them liability for interfering with a juvenile's constitutional rights.

- Rule 37 is meant to eliminate "unjustifiable expense and delay,"[33] but Kubas and Santiago construe it to require indigent plaintiffs to spend time and money deposing witnesses who have already given sworn testimony.

- Rule 37 is meant to "provide for the care, protection, and mental and physical development of children subject to the jurisdiction of the juvenile court,"[34] but Kubas and Santiago construe it to avoid paying damages for mental and physical injuries Mr. White suffered because of their dishonesty.

- Rule 37 is meant to "protect the welfare of the community,"[35] but Kubas and Santiago construe it to shield the police from accountability for their misconduct.

In short, there is no reason to accept Kubas and Santiago's insistence that the Bindover Transcript is inadmissible. The Court should fully consider its contents, including the testimony from Ms. Allums and Ms. LaForce that Kubas and Santiago ordered them to falsify the results of their photo lineup.

---

[31] Ohio Juv. R. 1.

[32] Ohio Juv. R. 1.

[33] Ohio Juv. R. 1.

[34] Ohio Juv. R. 1.

[35] Ohio Juv. R. 1.

**IV.** **Because the case is already fully briefed, the Court should not make Mr. White's recovery contingent on any possible pronouncement in *Buddenberg v. Weisdack*.**

**A.** **There is no legal basis for staying consideration of Mr. White's claims against Kubas and Santiago.**

Courts have the inherent power to stay proceedings pending the outcome of another case to manage "time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Northern District of Ohio considers requests to stay proceedings using a four-factor test laid out in *Hickman v. First Am. Title Ins. Co.*, No. 1:07 CV 1543, 2010 WL 11565405, at *2 (N.D. Ohio Aug. 4, 2010), considering: "(1) the potentially dispositive effect of the pending litigation, (2) judicial economy, (3) the public welfare, and (4) the hardship imposed on the opposing party if the stay is ordered."[36]

Defendants argue that the Court should stay judgment on this motion pending the Ohio Supreme Court's decision in *Buddenberg v. Weisdack*, No. 2018-1209 (Ohio S. Ct.), but they do not engage the standard for imposing a stay, which cuts against them at every step.

**1.** **Given the new consensus interpretation of Ohio Rev. Code § 2307.60, *Buddenberg* is unlikely to dispose of the claims in question.**

In considering the first factor, the Court should go beyond the mere possibility of "one case being dispositive of the issues present in another"[37] and look for broader benefits of awaiting such a disposition. In *Hickman*, the court noted favorably cases where the stay would allow the development of a "test case in order to establish the rule of law" or to settle a question where courts were "hopelessly in conflict."[38] But "[t]he mere possibility" that another case will change the legal landscape, it said, is insufficient to warrant a stay.[39]

---

[36] *Hickman*, 2010 WL 11565405, at *2
[37] *Hickman*, 2010 WL 11565405, at *3
[38] *Hickman*, 2010 WL 11565405, at *3
[39] *Hickman*, 2010 WL 11565405, at *3

That was the case in *Hickman*, where the plaintiff sought a stay while the Sixth Circuit considered an appeal from a holding that other courts uniformly rejected. The court denied the stay: "[T]hree previous rulings have been issued within the Northern District of Ohio on this same point of law, and they are in accord. There is no conflict to be resolved."[40]

The same is true here. Although several older decisions have assumed—without analysis—that Ohio Rev. Code §§ 2307.60 and 2921.03 did not cover cases where the defendant had not been convicted, *Jacobson* has since fundamentally altered the landscape. Since courts began accounting for *Jacobson*, they have never endorsed an exemption for unconvicted criminals. Instead, they have uniformly either rejected such arguments outright[41] or expressed hostility to their merits.[42]

The events to date in *Buddenberg* give no reason to believe the law will change on this question. Oral arguments in that case were lopsided, with the justices expressing similarly deep skepticism of the idea that liability depends on a criminal conviction even though the statute predicates it on a "criminal act."[43] Still, Defendants insist the Court must stay its decision because it would be forced to "act as a forecaster of what the State of Ohio would rule."[44] But making such a forecast—more commonly known as an "Erie guess"—is a perfectly routine task for the federal

---

[40] *Hickman*, 2010 WL 11565405, at *3

[41] *Hatmaker v. PJ Ohio, LLC*, No. 3:17-CV-146, 2019 WL 1367663, at *4 (S.D. Ohio Mar. 26, 2019) ("Ohio Revised Code § 2307.60's language controls–only a criminal act must be alleged, not a conviction."); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 225 F. Supp. 3d 670, 680 (S.D. Ohio 2016) ("In fact, in *Jacobson v. Kaforey*, the court explained that the plain language of the statute indicates that a civil action for damages caused by criminal acts is available unless otherwise prohibited by law." (citation omitted)).

