IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DALONTE WHITE,** | **CASE NO. 1:17-CV-01165** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **CITY OF CLEVELAND, et al.,** | |
| **Defendants.** | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the Request for Status Conference ("Request") of Plaintiff Dalonte White ("White") filed on June 2, 2020. (Doc. No. 219.) Defendants City of Cleveland, Robert Beveridge, John Kubas, Michael Schade, Thomas Shoulders, David Santiago, and David Lam (collectively, "Defendants") filed a brief in opposition to White's Request on June 3, 2020. (Doc. No. 220.) Also, on June 3, 2020, Defendants filed a Motion to Strike White's Request. (Doc. No. 221.) White filed a brief in opposition to Defendants' Motion to Strike on June 17, 2020, to which Defendants replied on June 23, 2020. (Doc. Nos. 248, 255.) For the following reasons, White's Request (Doc. No. 219) is DENIED AS MOOT, and Defendants' Motion to Strike (Doc. No. 221) is DENIED.

**I.  Background**

This case arises from White's arrest as a suspect in a home invasion that occurred in April 2015 at the home of Colleen Allums ("Allums"). (Doc. No. 181 at ¶¶ 9-10, 25.)  In his Second Amended Complaint, White sets forth a variety of allegations of improper conduct relating to White's arrest, including allegations that officers administered highly suggestive photo arrays leading to White's arrest and improperly instructed Allums and another witness not to mark their identifications

of a different individual as the perpetrator of the crime for which White had been arrested. (*Id.* at ¶¶ 20-29.)

On June 2, 2020, White filed a Request for Status Conference to discuss the possibility that witness intimidation had occurred in this case and the potential need for further investigation. (Doc. No. 219.) In support of his Request, White submitted the declaration of one of his attorneys, Brian Bardwell ("Bardwell"). In his declaration, Bardwell states that Allums had previously agreed to complete a declaration in support of White's claims stating that she never discussed the perpetrator's size during an interview with Defendant Lam, which directly contradicts Defendant Lam's claim that she described the perpetrator as five feet and five inches tall. (Doc. No. 219, Declaration of Brian D. Bardwell, at ¶¶ 4-5, 7.) Bardwell's declaration also indicates that Allums stated that another officer intimidated her into providing the answers he wanted by raising the possibility that police might charge her for shooting the man who attacked her. (*Id.* at ¶ 6.) Specifically, Bardwell's declaration provides that Allums "told me that while she lay in the hospital the day she identified Mr. White in the lineup, one of the detectives—likely Defendant Shoulders—intimidated her into providing answers he wanted." (*Id.*) It is unclear whether Allums stated the officer was "likely Defendant Shoulders" or whether that is Bardwell's interpretation of what she told him based on the facts known to him.

White asserts that after this initial willingness to cooperate, Allums became unresponsive to White's counsel's repeated requests to prepare a declaration and obtain her signature. (Doc. No. 219 at 1.) Further, in his Request, White alleges that when Bardwell attempted to contact Allums again on May 29, 2020, "Allums and her husband indicated that police had harassed them after the first interview and that their house had been shot at" and "Allums also said she wasn't going to talk

2

anymore because of 'lawyers for the City' who had been bothering her." (*Id.* at 1-2.) However, Bardwell's declaration describing his interaction with Allums and her husband on May 29, 2020 is much more equivocal as to what they actually told him, as the interaction appears to have been extremely limited and hurried. Specifically, Bardwell describes the incident as follows:

> 9. On May 29, 2020, I tried again. I saw [Allums] come home from the grocery store, and she told me to wait while she went inside another house. While I waited, her husband came out of their house and began screaming at me to get away. He apparently has some sort of throat disorder that makes it difficult to understand him, but I understood him to say that police had come through and harassed [Allums] after we talked the first time. He pointed at what he said were bullet holes in the front of the house and told me they didn't want to talk anymore.
>
> 10. He went back into his house and I walked back to my car. Before I got in, [Allums] came out of the other house again. When I approached, she was obviously terrified and hurrying to get away. As she rushed back to her house, she also indicated that the police and "lawyers for the City" had been bothering her and that she didn't want to talk about the case anymore.
>
> 11. I wanted to ask [Allums] and her husband exactly what had happened, but neither would talk. They went in their house and I went home.