[42] *In re Nat'l Prescription Opiate Litig.*, No. 1:18-OP-45090, 2018 WL 4895856, at *43 (N.D. Ohio Oct. 5, 2018) ("[A] conviction may not be a necessary prerequisite."); *Buddenberg v. Weisdack*, No. 1:18-CV-00522, 2018 WL 3159052, at *5 (N.D. Ohio June 28, 2018), *aff'd*, 939 F.3d 732 (6th Cir. 2019) ("Had the General Assembly wanted to make a criminal conviction a condition precedent to establishing an ORC § 2307.60 claim, they presumably could have done so.").

[43] *See, e.g.*, Oral arguments, *Buddenberg v. Weisdack*, No. 2018-1209 at 6:10 (Ohio S. Ct., November 13, 2019), http://ohiochannel.org/video/supreme-court-of-ohio-case-no-2018-1209-buddenberg-v-weisdack. ("O'Connor, C.J.: So you think that there's a special meaning because it's in this statute as opposed to the common parlance of English? Counsel: I believe that that's correct. O'Connor, C.J.: "Counsel … do you think that's the way statutes are written? In code?").

[44] Kubas and Santiago Opp. to Mot. for Summ. J. at 6.

courts, which are forever considering questions of state law, given its frequent inability to precisely address the exact facts facing them.[45] Because the current consensus is unlikely to change and a stay would serve no broader purpose, this factor counsels against a stay.

### 2. Because all parties to this case have briefed the question in *Buddenberg*, judicial economy does not warrant a stay.

The posture in this case is again similar to *Hickman*. Noting that that Sixth Circuit case in question was "still pending," that a stay would therefore "necessarily be of an indefinite duration," and that the parties had "submitted complete briefs to the court in anticipation of having this matter decided on its merits," the *Hickman* court found that judicial economy called for the case to move forward.[46] All the same can be said of this case. *Buddenberg* remains pending, and there is no way of saying when it will be decided, if ever. Indeed, it is not at all uncommon for the Ohio Supreme Court to accept questions for resolution only to dismiss them as improvidently granted.[47]

Because both parties have fully briefed both affirmative and defensive summary-judgment motions on a question that the Ohio Supreme Court may never answer, judicial economy counsels against a stay.

---

[45] *See, e.g., In re Nat'l Prescription Opiate Litig.*, No. 18-OP-45332, 2020 WL 1986589, at *6 (N.D. Ohio Apr. 27, 2020) ("[T]he Federal Court must make an '*Erie* guess' on how the Florida high court would rule on the issue."); *R.W. Beckett Corp. v. Allianz Glob. Corp. & Spec. SE*, No. 1:19-CV-428, 2020 WL 1975788, at *8 (N.D. Ohio Apr. 24, 2020) ("[E]xisting case law is sufficiently clear for the court to 'make an *Erie* guess'"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3737023, at *6 (N.D. Ohio June 13, 2019) ("Where a state's highest court has not addressed a specific issue, the Court 'must predict how the court would rule by looking to all the available data.'"); *Anadarko E&P Co. LP v. Northwood Energy Corp.*, No. 2:12-CV-00938, 2015 WL 13748033, at *3 (S.D. Ohio July 24, 2015) ("[T]his Court must make 'an Erie guess'"); *C.B. Fleet Co. v. Colony Specialty Ins. Co.*, No. 1:11-CV-0375, 2013 WL 1908098, at *6 (N.D. Ohio May 7, 2013) ("[N]o Ohio state court has ever explicitly adopted the doctrine of dépeçage. Nonetheless, this Court's '*Erie* guess' is that the Ohio Supreme Court would likely do so.").

[46] *Hickman*, 2010 WL 11565405, at *3

[47] *See, e.g., State ex rel. DeWine v. GMAC Mortg., L.L.C.*, 146 Ohio St. 3d 393, 394 (2016) ("The certified question of state law was improvidently accepted for review. Accordingly, this cause is dismissed."); *Wells Fargo Bank, N.A. v. Allstate Ins. Co.*, 146 Ohio St. 3d 232, 232 (2016) ("The court has determined, sua sponte, that the certified question of state law was improvidently accepted for review. Accordingly, this cause is dismissed."); *Mentor Exempted Vill. Sch. Dist. Bd. of Edn. v. Mohat*, 128 Ohio St. 3d 395, 395 (2011) ("Sua sponte, we now conclude that the certified question of state law was improvidently accepted for review. Accordingly, this cause is dismissed.").