(Doc. No. 219, Declaration of Brian D. Bardwell, at ¶¶ 9-11.)

After this interaction, White's counsel contacted Defendants' respective counsel to discuss the issue, but they denied any wrongdoing. (*Id.* at ¶¶ 12-13.) White's counsel also reached out to the U.S. Marshals and the FBI to report potential witness intimidation. (*Id.* at ¶ 14.)

On June 3, 2020, Defendants filed an opposition to White's Request for a status conference. (Doc. No. 220.) The same day, they also filed a Motion to Strike, seeking to strike White's Request and Bardwell's accompanying declaration. (Doc. No. 221.) In support of their Motion to Strike, Defendants submitted declarations from each of Defendants' counsel in which they denied improperly interfering with any witnesses in this case and denied any knowledge that Defendants or

3

anyone else had engaged in such conduct. (Doc. Nos. 221-1 to 221-6.) None of the individual Defendant officers submitted a declaration. White filed a brief in opposition to Defendants' Motion to Strike on June 17, 2020. (Doc. No. 248.)

The next day, the Court held a status conference that had been scheduled prior to White's Request in order to address the rescheduling of trial due to the COVID-19 pandemic. (*See* Doc. No. 252.) However, during the conference, the Court also discussed the issues raised by White's Request. (*Id.*) White's counsel indicated that an evidentiary hearing regarding Bardwell's allegations may be appropriate, but did not strongly advocate for a hearing, which was in line with their previous briefing on the issue. (*See* Doc. No. 219 at 2 ("Mr. White therefore requests a status conference to discuss the allegations and the need for further investigation and action."); Doc. No. 248 at 3 ("Mr. White's counsel respectfully request the Court to discuss the issue in tomorrow's status conference, and, if appropriate, hold an evidentiary hearing on the issue.").) Defendants' counsel strongly opposed holding any type of evidentiary hearing. Bardwell also informed the Court and Defendants that he had provided a statement to the FBI. The Court did not issue any rulings at that time, but informed the parties that it would await any reply from Defendants in support of their Motion to Strike, which Defendants filed on June 23, 2020. (Doc. Nos. 252, 255.)

## II. Standard of Review

On its own or upon a motion, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An immaterial matter is that which has 'no bearing on the subject matter of the litigation,'" while "[i]mpertinent allegations include statements that are not necessary to the issues presented." *McKinney v. Bayer Corp.*, No. 10–CV–224, 2010 WL 2756915, at *1 (N.D. Ohio July 12, 2010) (quoting *Johnson v. Cty.*

*of Macomb*, No. 08–10108, 2008 WL 2064968, at *1 (E.D. Mich. May 13, 2008)). A scandalous matter "refers to 'any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Id.* (quoting *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)).

"A court has broad discretion in determining whether to grant a motion to strike." *Id.* at *2. However, "motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant." *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009). Although Rule 12(f) only applies to pleadings, a court has "the inherent authority to strike non-pleadings in order to manage its docket." *Taylor v. JP Morgan Chase Bank, N.A.*, No. 3:15-CV-509-HBG, 2018 WL 5777497, at *3 (E.D. Tenn. Nov. 2, 2018).

**III.    Analysis**

In their Motion to Strike, Defendants argue that White's Request should be stricken because it contains immaterial, impertinent, and scandalous allegations of witness intimidation against Defendants and their counsel without any first-hand testimony or other evidence. (Doc. No. 221 at 2-4.) Defendants also assert that White's Request should be stricken as moot since the Court has already held a status conference during which the possibility of witness intimidation in this case was discussed. (Doc. No. 255 at 2-3.) In addition, Defendants raise the prospect that sanctions for White's counsel's conduct may be appropriate, as Defendants assert that Bardwell's allegations appear to be an attempt to cast blame on Defendants and their counsel for White's counsel's own failure to obtain the testimony of an important fact witness prior to the close of discovery. (*Id.* at 4; Doc. No. 221 at 4.) Finally, Defendants suggest a stay of this case may be appropriate due to the FBI's potential

5

criminal investigation into Defendants and their counsel based on Bardwell's statement. (Doc. No. 255 at 5-6.) Conversely, White argues that striking his Request is not appropriate, as eyewitness testimony is not a prerequisite to alerting the Court to potential witness intimidation, Bardwell was required to report evidence of criminal or fraudulent conduct relating to this proceeding under the Ohio Rules of Professional Conduct, the allegations are relevant to this case, and Defendants cannot demonstrate that they will be unfairly prejudiced by the allegations. (Doc. No. 248.) The Court finds that striking White's Request is not warranted.