### 3. There are no extraordinary circumstances suggesting a stay would promote the public welfare.

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."[48] "[I]n cases of extraordinary public moment," courts should consider stays "if the public welfare or convenience will thereby be promoted."[49]

Defendants never suggest this case presents the "rare circumstances" that justify forcing White to let the parties in another case decide his rights, nor that staying the case would promote the public welfare. On the contrary, because Mr. White's claims focus on violations of his civil rights, the Court will instead promote the public welfare by denying the stay and deciding the case on the merits. The Sixth Circuit has a *per se* rule that enforcing constitutional rights is in the public interest: "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."[50]

Because a stay would not promote the public welfare, this factor counsels against a stay.

### 4. Granting the stay would impose a greater hardship than denying it.

The party seeking a stay "must make out a clear case of hardship … if there is even a fair possibility that the stay for which he prays will work damage to someone else."[51] "[T]he moving party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party will not be injured by a stay."[52]

---

[48] *Landis*, 299 U.S. at 255.

[49] *Landis*, 299 U.S. at 256

[50] *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) *See also Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) ("[T]he public is certainly interested in the prevention of enforcement of ordinances which may be unconstitutional."). *Accord, Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest.").

[51] *Landis*, 299 U.S. at 255.

[52] *IBEW, Local 2020, AFL-CIO v. AT&T Network Sys. (Columbia Works)*, 879 F.2d 864 (6th Cir. 1989)

Although the Sixth Circuit considers the balance of hardships the "most important consideration," Defendants make no suggestion that they would suffer *any* hardship if the Court proceeded to decide the question, even if *Buddenberg* somehow turned out in their favor. Even if they had identified some hardship, it would be outweighed by the burden associated with disrupting Mr. White's "timely vindication of his … most fundamental right against alleged abuse of power by governmental officials," a burden so great it outweighs even the burden associated with requiring the President of the United States to stand trial in a civil suit.[53]

Given Defendants' failure to claim any hardship outweighing the harm associated with delaying the vindication of Mr. White's civil rights, this factor—along with all the others—counsels against a stay. Because all the factors cut against further delay in adjudicating these claims, there is no reason Mr. White's rights should be resolved by the parties in *Buddenberg*. The Court should deny Defendants' request to stay consideration of the parties' motions for summary judgment.

**B.    Regardless of whether it stays consideration of Mr. White's claims, the Court should find that his allegations as to Defendants' misconduct are not genuinely in dispute and are established for this case.**

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact … that is not genuinely in dispute and treating the fact as established in the case."[54] Doing so allows the Court to "'salvage some results' from the time and resources spent in deciding unsuccessful summary-judgment motions."[55] In *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405 (7th Cir. 2019), for instance, the trial court denied a plaintiff's motion for summary judgment that failed to establish damages on a contract claim, but it entered an order establishing performance and breach as established for the case. After a trial resulted in a million-dollar verdict,

---

[53] *Jones v. Clinton*, 72 F.3d 1354, 1365 (8th Cir. 1996), *aff'd*, 520 U.S. 681 (1997).
[54] Fed. R. Civ. P. 56(g).
[55] *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019).

the defendant appealed, arguing the trial court could not enter such an order because the plaintiff hadn't carried its initial burden on summary judgment, but the Seventh Circuit affirmed, finding that in failing to present evidence on the items addressed by the order, the defendant waived his right to contest them later: "VitalGo… had no right to challenge the performance without evidentiary support. Summary judgment is no time for half-hearted advocacy."[56]

Here, the facts supporting Mr. White's motion are thoroughly documented and rely almost entirely on Defendants' own admissions. Kubas and Santiago dispute that any facts establish any liability,[57] but they have not come forward with any admissible evidence creating a genuine dispute as to any of them. If the Court nonetheless determines that it should not yet grant Mr. White's motion for partial summary judgment, it should at least narrow the issues for trial by entering an order stating that the following facts from Mr. White's motion are not genuinely in dispute and are established for this case:

1. Kubas does not dispute administering the photo array to Ms. Allums.[58]

2. Kubas does not remember any facts about his involvement in this case.[59]

3. Ms. Allums does remember that interaction. She immediately recognized Edward Bunch in the lineup—and the eyes that "looked at me while I was lying on the floor bleeding to death."[60]

4. Having identified Edward Bunch as the shooter, Ms. Allums wanted to circle his picture but didn't. She didn't circle him because she was following instructions from Kubas, who told her not to identify someone who she thought had already been already arrested because he didn't want his investigation "going in circles."[61]

---

[56] *Kreg Therapeutics, Inc.*, 919 F.3d at 416

[57] Kubas and Santiago Opp. to Summ. J. at 16 ("There is simply no evidence of a criminal violation of R.C. 2921.03. Similarly, Plaintiff produced no evidence of a violation of R.C. 2921.45.").

[58] Kubas Dep. 93:17–94:8 ("Q Do you dispute that you conducted these photo lineups? A I'm not disputing, no. I don't remember.").

[59] *Id.* at 99:6–106:7.

[60] Tr. of Juvenile Court Bindover Hearing, 141:20–21 (ECF #261).