First, allegations that an important fact witness may have been improperly intimidated are clearly not immaterial or impertinent to this matter since they are highly relevant to the integrity of the Court's proceedings. Nor does the Court agree with Defendants' more targeted argument that the allegations are immaterial or impertinent to White's Request (Doc. No. 255 at 3), as the allegations provided context to the reason for White's request for a status conference. Moreover, because the allegations are relevant, they are not scandalous within the meaning of Rule 12(f). *See Dassault Systemes, S.A. v. Childress*, No. 09–10534, 2009 WL 3602084, at *5 (E.D. Mich. Oct. 27, 2009) ("Under the Rule, '[i]t is not enough that the matter offends the sensibilities of the objecting party of the person who is the subject of the statement in the pleading, if the challenged allegations describe acts or events that are relevant to the action.'") (citation omitted). Defendants also argue that the allegations are scandalous because they were made to remedy White's counsel's own failure to issue a subpoena for testimony from a fact witness prior to the discovery cut-off, but Defendants provide no evidence in support of this accusation. (Doc. No. 255 at 4.)[1] As such, the Court finds that

---

[1] Based on this lack of evidence, the Court will also deny Defendants' Motion to Strike to the extent it requests sanctions for White's counsel's conduct.

6

Defendants' arguments regarding the immaterial, impertinent, or scandalous nature of the allegations lack merit.

Further, the Court is unpersuaded by Defendants' argument that White's Request should be stricken because Bardwell does not have first-hand knowledge of the alleged witness intimidation. In support of their argument, Defendants rely on *Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015). (Doc. No. 221 at 2; Doc. No. 255 at 4.) However, that case addressed a motion to strike in the context of a motion for summary judgment and Rule 56(c)(4)'s requirement that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Ondo*, 795 F.3d at 605 (quoting Fed. R. Civ. P. 56(c)(4)). Defendants have not cited any authority in support of applying a similar requirement to strike a declaration that alerts a court to potential witness intimidation outside the summary judgment context.

The Court recognizes that the allegations contained in White's Request and Bardwell's declaration appear to have been drawn from a fleeting interaction with Allums and her husband in which the communications were hurried and potentially unintelligible. For example, Bardwell's declaration provides that during his interaction with Allums's husband, he was "screaming" at Bardwell to get away and that he "has some sort of throat disorder that makes it difficult to understand him." (Doc. No. 219, Declaration of Brian D. Bardwell, at ¶ 9.) Bardwell also states that when he spoke to Allums, "she was obviously terrified and hurrying to get away" and "rush[ing] back to her house." (*Id.* at ¶ 10.) Further, Bardwell admits he was unable to "ask [Allums] and her husband exactly what had happened" before they went into their house. (*Id.* at ¶ 11.) Despite these

7

deficiencies, because striking material before the Court is generally disfavored and because the allegations are relevant to the proceedings before this Court, the Court finds it more appropriate to leave them on the record, along with Defendants' responses thereto.

Defendants also argue that White's Request should be stricken as moot. (Doc. No. 255 at 2-3.) The Court agrees with Defendants that White's Request is moot, as the Court held a status conference during which it discussed the possibility of witness intimidation and the need for further investigation, which was the only relief sought in White's Request. (*See* Doc. Nos. 219, 252.) However, it is not this Court's practice to strike motions that have been rendered moot. Rather, the Court will simply deny White's Request as moot.

Finally, White has indicated that an evidentiary hearing may be appropriate, but has not necessarily requested one. In addition, Defendants have suggested that the Court has the authority to stay this case *sua sponte* due to Bardwell's statement to the FBI, but also have not actually requested a stay. Without additional facts supporting either an evidentiary hearing or a stay at this time, the Court finds that neither is appropriate.

## IV. Conclusion

For the reasons set forth above, White's Request (Doc. No. 219) is DENIED AS MOOT, and Defendants' Motion to Strike (Doc. No. 221) is DENIED.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*
 PAMELA A. BARKER
Date:  July 22, 2020   U. S. DISTRICT JUDGE