[61] *Id.* at 135:7–14 ("[H]e said not to circle him because we were -- that they were looking for the other two suspects and that if he was already arrested, that it would be them going in circles.").

5. Santiago does not dispute administering the photo array to Ms. LaForce.[62]

6. Santiago does not remember any facts about his involvement in this case.[63]

7. Ms. LaForce does remember that interaction. When she saw Edward Bunch, she recognized him as the shooter from the robbery.[64]

8. Having identified Edward Bunch as the shooter, Ms. LaForce was going to circle him but didn't. She didn't circle him because she was following instructions from Santiago, who told her, "don't circle him if you already picked him out of a lineup."[65]

9. Neither Kubas nor Santiago told the prosecutor assigned to the case that the witnesses had identified Edward Bunch or that they had tampered with their witnesses' identifications.[66]

10. When the case finally reached Cuyahoga County Juvenile Court Judge Denise Rini, both the prosecutor and the court learned for the first time about the "serious and exculpatory" improprieties in how Kubas and Santiago handled the photo arrays.[67]

11. Relying on the new information about witnesses identifying Bunch[68] and the complete lack of evidence corroborating the initial identification of Mr. White as the shooter[69]— along with her findings that the photo array used to make that identification was too suggestive,[70] that the shooter was much larger than Mr. White,[71] that Lam's assertion that Ms. Allums described the shooter as matching Mr. White's height was refuted by his audio recording of that conversation,[72] and that Bunch was at the hospital with injuries matching the description of the shooter's[73]—the court found that there was not "probable cause that Dalonte White was part of the home invasion."[74]

An order that these facts are not in dispute and are established for this case would allow the

Court to narrow the facts for trial and push this case toward resolution.

---

[62] Santiago Dep. 97:8–15.

[63] *Id.* at 83:14–17; 87:8–91–20.

[64] Bindover Tr. 101:15–18.

[65] *Id.* at 101:5–13.

[66] Declaration of Norman Schroth, ¶¶ 6–7 (ECF #258).

[67] *Id.* at ¶¶ 6–7.

[68] Bindover Tr. 432:23–433:2.

[69] *Id.* at 434:20–435:3 ("There is no corroborating evidence.").

[70] *Id.* at 433:3–10.

[71] *Id.* at 433:21–23.

[72] *Id.* at 433:23–434:2.

[73] *Id.* at 434:9–19.

[74] *Id.* at 435:4–6.

## V.  The Court should not dismiss White's Claims 9 and 10 against Defendants Kubas and Santiago in their official capacity.

The Court should not dismiss White's official-capacity claims against Defendants Kubas and Santiago. Even when their government employers are party to the suit, the Sixth Circuit does not require courts to dismiss official-capacity claims against the employees.[75] Dismissing such claims is purely discretionary,[76] and inappropriate when claims for equitable relief are on the table.[77] If the Court elects to dismiss the official-capacity claims as identical to the claims against the City, it should instead award partial summary judgment against the City.

<h3>CONCLUSION</h3>

The City's opposition to Mr. White's motion for partial summary judgment on his official-capacity claims offers no evidence to create a genuine dispute as to liability, and its legal arguments all run contrary to the plain text of every law and rule it relies on. Because there is no dispute on the facts and no dispute on the availability of equitable or declaratory relief, the Court should grant Mr. White's motion on the official-capacity claims. Failing that, it should at least order that the facts in question are established for this case.

---

[75] *Baker v. Cty. of Macomb*, No. 13-13279, 2015 WL 5679838, at *9 (E.D. Mich. Sept. 28, 2015) ("However, it does not appear that the Sixth Circuit affirmatively requires the dismissal of official capacity claims against an official when the government entity is also a party to the suit.").

[76] *See, e.g., Ruffin v. Cuyahoga Cty.*, No. 1:16 CV 640, 2016 WL 4543144, at *2 (N.D. Ohio Aug. 31, 2016) ("the Court finds that [dismissal of official-capacity claims] is the more practical and efficient approach"); *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.").

[77] *Castleberry v. Cuyahoga Cty.*, No. 1:20 CV 218, 2020 WL 3261097, at *2 (N.D. Ohio June 16, 2020) (noting that some courts maintain "that early dismissal of official capacity claims is neither required nor favored."); *Stevenson v. Willis*, 579 F. Supp. 2d 913, 918 (N.D. Ohio 2008) ("Where a plaintiff seeks equitable relief, rather than damages, against an individual governmental defendant, the plaintiff can sue the individual in her official capacity.").

### Loc. R. 7.1 Certification

This case was assigned to the standard track. This memorandum complies with the page limit set forth in Loc. R. 7.1(f).

*/s/  Brian D. Bardwell*
Brian D. Bardwell (0098423)

*Counsel for Plaintiff Dalonte White*